UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| FRONTIER AIRLINES, INC.,<br><br>                          Plaintiff,<br><br>    v.<br><br>AMCK AVIATION HOLDINGS IRELAND LIMITED, ACCIPITER INVESTMENT 4 LIMITED, VERMILLION AVIATION (TWO) LIMITED, ACCIPITER HOLDINGS DAC, WELLS FARGO TRUST COMPANY, N.A., solely in its capacity as OWNER TRUSTEE, and UMB BANK, N.A., solely in its capacity as OWNER TRUSTEE,<br><br>                          Defendants. | Case No. _____<br><br>**COMPLAINT** |

Plaintiff, Frontier Airlines, Inc. ("Frontier"), by its attorneys Binder & Schwartz LLP, states as follows:

## INTRODUCTION

1. Frontier is a U.S.-based passenger airline that operates commercial passenger aircraft leased from various aircraft lessors. AMCK Aviation Holdings Ireland Limited ("AMCK Holdings") is an international aircraft leasing company that, through various affiliates, subsidiaries and owner-trustee entities, owns and leases multiple aircraft to Frontier through sale-leaseback financing arrangements (the "Leases").

2. AMCK (through owner trusts it controls) and Frontier are parties to fifteen Lease Agreements (the "Lease Agreements") relating to fifteen aircraft owned by AMCK and leased to Frontier for use in its operations.

3. These Leases cover a critical component of Frontier's fleet and are vital to its operations. The aircraft have an aggregate value of more than $500 million.

1

4.      This action concerns AMCK's imminent closing on a transaction that would purport to effect a change in the beneficial ownership of interests in all the aircraft, in the Lease Agreements and in other Operative Documents (as defined in the Lease Agreements).  Under the Lease Agreements and related documents, Frontier is deemed to consent to such transfers only in those circumstances where certain preconditions have been satisfied.  These preconditions are important bargained-for protections to ensure that any such transfer will not cause any interruption in Frontier's rights with respect to the aircraft (including the ability to continue using the aircraft under applicable laws and regulations) or otherwise adversely impact Frontier's obligations, interests, risks or liabilities under the Lease Agreements and related Operative Documents, including warranties, engine maintenance agreements, lessee's consent to security assignments, and insurance assignments.  This includes the Tripartite Agreement that pertains to twelve of the Leases, which Accipiter (defined below) must properly assign in connection with any transaction or Frontier may be exposed at lease expiration to millions of dollars in additional liabilities.  Frontier, as the lessee of the aircraft, must also be able to ascertain that the new beneficial owner is not subject to sanctions, and that Frontier is permitted to make payments to the new owner without violating anti money laundering and other applicable laws.

5.      Despite repeated efforts by Frontier to obtain information necessary to determine whether the preconditions for consent to the anticipated lease-transfer transaction have been satisfied, Frontier has been stonewalled by AMCK and its affiliates.

6.      By this action, Frontier seeks an order determining that defendants have breached the Lease Agreements and other Operative Documents by failing to provide information sufficient to assure Frontier that the preconditions for consent to the lease-transfer transaction have been satisfied, including that Frontier's rights in connection with the Leases are not being

impaired. Frontier is entitled to damages arising from the imminently anticipated, purported transfer of interests in the Leases. Frontier also seeks declarations (1) that AMCK is legally required to provide such information and that (2) absent such information, Frontier should not be deemed to have consented to the transfer of any interest with respect to the Lease Agreements.

7. Further, to the extent that the lease-transfer transaction involves the transfer of a controlling beneficial ownership interest in the Lessor (which is an owner trustee) or Owner Participant (defined in the Lease Agreements) or grants participation rights in the Leases, Frontier is entitled to information to establish that the new beneficial owner (or owners) is a "Permitted Transferee" (as defined in the Lease Agreements). Absent such an assurance, Frontier could find itself in a circumstance where it is not permitted to pay rent. Accordingly, Frontier seeks injunctive relief providing that, until such time as it is determined that AMCK has entered into a lawful lease-transfer transaction with a permitted transferee, all rent due under the lease should be paid into the Court pursuant to Fed. R. Civ. P. 67 or alternatively held in escrow.

