EXECUTION VERSION

## Participation Agreement MSN 6184

**THIS PARTICIPATION AGREEMENT MSN 6184** (this "**Agreement**") is made as of this 15th day of December 2017, among:

(1)    **ACCIPITER INVESTMENTS AIRCRAFT 4 LIMITED**, a company incorporated with limited liability under the laws of Ireland, with its registered office at 28/29 Sir John Rogerson's Quay, Dublin 2, Ireland ("**Owner Participant**");

(2)    **WELLS FARGO BANK NORTHWEST, NATIONAL ASSOCIATION**, a national banking association formed under the federal laws of the United States of America, in its individual capacity only as expressly stated herein (in such capacity "**Bank**") and otherwise not in its individual capacity but solely as Owner Trustee under the Trust Agreement (as defined below) (in such capacity "**Owner Trustee**" or "**Lessor**"); and

(3)    **FRONTIER AIRLINES, INC.**, a corporation incorporated under the laws of Colorado, with its principal place of business at 7001 Tower Road, Denver, Colorado 80249, U.S.A. ("**Lessee**").

## RECITALS:

**WHEREAS**, Owner Participant desires Lessor to continue leasing, and Lessor desires to continue leasing, the Aircraft to Lessee and Lessee desires to continue leasing the Aircraft from Lessor pursuant to the terms of the Lease; and

**WHEREAS**, in connection with the transaction described above, the parties hereto desire to make to, and obtain from, each other certain representations, warranties and covenants;

**NOW, THEREFORE**, in consideration of the mutual agreements herein contained, the parties hereto agree as follows:

**Section 1.**    <u>Definitions</u>.  Unless the context otherwise requires, the following terms shall have the following meanings for all purposes of this Agreement and shall be equally applicable both to the singular and plural forms of the terms defined.  Any capitalized terms not defined herein (including the Recitals) shall have the meanings ascribed to them in the Lease (as defined below).

"**Code**" means the Internal Revenue Code of 1986, as amended from time to time.

"**Effective Date**" means December 15, 2017.

"**ERISA**" shall mean the Employee Retirement Income Security Act of 1974, as amended, and any regulations and rulings issued thereunder.

"**Estate**" means the trust estate created under the Trust Agreement.

"**Lease**" means that certain Aircraft Operating Lease Agreement dated as of June 9, 2014, as amended, supplemented , or modified from time to time, between Wells Fargo Bank

Northwest, National Association, not in its individual capacity, but solely as owner trustee, as Lessor, and Frontier Airlines, Inc., as Lessee.

"**Owner Participant Agreements**" means this Agreement, the Trust Agreement, any supplement to the Trust Agreement, and each other agreement between Owner Participant and any other party to the Participation Agreement, relating to the foregoing.

"**Owner Trustee Documents**" means this Agreement, the Lease, the Lease Supplement, the Trust Agreement, any supplement to the Trust Agreement, and each other agreement between Owner Trustee and any other party to the Participation Agreement, relating to the foregoing.

"**OP Transferee**" shall have the meaning set forth in Section 3.1(a)(1) hereof.

"**OP Transfer**" shall have the meaning set forth in Section 3.1(a) hereof.

"**Plan**" shall mean any employee benefit plan within the meaning of Section 3(3) of ERISA subject to Title I of ERISA, and any plan within the meaning of Section 4975(e)(1) of the Code subject to Section 4975 of the Code.

"**Securities Act**" shall mean the Securities Act of 1933, as amended from time to time.

"**Transaction Documents**" means the Owner Participant Agreements and all documents, instruments and certificates delivered pursuant hereto or thereto.

"**Trust Agreement**" means that certain Amended and Restated Trust Agreement dated as of December 15, 2017 between Owner Participant as trustor and Bank as trustee.

**Section 2.**    Representations, Warranties and Covenants.

2.1    Owner Participant's Representations, Warranties and Covenants.

(a)    Representations and Warranties.  To induce the Lessee and Owner Trustee to enter into this Agreement and consummate the transactions contemplated hereby, Owner Participant represents and warrants that:

(1)    Status.  Owner Participant is duly incorporated and validly existing under the laws of Ireland.

(2)    Non-Conflict.  Execution, delivery and performance of this Agreement and the other Transaction Documents to which Owner Participant is a party do not contravene or constitute a default under (i) any law binding on Owner Participant, (ii) the constitutional documents of Owner Participant, or (iii) any document which is binding on Owner Participant or any of its assets.

(3)    Power and Authority.  Owner Participant has all necessary power and authority to execute, deliver and perform this Agreement and the other Transaction Documents to which Owner Participant is a party, and this Agreement and the other

Transaction Documents to which Owner Participant is a party have been duly authorized, executed and delivered by Owner Participant.

(4)    <u>Approvals</u>.  No authorization or approval or other action by, and no notice to or filing with, any governmental authority or regulatory body that has not already been obtained is required for the due execution, delivery or performance by it of the Transaction Documents.

(5)    <u>No Offers</u>.  Neither Owner Participant nor anyone authorized by it to act on its behalf (it being understood that in proposing, facilitating and otherwise taking any action in connection with the financing contemplated in relation to the Operative Documents and agreed to by Owner Participant, Lessee has not acted as agent of Owner Participant) has directly or indirectly offered any interest in and to the Estate, the Trust Agreement or any similar interest for sale to, or solicited any offer to acquire any of the same from, any Person; Owner Participant's interest in the Estate and the Trust Agreement is being acquired for its own account and is being purchased for investment and not with a view to any resale or distribution thereof in violation of the Securities Act, provided that the disposition of its properties shall at all times be and remain within its control.

(6)    <u>No Lessor Liens</u>.  On the Effective Date, the Estate shall be free of Lessor Liens attributable to Owner Participant other than any Specified Lessor Liens.

(7)    <u>ERISA</u>.  Owner Participant is not acquiring its interest in the Aircraft, the Lease and the other Operative Documents or the Estate with funds that constitute, directly or indirectly, the assets of any Plan.

(8)    <u>Brokers</u>.  No Person acting on behalf of Owner Participant or Owner Trustee is or will be entitled to any broker's fee, commission or finder's fee in connection with the Transaction Documents.

(9)    <u>Legal Validity</u>.  Owner Participant's obligations under this Agreement and the other Transaction Documents to which Owner Participant is a party are legal, valid, binding and enforceable against Owner Participant in accordance with their terms except as such enforceability may be limited by (i) applicable bankruptcy and similar laws affecting creditors' rights generally and (ii) general principles of equity.

(10)    <u>Eligible FAA Trust</u>.  The Trust Agreement will be in a form that permits the Aircraft to be registered with the FAA in the name of the Owner Trustee (without regard to any provision of applicable law that permits FAA registration of an aircraft by limiting its location and usage), notwithstanding the failure of Owner Participant to be a "citizen of the United States" as defined in Section 40102(a)(15) of Title 49 of the U.S.C.

(11)    <u>Owner Trustee</u>.[1]  On the Effective Date, Owner Trustee will have such title and interest in the Aircraft as was transferred to it by Airbus S.A.S. on the

---

[1] Subject to comment by Wells Fargo and U.S. counsel.

Delivery Date and such title and interest shall be sufficient to enable it to continue leasing the Aircraft to Lessee under, and otherwise perform the obligations of Lessor under, the Lease.

(12)    Not an Airline.  Owner Participant is not an airline, aircraft operator, freight forwarder, or an Affiliate thereof.

(b)    Covenants.  To induce the Lessee and Owner Trustee to enter into this Agreement and consummate the transactions contemplated hereby, Owner Participant and Owner Trustee, as applicable, covenant and agree that:

(1)    No Termination, etc.  Owner Participant will comply with the provisions of the Trust Agreement applicable to it to the extent non-compliance would adversely affect Lessee, and will not terminate or revoke the trusts created by the Trust Agreement, a true and complete copy of which is attached hereto as Exhibit A, or amend, supplement or otherwise modify any provision of the Trust Agreement in such a manner as to adversely affect the rights of Lessee without Lessee's prior written consent.

(2)    Removal of Trustee.  So long as the Aircraft is subject to the Lease, Owner Participant will exercise its powers under the Trust Agreement to promptly remove the institution serving as Owner Trustee if such institution, to Owner Participant's knowledge, shall cease to be, or Owner Participant believes that the Owner Trustee is likely to cease to be, a "citizen of the United States" within the meaning of Section 40102(a)(15) of Title 49 of the U.S.C.