**PARTIES, JURISDICTION, AND VENUE**

8. Plaintiff Frontier, a Colorado corporation, is headquartered in Denver, Colorado.

9. On information and belief, Defendant AMCK Holdings is a company incorporated in Ireland and is headquartered in Dublin, Ireland.

10. On information and belief, Defendant Accipiter Investments Aircraft 4 Limited ("Accipiter"), a company incorporated in Ireland, is headquartered in Dublin, Ireland.

11. On information and belief, Defendant Vermillion Aviation (Two) Limited ("Vermillion"), a company incorporated in Ireland, is headquartered in Dublin, Ireland.

12. On information and belief, Defendant Accipiter Holdings DAC ("Accipiter Holdings"), a company incorporated in Ireland, is headquartered in Dublin, Ireland.

13. On information and belief, Defendant Wells Fargo Trust Company, N.A. ("Wells Fargo), a national banking association, not in its individual capacity, but solely as Owner Trustee, is headquartered in Salt Lake City, Utah.

14. On information and belief, Defendant UMB Bank, N.A. ("UMB"), a national banking association, not in its individual capacity, but solely as Owner Trustee, is headquartered in Salt Lake City, Utah.

15. All the Defendants as named in paragraphs No. 9-12 shall hereafter be collectively referred to as AMCK or individually as an AMCK entity.

16. Defendants Wells Fargo and UMB are named solely in their capacity as owner trustees.

17. This Court has diversity jurisdiction under 28 U.S.C. § 1332, since Plaintiff and Defendants are citizens of different states and the amount in controversy is greater than $75,000.

18. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(3), because the defendants are subject to the Court's personal jurisdiction by agreement of parties.

19. This Court has personal jurisdiction over Defendants because the parties submitted to the jurisdiction of this Court by agreement.

## FACTUAL ALLEGATIONS

**A.   The Sale Leaseback Structure**

20. Frontier relies on leased aircraft for 100% of its aircraft fleet. Aircraft leasing through sale and leaseback arrangements is a widely used method by airlines to finance new aircraft acquisition.

21. AMCK, through such sale and lease back arrangements, owns and leases fifteen aircraft to Frontier, making AMCK one of the largest lessors of Frontier.

22. Due to regulatory requirements in the United States, foreign leasing companies, such as AMCK, may only own and register aircraft through a U.S. owner trustee. Under this structure, a foreign leasing company typically has a special purpose entity, or a subsidiary, establish an owner trust with a U.S. bank or trust company. The trust, acting through an "Owner Trustee" holds the interest in the aircraft and acts as the lessor to the aircraft lease. The foreign leasing companies are the trustor to the owner trust and are referred to as an "Owner Participant" or "Beneficiary" in the Leases. Aircraft owner trusts are widely used in commercial aviation.

23. As a result of these requirements, the counterparty to each of the Lease Agreements is the trust company, not in its individual capacity but solely as owner trustee. To ensure contractual privity and provide assurance that the lessor's obligations under the agreements are performed by the leasing company that owns and controls the aircraft, the foreign leasing companies execute guarantees or participation agreements (or both) in favor of the lessee. The guarantees and participation agreement also may include verification and confirmation of a minimum net worth of the guarantor.

24. Commercial aviation is a heavily regulated industry. In addition to strict safety rules, aircraft lease transactions are subject to U.S. and global banking and finance regulations, including sanctions laws, export controls, and other banking laws. Indeed, thirteen of the Lease Agreements expressly provide that AMCK and its parent companies, including the ultimate parent company, CK Asset Holdings Limited, must be in compliance with U.S. export controls and sanctions laws.