(3)    Lessor's Performance.  Owner Participant shall cause Owner Trustee to perform all of its obligations under the Owner Trustee Documents, including without limitation, providing Owner Trustee with sufficient funds to ensure that Owner Trustee will be able to refund any Security Deposit due to Lessee, pay any amounts that become due and payable to Lessee pursuant to Section 5.4 of the Lease and pay to Lessee all sums to be paid by Lessor to Lessee under the Lease, if any.  To the extent of any nonperformance thereof by Owner Trustee, Owner Participant hereby assumes and agrees to perform the obligations of Owner Trustee and agrees to pay such amounts as may become payable by Owner Trustee under the Lease and other Owner Trustee Documents on a full recourse, joint and several basis, as and when due, as and to the extent expressly provided in the Lease and the other Owner Trustee Documents to be due and payable by Owner Trustee (including subject to any limitation or condition applicable to Lessor's payment obligations). Lessee shall be under no obligation to first make demand on and pursue Owner Trustee for performance of any of its obligations under the Owner Trustee Documents, but may instead immediately make demand upon and require Owner Participant to perform any obligation of Owner Trustee under the Owner Trustee Documents upon Owner Trustee's failure to perform the same.

(4)    Quiet Enjoyment.  In addition to, and not in lieu of the covenant of quiet enjoyment contained in the Lease, Owner Participant covenants and agrees with Lessee that so long as no Event of Default shall have occurred and be continuing, Owner Participant shall not, and Owner Participant shall not permit any person lawfully claiming

through or under it to, interfere with Lessee's rights under the Lease, or any Permitted Sublessee's rights under a Permitted Sublease, to the continued quiet use, possession and enjoyment of the Aircraft during the Lease Period; provided that if any of the insurance coverages required by Section 16 of the Lease are not in effect, Owner Participant may cause Lessor to require that the Aircraft be grounded during the period while such insurances are not in effect. The lawful exercise of Owner Participant's rights of inspection or other rights provided under the Lease shall not be considered to be a breach of the foregoing covenant.

(5)    Eligible FAA Trust. So long as the Aircraft is subject to the Lease, if the Trust Agreement shall cease to permit the Aircraft to be registered with the FAA in the name of the Owner Trustee (without regard to any provision of applicable law that permits FAA registration of an aircraft by limiting its location and usage), then Owner Participant shall (at its own expense and without reimbursement or indemnification from Lessee) as soon as is reasonably practicable, but in any event within sixty (60) days of when any responsible officer of Owner Participant, customarily having responsibilities for transactions comparable to those contemplated by this Agreement, obtains actual knowledge of such ineligibility, take such action as may be necessary to prevent any deregistration and maintain the United States registration of the Aircraft and full eligibility therefor without restriction as to use. Owner Participant shall be responsible for any costs and expenses (including fees and disbursements of counsel) of the deregistration and subsequent reregistration of the Aircraft in the United States as a result of the failure of the Trust Agreement to be in the form required in order to permit the continued registration of the Aircraft with the FAA in the name of the Owner Trustee.

(6)    Instructions to Owner Trustee. Owner Participant agrees that its execution of this Agreement and of the Trust Agreement shall constitute, without further act, authorization and direction by Owner Participant to Owner Trustee, subject only to the conditions precedent contained in the Lease:

(i)    to execute the relevant Owner Trustee Documents and any required FAA registration application with respect to the Aircraft and the Cape Town Registrations;

(ii)    to take such other action as may be required to be taken by Owner Trustee on or at any time following the date of the Effective Date by the terms of any Operative Document.

(7)    Ownership. Owner Participant is the one hundred percent owner of the beneficial interests in the Estate and any transfer of such interest shall be made in accordance with Section 3 hereof.

2.2    Owner Trustee's Representations, Warranties and Covenants.

(a)    To induce the Lessee and Owner Participant to enter into this Agreement and consummate the transactions contemplated hereby, Owner Trustee hereby restates, as of the date hereof and as of the Effective Date, for the benefit of each of the Lessee and the Owner

Participant each of the representations and warranties made by the Lessor in paragraph 2 of Schedule 2 of the Lease, subject to the same limitations and disclaimers as set forth in the Lease, and each such representation, warranty, limitation and disclaimer is incorporated by reference as though set forth in full herein.

(b)    Subject to and in accordance with the terms of the Trust Agreement (including without limitation Section 3.06 thereof), Owner Trustee will file any withholding or other information returns required by applicable law and regulations in the United States with respect to all payments received by it for the account of, or made by it to, Owner Participant and will withhold and deposit in a timely manner with the applicable governmental authority any Taxes required to be withheld under such laws and regulations with respect to such payments.

2.3    Lessee's Representations, Warranties and Covenants.  To induce the Owner Trustee and Owner Participant to enter into this Agreement and consummate the transactions contemplated hereby, Lessee hereby restates, as of the date hereof and as of the Effective Date, for the benefit of the Owner Trustee and Owner Participant, each of the representations and warranties of Lessee set forth in paragraphs (a) through (f) of Section 1 of Schedule 2 of the Lease, but, in the case of paragraphs (b) through (f) of such Section 1, only in respect of this Agreement.  Lessee also agrees that any claim it may otherwise be entitled to make with respect to a breach by Owner Participant of Section 2.1(b)(4) of this Agreement would be subject to the limitations set forth in the Lease, including without limitation, the limitations set forth in Sections 8.3 and 18.3 of the Lease. Lessee further agrees that the disclaimer of consequential damages set forth in Section 18.3 of the Lease shall apply to any claim hereunder against Owner Participant.  Finally, Lessee agrees, upon the request and at the sole expense of Owner Participant, to cooperate with Owner Participant in complying with its obligations under Section 2.1(b)(5) of this Agreement.

**Section 3.**    Assignment or Transfer of Interests.

3.1    Transfer of Owner Participant's Interest.

(a)    Owner Participant may sell, assign or transfer (whether directly or indirectly through an operation of law transfer such as a merger, consolidation or sale of membership interests) all or any of its rights under the Owner Participant Agreements, including, without limitation, Owner Participant's rights, title and interests in and to the Aircraft and the Estate (an "**OP Transfer**"), only if it complies with the following conditions:

(1)    the proposed purchaser, assignee or transferee (the "**OP Transferee**") shall confirm in writing, in a form reasonably satisfactory to Lessee, its undertaking to perform the obligations of Owner Participant in a form substantially similar to this Agreement;

(2)    Owner Participant shall be responsible for Lessee's reasonable legal fees and other reasonable costs and expenses incurred in respect of such OP Transfer and shall pay such costs and expenses promptly upon demand therefor;

(3)    the OP Transferee shall (i) not be an airline, aircraft operator, freight forwarder, or an Affiliate thereof and (ii) have (or be guaranteed, through a

guarantee agreement reasonably acceptable to Lessee, by a person having) a minimum tangible net worth of ████████ as determined by IFRS as of the time of and immediately after giving effect to such OP Transfer;

(4)    the OP Transferee must be a "citizen of the United States" under Section 40102(a)(15) of Title 49 of the U.S.C. or must otherwise permit Lessor to qualify for the continued United States registration of the Aircraft without restriction as to use;

(5)    the OP Transfer will not increase Lessee's obligations, liabilities (financial or otherwise), or risks or diminish Lessee's rights and benefits, in each case under any Operative Document or in respect of the Aircraft (to be determined in each case as at the time of such OP Transfer by applying all applicable laws as are enacted and/or in effect on the effective date of such OP Transfer), it being acknowledged by Lessee that the inclusion of the OP Transferee as an Indemnitee and as an Additional Insured will not constitute an increase in Lessee's obligations, liabilities or risks; and

(6)    the OP Transfer shall not affect the U.S. registration of the Aircraft (assuming the Aircraft is registered in the U.S. at the time of the transfer) or the registration of the Aircraft in any other country where the Aircraft may be registered at the time of such OP Transfer.

(b)    Notwithstanding any such OP Transfer, Owner Participant will remain entitled to indemnification under and in accordance with the terms of the Lease, and will remain entitled to the benefit of the liability insurances effected pursuant to the Lease for a period of not less than two (2) years after such OP Transfer.

(c)    Upon compliance by Owner Participant and an OP Transferee with the terms and conditions of Section 3.1(a) of this Agreement, Lessee shall, at Owner Participant's cost and expense, execute and deliver in connection with such OP Transfer such documents and assurances (including a consent to the OP Transfer and an agreement substantially in the form of this Agreement) and take such further action as Owner Participant may reasonably request to establish or protect the rights and remedies created or intended to be created in favor of the OP Transferee in connection with such OP Transfer.

3.2    Owner Trustee.  Bank or any successor institution serving as Owner Trustee may resign or be removed by Owner Participant, a successor may be appointed, and a corporation may become Owner Trustee under the Trust Agreement in accordance with transfer provisions of the Trust Agreement and of the Lease.  So long as the Aircraft is subject to the Lease, any successor institution serving as Owner Trustee shall be a "citizen of the United States" within the meaning of Section 40102(a)(15) of Title 49 of the United States Code and, for so long as Owner Participant is not a U.S. person, any such successor institution serving as Owner Trustee shall be a U.S. bank or trust company, and such appointment shall not violate any provisions of the Act or create a relationship which would be in violation of the Act.