25. In the Lease Agreements at issue in this action, Defendant Accipiter is the Owner Participant for fourteen of the transactions. Of those fourteen transactions, Accipiter serves as Guarantor for seven transactions and Accipiter Holding serves as Guarantor on the other seven.

5

26. Defendant Vermillion is Owner Participant and Guarantor for the fifteenth transaction.

27. Nominal Defendant Wells Fargo serves as Lessor and Owner Trustee for seven transactions, and nominal Defendant UMB serves as Lessor and Owner Trustee for the remaining eight transactions.

28. Defendant Accipiter serves as the Lease Manager (also referred to as the lease servicer) of fourteen of the fifteen Lease Agreements and Defendant AMCK Holdings serves as the Lease Manager of the final Lease Agreement. Under each of the Lease Agreements, the Lease Manager is authorized to act on behalf of the Lessors and it interfaces with Frontier on day-to-day leasing matters, including collecting Frontier's monthly rent payments—which total tens of millions of dollars each month—and communicating with Frontier regarding aircraft operations and maintenance.

**B.     The Lease Agreements Protect Frontier in the Event of a Change in Ownership**

29. Aircraft finance is an active market. Leasing companies trade their aircraft (including aircraft with active operating leases) directly or indirectly regularly. Leasing companies, like airlines, also go through relatively frequent acquisitions, restructurings, or mergers. Such transactions pose major risks to lessees because a lessor's creditworthiness and industry experience are directly relevant to a lessee's financial risks and rights in the aircraft.

30. Specifically, lessors owe significant financial responsibilities to lessees throughout the lease term. Typically, lessors must: (1) return the lessee's security deposit at the time of lease return; (2) reimburse the lessee for certain maintenance costs and expenses, including any airworthiness directives; (3) pay certain insurance proceeds to the lessee, and (4) maintain compliance with U.S. regulations regarding the aircraft's registered owner. These

6

standard obligations are part of the Lease Agreements and Operative Documents for each of the Leases at issue in this dispute.

31. The financial stability, industry experience, and regulatory compliance status of a lessor and owner participant directly affects their ability to satisfy these aircraft lease requirements.

32. Because of these recognized commercial risks, it is standard industry practice for lessees to demand that lessors agree and acknowledge to lessees that they will not: (1) make any transfers or assignments to a third party that do not have the required net worth (or having a guarantor that has such net worth) or is a competitor; (2) jeopardize the registration of the aircraft as a result of the transfer; and (3) conduct transfers, assignments, or novation in a manner that would increase lessee's risks or liabilities.

33. To that end, each of the fifteen Lease Agreements entered into by AMCK (through the respective Owner Trustees) and Frontier contain provisions protecting Frontier in the event of any transfer of an ownership interest with respect to the Lease Agreements or the aircraft.

34. Thirteen of the fifteen Lease Agreements are subject to substantially similar form lease agreements referred to as an Aircraft Operating Lease Agreement ("Aircraft Lease Form 1"). These leases each provide that the transfer of beneficial ownership, the grant of participations in the lease or other Operative Documents, or any other transfer or disposal of rights and obligations under the agreements are subject to certain preconditions.

35. Specifically, Section 20.2(a) of Aircraft Lease Form 1 provides in relevant part:

> Each of Lessor and Owner Participant (and any subsequent permitted assignee or transferee) shall have the right at any time, at its own expense and upon prior written notice to Lessee, to transfer ownership or beneficial ownership, as applicable, of the Aircraft, or to assign (including to assign as security), mortgage, novate, transfer, grant participations in, or otherwise dispose of its rights and

7

obligations under this Agreement and the other Operative Documents, to any other person by outright transfer or assignment or collateral assignment or by operation of law and Lessee hereby consents to any such transfer or assignment; provided that:

> (i) Lessee shall have no greater financial obligation or liability under this Agreement and the other Lessee Documents as a result of such transfer based on the facts and circumstances existing and applicable laws in effect at the time of such transfer, than it would have had if such transfer had not taken place . . . .
>
> . . .
>
> (iii) in the case of a sale of the Aircraft by Lessor or transfer of the beneficial interest of Owner Participant in the Aircraft or a transfer (other than to an Affiliate of the Lessor Guarantor) of a controlling interest in the Owner Participant, any such assignee or transferee shall be a Permitted Transferee and shall unconditionally guaranty the obligations of Lessor under this Agreement pursuant to a Guarantee in form substantially similar to the Guarantee executed by Owner Participant in favor of Lessee unless the existing Lessor Guarantee will remain in full force and effect following such transfer.

36. The remaining two leases share a different basic form ("Aircraft Lease Form 2").

Section 22.3 of Aircraft Lease Form 2 provides in relevant part:

> Lessor may sell, assign, novate or otherwise transfer its right, title and interest in the Aircraft or this Lease without Lessee's consent (a "Transfer"), subject to the following conditions:
>
> (i) the proposed purchaser, assignee or transferee (the "Transferee") shall enter into an agreement, reasonably satisfactory to Lessee, assuming all obligations of Lessor under this Lease and the other Operative Documents and of Beneficiary under the Participation Agreement and other Operative Documents;
>
> . . .
>
> (v) any Transfer will not increase Lessee's obligations, liabilities (financial or otherwise), or risks or diminish Lessee's rights and benefits, in each case under any Operative Document or in respect of the Aircraft (to be determined in each case as at the time of such Transfer by applying all applicable laws as are enacted and/or in effect on the effective date of such Transfer), . . . .

37. Consistent with generally accepted industry practice, the parties intended for conditions relating to the transfer of ownership by lessors to be interpreted broadly and to cover transfers occurring at different levels of the corporate structure that could have an impact on the commercial rights and risks faced by the lessee.

38. Lessees in the aircraft leasing market are permitted to examine any proposed transaction, pursuant to which interests in the lease are to be transferred, to confirm that the transfer preconditions under the lease are satisfied, and to receive assurances from the existing lessor parties as well as documentary evidence, that: (1) any fees incurred by lessee will be paid; (2) the new lessor will meet the criteria of a permitted transferee; and (3) the transaction will not prejudice the lessee's rights under the lease agreement.

39. Further, the guarantees (the "Guarantees") and participation agreements (the "Participation Agreements") executed in connection with the Lease Agreements provide further protection in the event of a transfer of interest.

40. Each of the fifteen Lease Agreements is guaranteed by the Owner Participant or a parent company.

41. Each of these Guarantees contains a representation and warranty from the Guarantor that it has a total net worth as determined in accordance with GAAP or similar internal accounting standard that exceed a specified dollar value that, in each case, is in the tens of millions of dollars.

42. The Guarantees further state that upon transfer of the Owner Participant's or Lessor's interest in the underlying transaction, the Guarantee shall terminate only upon execution of a replacement guarantee meeting the same requirements as the Guarantees (including assurances that the new guarantor has a net worth in excess of the specified dollar value).

43. Each Guarantor further agrees to be liable for the payment of all reasonable fees and expenses, including attorney's fees, incurred by Frontier in connection with the enforcement of the Guaranty.

44.     With respect to the other two transactions, the Owner Participants also entered into Participation Agreements with Frontier. These agreements function similarly to the Guarantees.

45.     Pursuant to the Participation Agreements, the Owner Participant may sell or transfer its interest *only* if the following conditions are met:

(1) the proposed transferee confirms in writing, in a form reasonably satisfactory to Frontier, its undertaking to perform the obligations of Owner Participant in a form substantially similar to the Participation Agreement;

(2) the Owner Participant pays Frontier's reasonable legal fees and costs incurred in connection with the transfer;

(3) the transferee entity meets certain requirements, including that it is a citizen of the U.S.; not an airline or aircraft operator; and has, or through a guarantee acceptable to Frontier by a person having, a minimum net worth of a specified value in the tens of millions of dollars;

(5) the transfer does not increase Frontier's obligations or risks or diminish Frontier's rights and benefits under any of the lease documents; and

(6) the transfer does not affect the registration of the aircraft.