**Section 4.**    Miscellaneous.

4.1    Incorporation of Miscellaneous Provisions of the Lease.  The following provisions of the Lease are hereby incorporated by reference, mutatis mutandis, with all

references in the incorporated provisions to the "Agreement" meaning this Participation Agreement, all references to "Lessor" being references herein to "Lessor", "Owner Trustee" and "Owner Participant", all references to "Lessee" being references herein to "Lessee", and all references to "party" being references herein to each party to this Agreement:  Section 18 (Disclaimers); Section 23.6 (Time of Essence); Section 23.7 (Entire Agreement); Section 23.10 (Counterparts); Section 23.11 (Language); Section 23.14 (Invalidity of any Provision); Section 23.16 (True Lease); Section 23.17 (Section 1110); Section 25.1 (Governing Law) and Section 25.2 (Jurisdiction).

4.2     Successors and Assigns.  The terms of this Agreement shall be binding on, and inure to the benefit of, Lessee and its permitted successors and assigns, Lessor and its permitted successors and assigns and Owner Participant and its permitted successors and assigns.

4.3     Notices. Etc.  All notices and other communications under, or in connection with, this Agreement will, unless otherwise stated, be given and will become effective in the same manner as provided in Section 24.1 of the Lease.

The address, facsimile number and email of the Owner Participant is as follows:

| | |
|---|---|
| Address: | Accipiter Investments Aircraft 4 Limited |
| | 28/29 Sir John Rogerson's Quay |
| | Dublin 2 |
| | Ireland |
| Attn: | The Directors |
| Fax: | +353 1 517 0199 |
| Email: | directors@accipiter.ie |

4.4     Concerning Owner Trustee.  Except as otherwise expressly provided herein, it is expressly understood and agreed by the parties hereto that (a) this Agreement is executed and delivered by Bank, not individually or personally but solely as owner trustee under the Trust Agreement, in the exercise of the powers and authority conferred and vested in it as trustee, (b) each of the representations, undertakings and agreements herein made on the part of the Owner Trustee is made and intended not as personal representations, undertakings and agreements by Bank, but is made and intended for the purpose of binding only the Estate and (c) nothing herein contained shall be construed as creating any liability on Bank, individually or personally, to perform any covenant either expressed or implied contained herein, all such liability, if any, being expressly waived by the parties hereto and by any Person claiming by, through or under the parties hereto.  However, nothing in this Section 4.4 shall limit in scope or substance the general corporate liability of Bank (x) to the Owner Participant under the Trust Agreement, (y) for the representations, warranties, agreements, and covenants of Bank set forth in any of the Owner Trustee Documents or other Transaction Documents to which it is or becomes a party, or (z) for the consequences of its own gross negligence or willful misconduct.

4.5     Confidentiality.  Subject to the exceptions set forth in Section 23.12 of the Lease, the parties hereto agree to keep this Agreement and any documents, materials and information provided in connection with this Agreement or the Operative Documents confidential and shall not disclose, or cause to be disclosed the same to any Person.

[REMAINDER OF THIS PAGE INTENTIONALLY LEFT BLANK]

**IN WITNESS WHEREOF**, the parties hereto have caused this Participation Agreement to be duly executed as of the day and year first above written.

"LESSEE"

**FRONTIER AIRLINES, INC.**

By: _____

Title: _____

James G. Dempsey
Chief Financial Officer

"OWNER PARTICIPANT"

**ACCIPITER INVESTMENTS
AIRCRAFT 4 LIMITED**

By: _____

Title: _____

By: _____

Title: _____

"OWNER TRUSTEE" and "BANK"

**WELLS FARGO BANK NORTHWEST,
NATIONAL ASSOCIATION,** not in its
individual capacity, except as expressly
provided herein, but solely as Owner
Trustee

By: _____

Title: _____

**IN WITNESS WHERE**OF, the parties hereto have caused this Participation Agreement to be duly executed as of the day and year first above written.

"LESSEE"

**FRONTIER AIRLINES, INC.**

By:_____
    Title:

"OWNER PARTICIPANT"

**ACCIPITER INVESTMENTS
AIRCRAFT 4 LIMITED**

By: _Paul Sheridan_____
    Title:     **Paul Sheridan**
             **Attorney-in-fact**

By: _Christine Davin_____
    Title:     **Christine Davin**
             **Attorney-in-fact**

"OWNER TRUSTEE" and "BANK"

**WELLS FARGO BANK NORTHWEST,
NATIONAL ASSOCIATION,** not in its
individual capacity, except as expressly
provided herein, but solely as Owner
Trustee

By:_____
    Title:

IN WITNESS WHEREOF, the parties hereto have caused this Participation Agreement to be duly executed as of the day and year first above written.

"LESSEE"

FRONTIER AIRLINES, INC.

By:_____
   Title:

"OWNER PARTICIPANT"

ACCIPITER INVESTMENTS
AIRCRAFT 4 LIMITED

By:_____
   Title:

By:_____
   Title:

"OWNER TRUSTEE" and "BANK"

WELLS FARGO BANK NORTHWEST,
NATIONAL ASSOCIATION, not in its
individual capacity, except as expressly
provided herein, but solely as Owner
Trustee

By:_____
   Title:
       Hillary Pavia
      Assistant Vice President

**Exhibit A to Participation Agreement MSN 6184**

**FORM OF AMENDED AND RESTATED TRUST AGREEMENT (6184)**

[To be inserted]

EXECUTION VERSION

## AMENDED AND RESTATED TRUST AGREEMENT
## (6184)

**THIS AMENDED AND RESTATED TRUST AGREEMENT (6184)**, dated as of _____ __, 2017, (the "**Agreement**") by and between **ACCIPITER INVESTMENTS AIRCRAFT 4 LIMITED**, a company incorporated with limited liability under the laws of Ireland ("**Trustor**"), and **WELLS FARGO BANK NORTHWEST, NATIONAL ASSOCIATION**, a national banking association organized and existing under the laws of the United States of America ("**Owner Trustee**");

WITNESSETH:

**WHEREAS**, JSA Aircraft 6184, LLC ("**Prior Trustor**") and Owner Trustee are parties to that certain Trust Agreement (MSN 6184) dated as of June 9, 2014 (the "**Existing Trust Agreement**");

**WHEREAS**, Prior Trustor and Trustor are parties to that certain Beneficial Interest Assignment dated the date hereof, among, inter alios, Prior Trustor, as seller, Trustor, as transferee and Owner Trustee, pursuant to which the Prior Trustor assigned and the Trustor assumed all the beneficial interest in and to the Existing Trust Agreement;

**WHEREAS**, Trustor wishes to further amend and restate the Existing Trust Agreement to ensure the eligibility of the Aircraft for United States registration with the Federal Aviation Administration (the "**FAA**");

**NOW**, **THEREFORE**, in consideration of the mutual covenants and agreements contained herein, Trustor and Owner Trustee agree that the Existing Trust Agreement shall be amended and restated as follows:

## ARTICLE 1

## DEFINITIONS

Capitalized terms used in this Agreement shall have the respective meanings assigned thereto below, unless such terms are otherwise defined herein or the context hereof shall otherwise require. The terms "hereof", "herein", "hereunder" and comparable terms refer to this Agreement, as amended, modified or supplemented from time to time, and not to any particular portion hereof. References in this Agreement to sections, paragraphs and clauses are to sections, paragraphs and clauses in this Agreement unless otherwise indicated.

"**Affidavit**" means the Affidavit of Owner Trustee pursuant to Section 47.7(c)(2)(iii) of Part 47 of the Federal Aviation Regulations.

"**Aircraft**" means the Airbus A320-214 Aircraft, serial number 6184, FAA Registration Number N227FR together with the CFM International, Inc. CFM56-5B4/3 engines, bearing manufacturer's serial numbers 569346 and 569347, which are transferred to the Owner Trustee in trust under this Trust Agreement.

[Amended and Restated Trust Agreement (6184)]

"**Aircraft Registration Application**" means AC Form 8050-1 Aircraft Registration Application by Owner Trustee covering the Aircraft.

"**Beneficial Interest Certificate**" means a beneficial interest certificate in the form of Annex I of this Agreement, duly completed."

"**Citizen of the United States**" means "citizen of the United States" as that term is defined in Section 40102(a)(15) of Title 49 of the United States Code.

"**FAA**" means the Federal Aviation Administration of the United States or any Government Entity succeeding to the functions of such Federal Aviation Administration.

"**FAA Bill of Sale**" means an AC Form 8050-2 Bill of Sale for the Aircraft from Trustor to Owner Trustee.

"**Lease**" means any agreement (including an Operating Agreement) from time to time entered into by Owner Trustee and Lessee that transfers the right to possess, use and operate the Aircraft to such Lessee.

"**Lessee**" means any lessee under any Lease, or any operator under any Operating Agreement.

"**Operating Agreement**" means any operating agreement (including a Lease) that transfers the right to possess, use and operate the Aircraft from the Owner Trustee to the Lessee.