46.     Frontier reasonably expected that AMCK would comply with the transfer provisions and guarantee requirements and provide documentary support in advance of any transfer of interest in the aircraft leases, in order to establish that the preconditions to any such transfer have been satisfied. To date, AMCK has failed to do so.

**C.  Frontier Learns of AMCK's Intent to Sell Its Interests in the Aircraft Portfolio to Carlyle, and AMCK Refuses to Provide the Contractually Required Assurances and Information Concerning the Transaction**

47.     In or about early January 2022, Frontier became aware through a press release issued by Carlyle in late December 2021, that AMCK entered into an agreement to sell its aviation assets to Maverick Aviation Partnership LP ("Maverick") (the "Carlyle Transaction"). On information and belief, Maverick is a Cayman Island entity managed by Carlyle Aviation Partners (together with Maverick and other affiliates or subsidiaries, "Carlyle").

48. The press release stated that Carlyle "has signed an agreement to acquire AMCK Aviation's ('AMCK') portfolio of aircraft." On information and belief, this sale includes all fifteen Frontier aircraft currently on lease with AMCK.

49. Frontier later learned additional details concerning the transaction based on disclosures made by AMCK's parent company, CK Asset Holdings Limited ("CK Asset").

50. Based on the disclosures made by CK Asset, upon information and belief, the aircraft portfolio owned by multiple AMCK affiliates will be sold to Maverick. The underlying Sale and Purchase Agreement will be entered into between CK Asset Holdings Limited and Carlyle.

51. As disclosed, upon information and belief, two holding companies will transfer their equity shares to Maverick, resulting in a change to the ultimate beneficial ownership of Lessor and Owner Participant. Upon closing, AMCK will exit from leasing management and operations entirely and Frontier will cease to interact with AMCK for any leasing matters.

52. No AMCK representative contacted Frontier about the proposed transaction or provided any information concerning the Carlyle Transaction or confirmation that the Carlyle Transaction will not diminish Frontier's rights and interests as Lessee.

53. Frontier has not consented to the Carlyle Transaction as it has not been provided with information necessary for its to ascertain that the requirements for transfer have been satisfied. Pursuant to the Lease Agreements, Frontier cannot be deemed to have consented to a proposed transaction unless Frontier has been provided sufficient information and assurances to determine that any fees incurred by Frontier will be paid, AMCK will remain liable to its existing obligations, and the transaction will not prejudice any of Frontier's rights under the Lease Agreements.

54. Frontier is further entitled to assurances that the Guarantees will remain in effect or be replaced by guarantees acceptable to Frontier executed by persons with sufficient net worth to protect Frontier and satisfy the Lessor's obligations under the Lease Agreements. Without written assurances and sufficient information to make these determinations, Frontier cannot be deemed to have consented to the proposed acquisition.

**D.    Frontier Requests Information Regarding the Carlyle Transaction but AMCK Refuses to Provide Any Information**

55. After learning of the transaction from public sources, Frontier immediately reached out to AMCK for details on the transaction. By written demand to AMCK dated January 4, 2022, Frontier requested that AMCK provide information and documents relating to the Carlyle Transaction.

56. By letter dated February 3, 2022, AMCK refused to provide any information concerning the acquisition and categorically denied that AMCK owes Frontier any obligations under the aircraft leases in connection with the Carlyle Transaction.

57. On or about March 4, 2022, Frontier sent AMCK another demand letter, again informing AMCK that it was in breach of its obligations and requesting that it immediately: (1) provide notice of the acquisition along with adequate information regarding the deal structure and its impact on the entities relevant to the leases; and (2) provide all other assignment instruments customarily reviewed in connection with lessor transfers.