"**Person**" means any individual, corporation, partnership, joint venture, association, company, trust, non-incorporated organization, business other entity or institution, but not including government or any agency or political subdivision thereof.

"**Trust**" has the meaning provided in Section 2.02.

"**Trust Estate**" means all estate, right, title and interest of Owner Trustee in and to the Aircraft, the Lease, the Warranty Bill of Sale, the FAA Bill of Sale and any other Operative Document (as defined in the Lease), including, without limitation, all amounts of the rentals under any Lease, insurance proceeds (other than insurance proceeds payable to or for the benefit of Owner Trustee, for its own account or in its individual capacity, or Trustor) and requisition, indemnity or other payments of any kind for or with respect to the Aircraft, (other than amounts owing to Owner Trustee, for its own account or in its individual capacity, Trustor or any Lessee of the Aircraft).

"**Warranty Bill of Sale**" means a full warranty bill of sale for the Aircraft, executed by Trustor in favor of Owner Trustee and specifically referring to each engine installed on the Aircraft.

CHICAGO/#3036817.5

## ARTICLE 2

## CREATION OF TRUST

**Section 2.01**  Transfer of Control.  Trustor shall cause title to the Aircraft to be conveyed to Owner Trustee.

**Section 2.02**  Acceptance and Declaration of Trust.  Owner Trustee accepts the trust (the "**Trust**") created hereby, and declares that it will hold the Trust Estate upon the trusts hereinafter set forth for the use and benefit of Trustor, in accordance with and subject to all of the terms and conditions contained in this Agreement, and agrees to perform the same, including without limitation the actions specified in Section 4.01 hereof, and agrees to receive and disburse all moneys constituting part of the Trust Estate, all in accordance with the terms hereof.  The Owner Trustee HEREBY DECLARES that (a) it has no beneficial or equitable interest in the Trust Estate and (b) the Trust holds the Trust Estate in trust for the Trustor absolutely.

**Section 2.03**  Name of Trust.  The Trust governed by this instrument shall be known as, and is named, the "MSN 6184 Trust" and such name may (but need not) be used in any correspondence and filings made by the Owner Trustee in connection with the trust hereby created.

**Section 2.04**  Tax Treatment.  To the extent there is a provision contained in this Agreement that would result in the Trust not being considered a transparent entity for Irish corporation tax purposes then that provision will have no legal effect and should be considered deleted from this Agreement; provided, however, that such deletion shall not impact Trustor's obligations to Owner Trustee hereunder including without limitation, Section 6.01.

**Section 2.05**  Beneficial Interest Certificate.  The beneficial interest of the Trustor in the Trust Estate will be evidenced by a duly completed Beneficial Interest Certificate.

## ARTICLE 3

## THE OWNER TRUSTEE

**Section 3.01**  Status.  Owner Trustee hereby represents and warrants that it is a Citizen of the United States.

**Section 3.02**  Removal.  Owner Trustee may be removed at any time, but for cause only, by a written instrument or instruments signed by an authorized person or persons, subject to the regulatory limitation that non-U.S. citizens not hold more than 25 percent of the aggregate power to remove a trustee.  For purposes of this Section, "for cause", may include willful misconduct or gross negligence, but "for cause" will not include the refusal of Owner Trustee to act or refrain from acting in a manner that (1) would violate the laws, regulations, court orders, or lawful directions of a government agency; (2) is outside the scope of Owner Trustee's authority; (3) is contrary to its obligations under the Trust Agreement; or (4) is the subject of a mere disagreement between Owner Trustee and Trustor.  Such removal shall take effect immediately upon the appointment of a successor Owner Trustee pursuant to Section 3.04, whereupon all powers, rights and obligations of the removed Owner Trustee under this Agreement (except the

rights set forth in Section 3.08) shall cease and terminate.  Without any affirmative action by Trustor, any Owner Trustee shall cease immediately to be an Owner Trustee at such time as it ceases to be a Citizen of the United States or at such time as it for any reason is not free from control by Trustor as described in Article 9, and shall give immediate notice thereof to Trustor.  Any Owner Trustee shall also give Trustor notice of a possible change of citizenship at the later of (i) 90 days prior to a change in citizenship and (ii) actual knowledge by Owner Trustee that such a change in citizenship is probable.

**Section 3.03**    Resignation.  Owner Trustee may resign at any time upon giving 30 days prior written notice of such resignation to Trustor.  Such resignation shall take effect only upon the appointment of a successor Owner Trustee pursuant to Section 3.04, whereupon all powers, rights and obligations of the resigning Owner Trustee under this Agreement (except the rights set forth in Section 3.08) shall cease and terminate.

**Section 3.04**    Successor Owner Trustee.  Promptly upon receipt of a notice of resignation from the Owner Trustee in accordance with Section 3.03, a successor trustee shall be appointed by a written instrument signed by a duly authorized officer of Trustor and the successor trustee shall execute and deliver to the predecessor Owner Trustee an instrument accepting such appointment.  Such successor trustee shall be a Citizen of the United States and shall assume all powers, rights and obligations of such Owner Trustee hereunder immediately upon the resignation of such Owner Trustee becoming effective.  Such successor, concurrently with such appointment, shall file an Affidavit with the FAA and all other documents then required by law to be filed in connection therewith.  If the Trustor shall not have so appointed a successor Owner Trustee within 30 days after such resignation or removal, the Owner Trustee may apply to any court of competent jurisdiction to appoint a successor Owner Trustee to act until such time, if any, as a successor or successors shall have been appointed by the Trustor as above provided and all fees, costs and expenses incurred by Owner Trustee in connection with such action shall be subject to reimbursement and lien as set forth in Section 3.08.  Any successor Owner Trustee so appointed shall immediately and without further act be superseded by any successor Owner Trustee appointed by the Trustor as above provided.

**Section 3.05**    Merger.  Any corporation into which Owner Trustee may be merged or converted or with which it may be consolidated, or any corporation resulting from any merger, conversion or consolidation to which Owner Trustee shall be a party, or any corporation to which substantially all the corporate trust business of Owner Trustee may be transferred, shall, subject to the terms of Section 3.04, be Owner Trustee without further act.

**Section 3.06**    Tax Returns.  The Owner Trustee shall keep all appropriate books and records relating to the receipt and disbursement by it of all monies under this Agreement or any agreement contemplated hereby.  The Trustor will prepare all tax returns required to be filed with respect to the trust hereby and the Owner Trustee, upon request, will furnish the Trustor with all such information as may be reasonably required from the Owner Trustee in connection with the preparation of such tax returns.  The Owner Trustee will execute and file the tax returns as prepared by the Trustor.

**Section 3.07**    Vacancies.  If any vacancy shall occur in the position of Owner Trustee for any reason, including, without limitation, removal, resignation, loss of United States

citizenship or the inability or refusal of such Owner Trustee to act as Owner Trustee, the vacancy shall be filled in accordance with Section 3.04.

**Section 3.08**    Fees; Compensation.  The Owner Trustee shall receive from the Trustor as compensation for the Owner Trustee's services hereunder such fees as may heretofore and from time to time hereafter be agreed upon by the Owner Trustee and the Trustor and shall be reimbursed by the Trustor for all reasonable costs and expenses incurred or made by it in accordance with any of the provisions of this Agreement.  If an event of default under any Lease shall occur, the Owner Trustee shall be entitled to receive reasonable compensation for its additional responsibilities, and payment or reimbursement for its expenses.  Owner Trustee shall have a lien on the Trust Estate, prior to any interest therein of the Trustor, to secure payment of such fees and expenses.

**Section 3.09**    No Duties.  Owner Trustee shall not have any duty (i) to see to any insurance on the Aircraft or maintain any such insurance, (ii) to see to the payment or discharge of any tax, assessment or other governmental charge or any lien or encumbrance of any kind owing with respect to, assessed or levied against, the Aircraft (provided, however, that Owner Trustee shall not create, permit or suffer to exist any lien or encumbrance on any part of the Aircraft which results from claims against Owner Trustee unrelated to its capacity as Owner Trustee hereunder), (iii) to confirm or verify any notices or reports, (iv) to inspect the Aircraft at any time or ascertain the performance or observance by either of any Lessee or Trustor of its covenants under any Lease, or (v) except as set forth herein, to see to any recording or see to the maintenance of any such recording or filing with the FAA or other government agency.

**Section 3.10**    Status of Moneys Received.  All moneys received by Owner Trustee under or pursuant to any provisions of this Agreement shall constitute trust funds for the purpose for which they are paid or held, and shall be segregated from any other moneys and deposited by Owner Trustee under such conditions as may be prescribed or permitted by law for trust funds.