58. On or about March 21, 2022, counsel for AMCK responded to the demand and reiterated AMCK's position that it would not be providing any information concerning the acquisition. Without providing any details concerning the transaction, AMCK stated that the transaction "does not involve any transfer or assignment by a Lessor or an Owner Participant" and, therefore, AMCK would not be providing the requested assurances and documentation.

AMCK's position violates the Lease Agreements and undermines the purpose of Section 20.2(a) and Section 22.3 in the Lease Agreements. AMCK's actions also flout established industry customs and norms concerning a lessor's obligations to a lessee with respect to the transfer of beneficial ownership interests in leased aircraft.

59. On or about March 30, 2022, AMCK notified Frontier that as a result of the Carlyle Transaction, AMCK will cease to be the Lease Manager and that AMCK expects Carlyle or one of its affiliates to act as the new manager (or servicer) under the Lease Agreements.

60. To effect this change in the servicer for the aircraft leases, however, the Owner Participants and Owner Trustees must grant participations to the Carlyle affiliates in the aircraft and aircraft lease. AMCK's letter provides no further information regarding the identity of the new manager or when such process will be completed.

61. A material change in Lease Manager directly affects Frontier's ability to perform under the Lease Agreements. Frontier makes its monthly rent payments directly to the Lease Manager. Absent sufficient information regarding the Lease Manager's identity, including information sufficient for Frontier to complete its compliance protocols and ensure that transferring funds to the entity will not violate any anti money laundering, sanctions, or similar law, and absent proof that the Owner Trustee and Owner Participants have granted participations to the entity, Frontier cannot make its rent payments and its interest in the Lease Agreements is jeopardized.

62. The March 30 letter provided no further information as to the corporate ownership changes that will take place at the lower level of each of the current AMCK subsidiaries, including the owner participants of each of the Frontier leased aircraft. To date, AMCK has failed to provide Frontier with an organizational chart specifying the relationship between the

holding entities whose shares are being sold and the entities that beneficially own Frontier aircraft such that Frontier can understand the extent of a beneficial ownership change.

63. Additionally, while the March 30 letter directly contradicted AMCK's initial position that the Carlyle transfer is not relevant to Frontier and that the lease transfer provisions do not apply, the letter nonetheless fell far short of affirming that all the transfer requirements have been or will be met at the time of closing.

64. In particular, the letter provides a general statement about Carlyle's overall asset status but does not otherwise offer any support for AMCK's assertion that Carlyle will be a competent servicer. Further, the general information about Carlyle's assets is not specific to the Carlyle-affiliated entity or entities that will actually be involved in the lease-transfer transaction, and is plainly insufficient to establish that the new Carlyle-affiliated entity has the required net worth as determined by GAAP. AMCK's vague statement that it is "confident that Carlyle will have the expertise to continue managing the relevant aircraft and aircraft leases" is not sufficient to affirm that Frontier's rights and benefits will not be diminished or that Frontier's risks are not increased because of any asset migration that AMCK and Carlyle may have agreed to in connection with the Carlyle Transaction.

65. Frontier understands on information and belief that the Carlyle Transaction is scheduled to close on April 12, 2022.

66. Despite Frontier's repeated demands to AMCK and attempts to learn details of the transactions through public and other channels, and the imminent closing of the Carlyle acquisition, AMCK has failed to provide sufficient details relating to the Carlyle acquisition sufficient for Frontier to be deemed to have consented to the transaction. Absent an adequate demonstration that the preconditions under Section 20.2 and Section 22.3 of the Lease

Agreements are satisfied in connection with the Carlyle acquisition, Frontier does not consent, and cannot contractually be deemed to consent, to any transfer of beneficial interests with respect to the Lease Agreements.

## FIRST CLAIM FOR RELIEF
**(Breach of Contract)**

67. Frontier incorporates the allegations in paragraphs 1-66, as if fully set forth herein.

68. AMCK, through various AMCK entities and the respective owner trustees, has executed 15 valid aircraft Lease Agreements and related documentation, including Guarantees and Participation Agreements, for each of the 15 aircraft that Frontier leases from it.