**Section 3.11**    Owner Trustee May Rely.  Owner Trustee shall not incur any liability to anyone in acting or refraining from acting upon any signature, instrument, notice, resolution, request, consent, order, certificate, report, opinion, bond or other document or paper reasonably believed by it to be genuine and reasonably believed by it to be signed by the proper party or parties.  As to any fact or matter, the manner or ascertainment of which is not specifically described herein, Owner Trustee may for all purposes hereof rely on a certificate, signed by or on behalf of the party executing such certificate, as to such fact or matter, and such certificate shall constitute full protection of Owner Trustee for any action taken or omitted to be taken by it in good faith in reliance thereon.  In the administration of the Trust, Owner Trustee may, at the reasonable cost and expense of Trustor, seek advice of counsel, accountants and other skilled persons to be selected and employed by them, and Owner Trustee shall not be liable for anything done, suffered or omitted in good faith by it in accordance with the actions, advice or opinion of any such counsel, accountants or other skilled persons.  In all events, Owner Trustee shall have no liability for any action taken or not taken or for any error in judgment made in good faith by Owner Trustee, and in no event shall Owner Trustee be liable for the acts or omissions of Trustor or any Lessee.

**Section 3.12**   Owner Trustee Acts as Trustee.  In accepting the Trust, Owner Trustee acts solely as trustee hereunder and not in any individual capacity (except as otherwise expressly provided in this Agreement or any Lease), and all persons other than Trustor having any claim against the Owner Trustee by reason of the transactions contemplated hereby shall not have any recourse to Owner Trustee in its individual capacity.

**Section 3.13**   No Expenses for Owner Trustee.  Owner Trustee shall not have any obligation by virtue of this Agreement to expend or risk any of its own funds, or to take any action which could, in the reasonable opinion of Owner Trustee, result in any cost or expense being incurred by Owner Trustee.  Owner Trustee shall not be required to take any action or refrain from taking any action under this Agreement unless it shall have been indemnified by Trustor in a manner and form satisfactory to Owner Trustee against any liability, cost or expense (including reasonable attorneys' fees) which may be incurred in connection therewith.  No provisions of this Agreement shall be deemed to impose any duty on Owner Trustee to take any action if Owner Trustee shall have been advised by counsel that such action would expose it to personal liability, is contrary to the terms hereof or is contrary to law.

**Section 3.14**   Notice of Event of Default.  In the event that a responsible officer in the Corporate Trust Department of the Owner Trustee shall have actual knowledge of a default or an event of default under any Lease, the Owner Trustee shall give or cause to be given prompt notice of such default or event of default to the Trustor.  The Owner Trustee shall take such action with respect to such default or event of default as shall be specified in written instructions from the Trustor.  For all purposes of this Agreement and any Lease, in the absence of actual knowledge of a responsible officer in the Corporate Trust Department of the Owner Trustee, the Owner Trustee shall not be deemed to have knowledge of a default or event of default, or be required to act based on any event, report, information, default, or event of default unless notified in writing by the Trustor and shall have no duty to take any action to determine whether any default or event of default has occurred.   Any notice or knowledge received by Owner Trustee in connection with this Agreement or the performance of Owner Trustee's duties and responsibilities under this Agreement shall not be attributed or imputed to Wells Fargo Bank Northwest, N.A., or any affiliate, division or line of business of Wells Fargo Bank Northwest, N.A. in any other capacity, function or relationship, and any notice or knowledge received by Wells Fargo Bank Northwest, N.A., or any affiliate, division or line of business of Wells Fargo Bank Northwest N.A. in any other capacity, function or relationship, shall not be attributable or imputed to Owner Trustee in connection with this Agreement, or the performance of Owner Trustee's duties and responsibilities under this Agreement.  Receipt or delivery by Owner Trustee of any information or report provided to Owner Trustee or otherwise publicly available shall not constitute actual or constructive notice or knowledge to Owner Trustee of the contents of such report or information, absent an express contractual provision requiring Owner Trustee to review the contents of such report.

**Section 3.15**   Certain Duties and Responsibilities of Owner Trustee.

(a)   Owner Trustee undertakes to perform such duties and only such duties as are specifically set forth in this Agreement and in any Lease or Operating Agreement and no implied duties, covenants or obligations shall be read into this Agreement or any Lease or Operating Agreement against Owner Trustee and any discretionary or permissive right or

privilege afforded Owner Trustee in this Agreement or in any Lease or Operating Agreement shall not be construed as creating any duty on the part of Owner Trustee.  Owner Trustee agrees that it will deal with the Aircraft or any other part of the Trust Estate in accordance with the terms of this Agreement and any Lease or Operating Agreement.

(b)      Whether or not herein expressly so provided, every provision of this Trust Agreement relating to the conduct or affecting the liability of or affording protection to Owner Trustee shall be subject to the provisions of this Section 3.15.

**Section 3.16**   No Representations or Warranties as to the Aircraft or Documents. OWNER TRUSTEE MAKES (i) NO REPRESENTATION OR WARRANTY, EXPRESS OR IMPLIED, AS TO THE VALUE, CONDITION, DESIGN, OPERATION, MERCHANTABILITY OR FITNESS FOR USE OF THE AIRCRAFT OR AS TO THE TITLE THERETO, OR ANY OTHER REPRESENTATION OR WARRANTY WITH RESPECT TO THE AIRCRAFT WHATSOEVER, except that Wells Fargo Bank Northwest, National Association, in its individual capacity warrants that on the date the Aircraft was transferred to the Trust contemplated by this TRUST AGREEMENT, Owner Trustee received whatever title was conveyed to it, and (ii) no other representations or warranties are made by the Owner Trustee other than to the extent expressly made herein by Owner Trustee, except that Owner Trustee represents and warrants that it has full right, power and authority to enter into, execute, deliver and perform this Agreement and that this Agreement constitutes the legal, valid and binding obligation of the Owner Trustee.

**Section 3.17**   No Limitation of Regulatory Obligations.  None of the provisions in this Section 3 are intended to alter the Owner Trustee's duties under applicable Federal Aviation Regulations as the registered owner of the Aircraft.

# ARTICLE 4

# THE TRUST ESTATE

**Section 4.01**   Authorization and Direction to Owner Trustee.  Trustor hereby authorizes and directs Owner Trustee, not individually but solely as Owner Trustee hereunder, and Owner Trustee covenants and agrees:

(a)      to execute and deliver each agreement, instrument or document to which Owner Trustee is a party in the respective forms thereof in which delivered from time to time by Trustor for execution and delivery and, subject to the terms hereof, to exercise its rights and perform its duties under any Lease in accordance with the terms thereof, including without limitation, accepting title to, and delivery of, the Aircraft and leasing the Aircraft to any Lessee or, subject to the provisions of Section 7 hereof, distributing the Aircraft to Trustor pursuant to the specific written instruction of Trustor;

(b)      to effect the registration of the Aircraft with the FAA by duly executing and filing or causing to be filed with the FAA (i) the Aircraft Registration Application, (ii) the Affidavit, (iii) the FAA Bill of Sale, (iv) an executed counterpart of this Agreement, and (v) any other document or instrument required therefor;

7

(c)     to execute and deliver each other document referred to in any Lease or which Owner Trustee is required to deliver pursuant to any Lease or this Agreement;

(d)     subject to the terms of this Agreement, to perform the obligations and duties and exercise the rights of Owner Trustee under any Lease;

(e)     upon request by FAA, and with the cooperation of Trustor, to provide the FAA with the following information in an expeditious manner (generally within 2 business days of the request or immediately in an emergency identified by the FAA): (i) the identity and contact information (address, phone number, email) of person or entity normally operating, or maintaining the operations of the aircraft; (ii) where that person or entity resides or is incorporated and has its principal place of business; (iii) the location of the aircraft maintenance and other records; and; (iv) where the aircraft is normally based and operated;

(f)     upon request by FAA, and with the cooperation of Trustor, to provide the FAA with the following information in an expeditious manner (generally within 5 business days of the request or immediately in an emergency identified by the FAA): (i) information about the operator, crew (names and pilot certificate numbers) and aircraft operations on specific dates; (ii) information about where the aircraft will be on a specific date in the future and (iii) maintenance and other aircraft records;

(g)     to immediately forward all applicable FAA airworthiness directives to the Trustor, Lessee, and Operator, as applicable, by the most expeditious means available;

(h)     to notify the FAA Aircraft Registry by the most expeditious means available of the trustee's resignation under Section 3.03, Resignation, or removal under Section 3.02, Removal, or of the termination of the trust under Section 7.01, Termination Date;

(i)     to permit the inspection of the aircraft and/or records by the FAA or any other duly authorized representatives of the U.S. or of the government of the country where it is based or operated, when an appropriate request is made by the FAA or other governmental entity entitled to inspect the aircraft and/or records; and

(j)     Wells Fargo Bank Northwest, National Association shall have no liability in its individual capacity under this Section 4.01 except to the extent, and solely to the extent, that any failure to comply with any provision of this Section 4.01 is solely attributable to the gross negligence or willful misconduct of Wells Fargo Bank Northwest, National Association in its capacity as Owner Trustee.  Under no circumstance shall Wells Fargo Bank Northwest, National Association in its individual capacity be liable to the Trustor under this Section 4.01, or any other provision of this Agreement, if any failure to comply with the requirements of this Section 4.01 or any other provision of this Agreement is caused by or is otherwise attributable to any action or inaction (whether or not performed in a timely manner) of any other Person (including the Trustor).  Under no circumstances shall Wells Fargo Bank Northwest, National Association, in its individual capacity, be liable to any Person (other than the Trustor as expressly provided in this Section 4.01) for any breach of, or failure to comply with, the terms of this Section 4.01.