69. Each of the aircraft Lease Agreements, Guarantees, and Participation Agreements are in full force.

70. Frontier has performed its obligations under the Lease Agreements, Guarantees, and Participation Agreements.

71. Each of the Lease Agreements provides for Frontier's consent to certain lease-transfer transactions only in circumstances where certain preconditions have been satisfied, in order to ensure that Frontier's rights under the agreements will not be impaired.

72. AMCK has informed Frontier of its intent to transfer its interests in each of the Lease Agreements to Carlyle.

73. AMCK breached its contractual obligations by refusing to provide information about the Carlyle Transaction, by failing to take any action to ensure that Frontier's rights as lessee are not diminished (including by proposing proper lease amendments and proposing amendment or assignment of the Tripartite Agreement), and improperly deeming Frontier to have consented to the transaction.

74. AMCK breached the Lease Agreements and related documentation, including the Guarantees and Participation Agreements, by failing to provide Frontier the opportunity to examine the transaction and the new lessor to confirm that the transfer requirements under the lease are satisfied in connection with the Carlyle Transaction.

75. AMCK further breached the Lease Agreements and related documentation, including the Guarantees and Participation Agreements, by failing to provide Frontier with assurances and documentary support that in connection with the Carlyle Transaction: (1) any fees incurred by lessee will be paid, (2) the existing lessor will remain liable to any existing obligations (unless proper assignment arrangement has been made and agreed to by the parties); and (3) the transaction will not prejudice the lessee's rights under the lease agreement.

76. AMCK's breach of the Lease Agreements caused, and continues to cause, reasonably foreseeable damages to Frontier by diminishing Frontier's rights under the Lease Agreements, diminishing the value of the Lease Agreements, and causing Frontier to incur costs and expenses, all in an amount to be determined at trial.

## SECOND CLAIM FOR RELIEF
**(Declaratory Judgment)**

77. Frontier incorporates the allegations in paragraphs 1-76, as if fully set forth herein.

78. Pursuant to the Lease Agreements, upon a transfer of beneficial ownership or the grant of participations in the lease or other operative documents by operation of law or by transfer, Frontier is deemed to have consented to the transfer or grant only if AMCK provides Frontier with sufficient information and assurances to conclude that the transaction will not diminish Frontier's rights and interests under the Lease Agreements.

16

79. AMCK has failed to provide sufficient information to determine whether the Carlyle Transaction satisfies the requirements of the Lease Agreements, the Guarantees, and the Participation Agreements.

80. Frontier has attempted to resolve this dispute arising from the Carlyle Transaction, but AMCK has refused to provide Frontier with the required information and assurances despite repeated demand.

81. Absent such assurances, the fundamental economic bargain of the Lease Agreements is undermined and Frontier's rights with respect to its aircraft are in jeopardy.

82. This dispute is a justiciable controversy pursuant 28 U.S.C. § 2201.

83. Frontier is entitled to a declaration that it is entitled to sufficient information from AMCK that will enable Frontier to determine whether the Carlyle Transaction satisfies the requirements of the Lease Agreements.

### THIRD CLAIM FOR RELIEF
(Declaratory Judgment)

84. Frontier incorporates the allegations in paragraphs 1-83, as if fully set forth herein.

85. Pursuant to the Lease Agreements, upon a transfer of beneficial ownership or the grant of participations in the lease or other operative documents by operation of law or by transfer, Frontier is deemed to have consented to the transfer or grant only if AMCK provides Frontier with sufficient information and assurances to conclude that the transaction will not diminish Frontier's rights and interests under the Lease Agreements.

86. Pursuant to the Guarantees and Participation Agreements, AMCK may transfer or otherwise relieve itself of its obligations under those agreements only if certain conditions are

met, including written assumption of AMCK's obligations and confirmation of the transferee's net worth and legal status.