**Section 4.02**    Supplier Warranties.  Trustor hereby assigns to Owner Trustee any and all warranties and indemnities of, and other claims against, any supplier relating to the Aircraft.

**Section 4.03**    Advances by Trustor.  Trustor shall make advances to Owner Trustee in such amounts and at such times as may be necessary to permit Owner Trustee to satisfy its obligations under any Lease and this Trust Agreement.

**Section 4.04**    Trustor's Duties.  Trustor hereby covenants and agrees:

(a)    upon a request by the FAA for information related to the Aircraft and the operation of the Aircraft that the FAA is legally entitled to receive from an owner or operator of an aircraft, which is issued to Owner Trustee (and forwarded by Owner Trustee to Trustor), as the case may be, to provide as expeditiously as reasonably practicable to Owner Trustee or the FAA, as the case may be, with all such requested information to the extent that Trustor has such information or actually receives such information from the operator or from any other source, including, if applicable, (i) information in relation to the operation, maintenance, location or base of operation of the Aircraft, and (ii) contact information of (x) the operator of the Aircraft and (y) any other person to whom the FAA may look to gather information related to crew members for the Aircraft, the Aircraft's operations on specific dates, the location of the Aircraft, and maintenance and other aircraft records for the Aircraft;

(b)    subject to Article 9 and to limitations imposed by applicable law or court order, the Owner Trustee shall promptly as practicable forward to the Trustor a copy of any document or notice regarding the Trust or the Aircraft that is delivered to the Owner Trustee pursuant to its duties as Owner Trustee of the Aircraft;

(c)    without limiting the provision of Article 10, in connection with any transfer of Trustor's beneficial interest in the Trust (other than a collateral assignment thereof), to provide Owner Trustee the identity and contact information with respect to the new Trustor and to update the operator information provided pursuant to Section 4.04(c) and 4.04(d) to the extent Trustor has such information or actually receives such information from the operator or from any other source;

(d)    to provide as expeditiously as possible to Owner Trustee, in response to a request by the Owner Trustee, the identity and contact information for the operator of the Aircraft under any Lease or Operating Agreement or bailment agreement entered into from time to time by Trustor, or any lease, bailment, or other arrangement entered into from time to time by a third party, whether or not at Trustor's direction; and

(e)    without limiting the provision of Article 10, to require that any Lease, Operating Agreement, bailment, or similar arrangement transferring possession and operational control of the Aircraft provide the following or similar provisions to the same effect:

(i)    that all further transfers of the rights to possession and operational control of the Aircraft to a transferee must be in writing; provide the identity and contact information about the transferee; and the transferee's assurance that if and when the transferee is notified that the Owner Trustee has made a request, to promptly provide information related to crewmembers of the Aircraft and the Aircraft's operations on

specific dates, the location of the Aircraft, and the maintenance and other aircraft records for the Aircraft;

(ii)     that each such further transferee or operator (x) shall provide its reasonable cooperation to Owner Trustee, Trustor and the FAA in an expeditious manner with respect to any request from the FAA or other applicable governmental entity for information and access to records of the Aircraft which it is legally entitled to receive, and (y) shall authorize the FAA or any other duly authorized air authority representatives of the U.S. or the government where it is habitually based or operated, upon any request which the FAA or such other governmental entity is legally entitled to make under law applicable to such transferee or operator of the Aircraft, to inspect the Aircraft; and

(iii)     that each such further transferee or operator agrees that the above-referenced information and inspection requirements would be made and agreed in all subsequent or downstream leases, operating agreements and bailment agreements thereby requiring each such subsequent transferee or operator to provide such contact information in the event that there has been a transfer of possession and operation to another party, to update such information when any changes occur, and to promptly confirm such information at any time upon request by Owner Trustee or Trustor, to provide its reasonable cooperation to Owner Trustee, Trustor and the FAA in an expeditious manner with respect to any request from the FAA or other applicable governmental entity for information and access to records of the Aircraft which it is legally entitled to receive made pursuant to existing regulations and policies, and (z) to authorize the FAA or such other governmental entity to inspect the Aircraft to the extent that it is legally entitled to make such request under law applicable to Owner Trustee, Trustor, the relevant counterparty to any such subsequent or downstream agreement or the Aircraft.

## ARTICLE 5

## DISTRIBUTIONS

**Section 5.01**   Receipts.  Except as otherwise provided in this Agreement, any payment received by Owner Trustee for which provision as to the application thereof is made in any Lease shall be applied promptly to the purpose for which such payment shall have been made in accordance with the terms of such Lease; and any payment received by Owner Trustee for which no provision as to the application thereof is made in any Lease or in this Article 5 shall, unless Trustor shall have otherwise instructed Owner Trustee in writing, be distributed promptly to Trustor.

**Section 5.02**   Manner of Making Distributions.  Owner Trustee shall make all distributions to Trustor under this Agreement and any Lease promptly upon the receipt of proceeds available for distribution, but shall not be obligated to make any distributions until the funds therefor have been received by Owner Trustee.  All distributions to Trustor hereunder shall be made to such account and in such manner as Trustor shall from time to time direct in writing.

[Amended and Restated Trust Agreement (6184)]

# ARTICLE 6

## INDEMNIFICATION OF OWNER TRUSTEE BY TRUSTOR

**Section 6.01**  Indemnification.  Trustor hereby agrees, whether or not any of the transactions contemplated hereby shall be consummated, to assume liability for, and does hereby indemnify, protect, save and keep harmless Wells Fargo Bank Northwest, National Association, in its individual capacity and its successors, assigns, legal representatives, agents and servants, from and against any and all liabilities, obligations, losses, damages, penalties, taxes (excluding any taxes payable by Wells Fargo Bank Northwest, National Association in its individual capacity on or measured by any compensation received by Wells Fargo Bank Northwest, National Association in its individual capacity for its services hereunder), claims, actions, suits, costs, expenses or disbursements (including, without limitation, reasonable ongoing fees of Owner Trustee and reasonable attorneys' fees and expenses and court costs or losses incurred in connection with a successful defense, in whole or in part, of any claim that Wells Fargo Bank Northwest, National Association breached its standard of care) of any kind and nature whatsoever which may be imposed on, incurred by or asserted against Wells Fargo Bank Northwest, National Association in its individual capacity (whether or not also indemnified against by a Lessee under any Lease or also indemnified against by any other person) in any way relating to or arising out of this Agreement or any Lease or the enforcement of any of the terms hereof or thereof, or in any way relating to or arising out of the manufacture, purchase, acceptance, nonacceptance, rejection, ownership, delivery, lease, possession, use, operation, condition, sale, return or other disposition of the Aircraft (including, without limitation, latent and other defects, whether or not discoverable, and any claim for patent, trademark or copyright infringement), or in any way relating to or arising out of the administration of the Trust Estate or the action or inaction of Owner Trustee or Wells Fargo Bank Northwest, National Association in its individual capacity hereunder as determined by a court of competent jurisdiction, except (a) in the case of willful misconduct or gross negligence on the part of Owner Trustee or Wells Fargo Bank Northwest, National Association in its individual capacity in the performance or nonperformance of its duties hereunder, or (b) those resulting from the inaccuracy of any express representation or warranty of Wells Fargo Bank Northwest, National Association in its individual capacity (or from the failure of Wells Fargo Bank Northwest, National Association in its individual capacity to perform any of its covenants) contained in this Agreement or any Lease, or (c) in the case of the failure to use ordinary care on the part of Owner Trustee or Wells Fargo Bank Northwest, National Association in its individual capacity in the disbursement of funds.  The indemnities contained in this Article 6 extend to Wells Fargo Bank Northwest, National Association only in its individual capacity and shall not be construed as indemnities of the Trust Estate.  The Indemnities contained in this Article 6 shall survive the assignment or termination of this Agreement and/or in the resignation or removal of Owner Trustee.  In addition, and to secure the foregoing indemnities, Owner Trustee shall have a lien on the Trust Estate, which shall be prior to any interest therein of Trustor.

**Section 6.02**  Consequential Damages.  Notwithstanding anything in this Agreement to the contrary, in no event shall Owner Trustee be liable for special, indirect or consequential loss or damage of any kind whatsoever (including but not limited to lost profits) even if Owner Trustee has been advised of the likelihood of such loss or damage and regardless of the form of action.