87. Absent such information, Frontier is not deemed to have consented to the Carlyle Transaction.

88. AMCK has failed to provide sufficient information to determine whether the Carlyle Transaction satisfies the requirements of the Lease Agreements despite Frontier's repeated demands.

89. Absent such assurances, the fundamental economic bargain of the Lease Agreements is undermined and Frontier's rights with respect to its aircraft are in jeopardy.

90. As a result of AMCK's refusal to provide this information, Frontier is not deemed to have consented to the transaction under the Lease Agreements.

91. Frontier has attempted to resolve this dispute arising from the Carlyle Transaction, but AMCK has refused to provide Frontier with the required information and assurances.

92. This dispute is a justiciable controversy pursuant 28 U.S.C. § 2201.

93. Frontier is entitled to a declaration that it is not deemed to have consented to the transfer of the Lease Agreements in connection with the Carlyle Transaction.

### FOURTH CLAIM FOR RELIEF
**(Injunctive Relief)**

94. Frontier incorporates the allegations in paragraphs 1-93, as if fully set forth herein.

95. Pursuant to the Lease Agreements, Guarantees, and Participation Agreements, in connection with a transfer of beneficial ownership or the grant of participations in the lease or other operative documents by operation of law or by transfer, Frontier is entitled to information

to establish that the new beneficial owner is a permitted transferee and a guaranty by that new owner of the Lessor's obligations under the Lease Agreements.

96. Absent information sufficient to confirm that the transferee is a permitted transferee and that Frontier is legally permitted to do business with the entity, Frontier is unable to make its rent payments, jeopardizing Frontier's interest in the Lease Agreements.

97. AMCK has failed to provide sufficient information to establish that the new beneficial owner is a permitted transferee and a guaranty by that new owner of the Lessor's obligations under the Lease Agreements.

98. Frontier has attempted to resolve this dispute arising from the Carlyle Transaction, but AMCK has refused to provide Frontier with the required information and assurances.

99. If Frontier is not legally permitted to make its rent payments, it will suffer irreparable harm with respect to its rights in the leased aircraft.

100. Frontier seeks an order providing that until such time as it is determined that AMCK has entered into a lawful lease-transfer transaction with a permitted transferee, all rent due under the lease should be paid into Court pursuant to Fed. R. Civ. P. 67 or alternatively held in escrow.

**WHEREFORE**, Frontier prays for judgment in its favor against defendants AMCK and AMCK entities as follows:

1. On its First claim for relief, damages in an amount to be determined, prejudgment and post judgment interest, and reasonable attorney's fees and costs;

2. On its Second claim for relief, a declaration that it is entitled to sufficient information from AMCK that will enable Frontier to determine whether the

      Carlyle Transaction satisfies the requirements of the Lease Agreements, plus reasonable attorney's fees and costs;

3. On its Third claim for relief, a declaration that Frontier is not deemed to have consented to the Carlyle Transaction, plus reasonable attorney's fees and costs;

4. On its Fourth claim for relief, an order directing that until such time as it is determined that AMCK has entered into a lawful lease-transfer transaction with a permitted transferee, all rent due under the lease should be paid into Court pursuant to Fed. R. Civ. P. 67 or alternatively held in escrow, plus reasonable attorney's fees and costs; and

5. For such other relief as the court deems reasonable and just.

Dated: April 8, 2022

                                      Respectfully submitted,

                                      **BINDER & SCHWARTZ LLP**

                          By: /s/ Eric B. Fisher
                              Eric B. Fisher
                              Neil S. Binder
                              Tessa B. Harvey
                              366 Madison Avenue, 6th Floor
                              New York, New York 10017
                              Telephone No.: (212) 510-7008
                              Facsimile No.: (212) 510-7299
                              Email: efisher@binderschwartz.com

                              *Attorneys for Plaintiff Frontier Airlines, Inc.*