CHICAGO/#3036817.5

## ARTICLE 7

### TERMINATION

**Section 7.01**    Termination Date.  The Trust shall terminate without any notice or other action of Owner Trustee upon the earlier of (a) such date as may be directed by Trustor and the sale or other final disposition by the Owner Trustee of all property constituting the Trust Estate or (b) twenty-one years less one day after the earliest execution of this Trust Agreement by any party hereto.

**Section 7.02**    Distribution of Trust Estate Upon Termination.  Upon any termination of the Trust pursuant to the provisions of Section 7.01 hereof, Owner Trustee shall convey the Trust Estate to Trustor or its nominee.

## ARTICLE 8

### MISCELLANEOUS

**Section 8.01**    Nature of Title of Trustor.  Trustor shall not have legal title to any part of the Trust Estate but shall hold the beneficial interest in the Trust Estate hereunder absolutely as against the Owner Trustee.  No transfer, by operation of law or otherwise, of the right, title and interest of Trustor in and to the Trust Estate or the trusts hereunder, in accordance with the terms hereof, shall operate to terminate this Agreement or the trusts hereunder or entitle any successor or transferee of Trustor to an accounting or to the transfer of it of legal title to any part of the Trust Estate.

**Section 8.02**    Power of Owner Trustee to Convey.  Any assignment, sale, transfer or other conveyance by Owner Trustee of the interest of Owner Trustee in the Aircraft or any part thereof made pursuant to the terms of this Agreement or any Lease shall bind Trustor and shall be effective to transfer or convey all right, title and interest of Owner Trustee and Trustor in and to the Aircraft or such part thereof.  No permitted purchaser or other permitted grantee shall be required to inquire as to the authorization, necessity, expediency or regularity of such assignment, sale, transfer or conveyance or as to the application of any sale or other proceeds with respect thereto by Owner Trustee.

**Section 8.03**    Trust Agreement for Benefit of Certain Parties Only.  Nothing herein, whether expressed or implied, shall be construed to give any person other than Owner Trustee and Trustor any legal or equitable right, remedy or claim under or in respect of this Agreement; but this Agreement shall be held to be for the sole and exclusive benefit of Owner Trustee and Trustor.

**Section 8.04**    Notices.  Unless otherwise expressly provided herein, all notices, instructions, demands and other communications hereunder shall be in writing and shall be delivered personally or sent by registered or certified mail, postage prepaid and return receipt requested, or sent by facsimile transmission, with a confirming copy sent by air mail, postage prepaid, and the date of personal delivery or facsimile transmission or 7 business days after the

12

[Amended and Restated Trust Agreement (6184)]

date of mailing (other than in the case of the mailing of a confirming copy of a facsimile transmission), as the case may be, shall be the date of such notice, in each case addressed:

      (i)      if to the Owner Trustee, to

            Wells Fargo Bank Northwest, National Association
            299 S. Main Street, 5th Floor
            MAC: U1228-051
            Salt Lake City, Utah, 84111
            Attention: Corporate Trust Lease Group
            Fax: +1 801 246-7142
            Email: ctsleasecompliance@wellsfargo.com

      (ii)     if to the Trustor, to

            Accipiter Investments Aircraft 4 Limited
            28/29 Sir John Rogerson's Quay
            Dublin 2, Ireland
            Attention: The Directors
            Email: directors@accipiter.ie

**Section 8.05**   <u>Co-Trustee and Separate Trustees</u>.  If at any time it shall be necessary or prudent in order to conform to any law of any jurisdiction in which all or any part of the Trust Estate is located, or Owner Trustee being advised by counsel shall determine that it is so necessary or prudent in the interest of Trustor or Owner Trustee, or Owner Trustee shall have been directed to do so by Trustor, Owner Trustee and Trustor shall execute and deliver an agreement supplemental hereto and all other instruments and agreements necessary or proper to constitute another bank or trust company or one or more persons (any and all of which shall be a Citizen of the United States) approved by Owner Trustee and Trustor, either to act as co-trustee jointly with Owner Trustee, or to act as separate trustee hereunder (any such co-trustee or separate trustee being herein sometimes referred to as "**additional trustee**").  In the event Trustor shall not have joined in the execution of such agreements supplemental hereto within 10 days after the receipt of a written request from Owner Trustee so to do, or in case an event of default, as defined in any Lease, shall have occurred and be continuing, Owner Trustee may act under the foregoing provisions of this Section 8.05 without the concurrence of Trustor; and Trustor hereby appoints Owner Trustee its agent and attorney-in-fact to act for it under the foregoing provisions of this Section 8.05 in either of such contingencies.

Every additional trustee hereunder shall, to the extent permitted by law, be appointed and act, and Owner Trustee and its successors shall act, subject to the following provisions and conditions:

      (a)     all powers, duties, obligations and rights conferred upon Owner Trustee in respect of the custody, control and management of moneys, the Aircraft or documents authorized to be delivered hereunder or under any Lease shall be exercised solely by Owner Trustee;

      (b)     all other rights, powers, duties and obligations conferred or imposed upon Owner Trustee shall be conferred or imposed upon and exercised or performed by Owner

13

Trustee and such additional trustee (U.S. citizen) jointly, except to the extent that under any law of any jurisdiction in which any particular act or acts are to be performed (including the holding of title to the Trust Estate) Owner Trustee shall be incompetent or unqualified to perform such act or acts, in which event such rights, powers, duties and obligations shall be exercised and performed by such additional trustee;

(c)    no power given to, or which it is provided hereby may be exercised by, any such additional trustee shall be exercised hereunder by such additional trustee, except jointly with, or with the consent in writing of, Owner Trustee;

(d)    the Owner Trustee shall not have any responsibility or liability relating to such appointment of a separate or co-trustee, and no trustee hereunder shall be personally liable by reason of any act or omission of any other trustee hereunder;

(e)    Trustor, at any time, by an instrument in writing may remove any such additional trustee.  In the event that Trustor shall not have executed any such instrument within 10 days after the receipt of a written request from Owner Trustee so to do, Owner Trustee shall have the power to remove any such additional trustee without the concurrence of Trustor; and Trustor hereby appoints Owner Trustee its agent and attorney-in-fact for it in such connection in such contingency; and

(f)    no appointment of, or action by, any additional trustee will relieve the Owner Trustee of any of its obligations under, or otherwise affect any of the terms of, this Agreement or any Lease.

**Section 8.06**    <u>Situs of Trust; Applicable Law</u>.  The Trust has been accepted by Owner Trustee and will be administered in the State of Utah.  The validity, construction and enforcement of this Agreement shall be governed by the laws of the State of Utah without giving effect to principles of conflict of law.  Trustor submits to the non-exclusive jurisdiction of any state or federal court sitting in Salt Lake County, Utah in any action or proceeding arising out of or relating to this Agreement and agrees that all claims in respect of the action or proceeding may be heard and determined in any such court.  If any provision of this Agreement shall be invalid or unenforceable, the remaining provisions hereof shall continue to be fully effective, provided that such remaining provisions do not increase the obligations or liabilities of Owner Trustee.

**Section 8.07**    <u>Amendment</u>.  This Agreement may not be amended, modified, supplemented, or otherwise altered except by an instrument in writing signed by the parties thereto.

**Section 8.08**    <u>Successors and Assigns</u>.  In accordance with the terms hereof, this Agreement shall be binding upon and shall inure to the benefit of, and shall be enforceable by, the parties hereto and their respective successors and permitted assigns, including any successive holder of all or any part of Trustor's interest in the Trust Estate.

**Section 8.09**    <u>Headings</u>.  The headings of the Articles and Sections of this Agreement are inserted for convenience only and shall not affect the meaning or construction of any of the provisions hereof.

14

**Section 8.10**    Counterparts.  This Agreement may be executed in any number of counterparts, each of which when so executed shall be deemed to be an original, and such counterparts together shall constitute and be one and the same instrument.

**Section 8.11**    Force Majeure.  Owner Trustee shall not be responsible or liable to Trustor, any Lessee or any other person hereunder for failure or delay in performance of this Agreement due to any war, fire, accident or other casualty, or any labor disturbance or act of God or the public enemy, or any other contingency beyond Owner Trustee's reasonable control.

**Section 8.12**    WAIVER OF TRIAL BY JURY.  EACH PARTY HEREBY WAIVES, TO THE EXTENT PERMITTED BY APPLICABLE LAW, TRIAL BY JURY IN ANY LITIGATION IN ANY COURT WITH RESPECT TO, IN CONNECTION WITH, OR ARISING OUT OF THIS AGREEMENT OR ANY OF THE OTHER TRANSACTION DOCUMENTS OR THE VALIDITY, PROTECTION, INTERPRETATION, COLLECTION OR ENFORCEMENT HEREOF OR THEREOF.  EACH PARTY AGREES THAT THIS SECTION 8.12 IS A SPECIFIC AND MATERIAL ASPECT OF THIS AGREEMENT AND EACH OF THE OTHER TRANSACTION DOCUMENTS AND ACKNOWLEDGES THAT THE OTHER PARTIES WOULD NOT HAVE ENTERED INTO THIS AGREEMENT AND CONSUMMATED THE TRANSACTIONS CONTEMPLATED HEREBY IF THIS SECTION 8.12 WERE NOT PART OF THIS AGREEMENT AND THE OTHER TRANSACTION DOCUMENTS.

# ARTICLE 9

## CERTAIN LIMITATIONS

**Section 9.01**    Limitations on Control, Exceptions.

(a)    Limitation on Control.  Notwithstanding any other provision of this Agreement, but subject to paragraph (b) of this Section 9.01, the Trustor will have no rights or powers to direct, influence or control the Owner Trustee in the performance of the Owner Trustee's duties under this Agreement, including matters involving the ownership and operation of the Aircraft.  The Owner Trustee shall exercise its duties under this Agreement in connection with matters involving the ownership and operation of the Aircraft, as the Owner Trustee, in its discretion, shall deem necessary to protect the interests of the United States, notwithstanding any countervailing interest of any foreign power which, or whose citizens, may have a direct or indirect interest in the Trustor and any such action by the Owner Trustee shall not be considered malfeasance or in breach of any obligation which the Owner Trustee might otherwise have to the Trustor; provided, however, that subject to the foregoing limitations, the Owner Trustee shall exercise this discretion in all matters arising under the Agreement, including the ownership and operation of the Aircraft with due regard for the interests of the Trustor.  In exercising any of its rights and duties under this Agreement in connection with matters which may arise not relating to the ownership and operation of the Aircraft, the Owner Trustee shall be permitted to seek the advice of the Trustor before taking, or refraining from taking, any action with respect thereto. To the extent that the Owner Trustee takes any action or inaction in accordance with any written instruction and/or advice of the Trustor given or in exercising its discretion under this Article 9, such action or inaction shall not be deemed to be gross negligence or willful misconduct.  The

15

[Amended and Restated Trust Agreement (6184)]

Owner Trustee shall notify the Trustor of its exercise of rights and duties under this Agreement in connection with matters involving the ownership and operation of the Aircraft.

(b)    <u>Certain Exceptions</u>.  Subject to the requirements of the preceding paragraph (a), the Owner Trustee agrees that it will not, without the prior written consent of the Trustor, sell, mortgage, pledge or otherwise dispose of the Aircraft or other assets held in the Trust Estate relating thereto or amend any Lease or other document (other than a document over which the Owner Trustee has the absolute and complete discretion established under Section 9.01(a) Limitation on Control of this Agreement) or give any consents thereunder except as otherwise expressly provided for herein.

(c)    <u>Purpose</u>.  The purpose of this Section 9.01 is to assure that (i) the Aircraft shall be controlled with respect to such matters as are described in Section 9.01(a) of this Agreement by a Citizen of the United States and (ii) the Trustor shall have no power to influence or control the exercise of the Owner Trustee's authority with respect to such matters and (iii) Owner Trustee shall be able to give the affidavit required by Section 47.7 (c) (2) (iii) of the Federal Aviation Regulations.  Section 9.01 shall be construed in furtherance of the foregoing purpose.

**Section 9.02**    <u>General</u>.  Notwithstanding anything to the contrary in this Agreement, the Owner Trustee and the Trustor hereby agree as follows:

If persons who are neither U.S. citizens or resident aliens have the power to direct or remove the Owner Trustee, either directly or indirectly through the control of another person, those persons together shall not have more than twenty five (25%) percent of the aggregate power to direct or remove the Owner Trustee.

**Section 9.03**    <u>Priority</u>.  In creating and accepting the Trust, Trustor and Owner Trustee each acknowledges that in case of conflict, the limitations in Article 9 of this Agreement are paramount and superior to any other terms and conditions in this Agreement; or in any other document or documents including without limitation, under a Lease or an Operating Agreement to which Trustor and Owner Trustee are a party in respect of the Trust.  It is understood and agreed by the parties hereto that nothing in this Agreement shall relieve any of the Trustor, the Owner Trustee or any other Person of any obligation to comply with any law rule or regulation of any governmental authority with respect to the ownership and operation of the Aircraft.

**ARTICLE 10**

**COMPLIANCE WITH LAWS**

**Section 10.01**  <u>Covenant to Comply with Export Restrictions and U.S. Laws</u>.  Trustor acknowledges that the Aircraft may be subject to restrictions involving the export and re-export of the same pursuant to the laws and regulations of the United States, that the laws and regulations of the United States restrict the transfer of any interest in the Aircraft to certain persons (collectively, the "**Export Restrictions**") and that such Export Restrictions may apply to the Aircraft even after the Aircraft has been physically removed or transferred from the United States.  Trustor also acknowledges that the Owner Trustee, as a U.S. regulated financial

16

institution, is subject to the laws and regulations of the United States, including, without limitation, those promulgated by the U.S. Department of Treasury's Office of Foreign Assets Control (OFAC) and the Financial Crimes Enforcement Network (FinCEN) (collectively, the "**U.S. Laws**").  Trustor agrees that it will comply with, and will not knowingly permit the Aircraft to be used in a manner that is contrary to, Export Restrictions and U.S. Laws applicable to (1) the Trustor; (2) the Owner Trustee; or (3) the Aircraft, including the acquisition, possession, operation, use, maintenance, leasing, subleasing, or other transfer or disposition thereof.

**Section 10.02**  Approval of Transfer.  Trustor agrees that it will not permit the assignment of this Agreement, any transfer of the beneficial interest of the Trustor created by this Agreement, or a lease or sublease of the Aircraft (collectively, a "Transfer") without first informing the Owner Trustee of such proposed Transfer and taking reasonable steps to provide Owner Trustee with such information in relation to any Transfer and transferee to allow the Owner Trustee to identify the transferee and perform the appropriate checks in accordance with and for the purposes of compliance with its "know your customer" requirements, any anti-money laundering requirements and any Export Restrictions or other U.S Laws. Owner Trustee shall not unreasonably delay its review of such information. If Owner Trustee has determined that the Transfer will or may reasonably be expected to put Owner Trustee at risk of violating any laws or regulations applicable to Owner Trustee including, without limitation, the Export Restrictions and/or U.S. Laws, or if Owner Trustee in its sole discretion believes that the information provided to it by Trustor is not sufficient to enable it to make such a determination, it shall promptly notify Trustor of its determination and if Trustor decides to proceed with the Transfer then: (i) subject to the terms of this Agreement, Owner Trustee may resign; and (ii) Owner Trustee shall have no obligation to facilitate a transfer while Owner Trustee's resignation is pending.

**Section 10.03**  KYC Checks.  Trustor agrees that it will, promptly upon the Owner Trustee's request, supply to the Owner Trustee any documents or other evidence that is reasonably required by the Owner Trustee to carry out and be satisfied with the results of all applicable "know your customer" checks.

(The remainder of this page left blank intentionally)

[Amended and Restated Trust Agreement (6184)]

**IN WITNESS WHEREOF**, Owner Trustee and Trustor have caused this Agreement to be duly executed all as of the date first above written.

TRUSTOR:

**ACCIPITER INVESTMENTS AIRCRAFT 4 LIMITED**

By: _____
Title:
        **Paul Sheridan**
        **Attorney-in-fact**

By: _____
Title:
        **Christine Davin**
        **Attorney-in-fact**

OWNER TRUSTEE:

**WELLS FARGO BANK NORTHWEST, NATIONAL ASSOCIATION**

By: _____
Title:

[Amended and Restated Trust Agreement (6184)]

**IN WITNESS WHEREOF**, Owner Trustee and Trustor have caused this Agreement to be duly executed all as of the date first above written.

**TRUSTOR**:

**ACCIPITER INVESTMENTS AIRCRAFT 4 LIMITED**

By:_____
Title:

By:_____
Title:

**OWNER TRUSTEE**:

**WELLS FARGO BANK NORTHWEST, NATIONAL ASSOCIATION**

By:_____
Title:

Hillary Pavia
Assistant Vice President

[Amended and Restated Trust Agreement (6184)]

## ANNEX I

## FORM OF CERTIFICATE OF BENEFICIAL INTEREST

[\_\_\_\_\_] as Owner Trustee under the Trust Agreement dated as of _____between [\_\_\_\_\_] and [\_\_\_\_\_] (the Trust Agreement).

This certificate evidences that [\_\_\_\_\_] is the exclusive holder of 100% of the beneficial interest in the Trust Estate under and as defined in the Trust Agreement.

No interest in this Beneficial Interest Certificate may be transferred except in accordance with Article 10 of the Trust Agreement.

Except as otherwise defined herein, the terms used herein shall have the meanings set forth in the Trust Agreement.

This Beneficial Interest Certificate shall be governed by and construed in accordance with the laws of the State of Utah.

Dated: _____

[\_\_\_\_\_]

as Owner Trustee under the Trust Agreement

By: _____

Name:

Title:

CHICAGO/#3036817.5