**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| FRONTIER AIRLINES, INC.,<br><br>            Plaintiff,<br><br>   v.<br><br>AMCK AVIATION HOLDINGS IRELAND LIMITED, ACCIPITER INVESTMENT 4 LIMITED, VERMILLION AVIATION (TWO) LIMITED, ACCIPITER HOLDINGS DAC, CARLYLE AVIATION MANAGEMENT LIMITED, MAVERICK AVIATION HOLDINGS LTD., MANCHESTER AVIATION FINANCE S.a.r.l., WELLS FARGO TRUST COMPANY, N.A., solely in its capacity as OWNER TRUSTEE, and UMB BANK, N.A., solely in its capacity as OWNER TRUSTEE,<br><br>            Defendants. | 22 Civ. 2943 (PAE) |

**MEMORANDUM OF LAW IN SUPPORT OF**
**DEFENDANTS' MOTION TO DISMISS**

Dated: August 26, 2022

Jeff E. Butler
John P. Alexander
Gege Wang
CLIFFORD CHANCE US LLP
31 West 52nd Street
New York, New York 10019

*Attorneys for Defendants*

# TABLE OF CONTENTS

Page

Introduction................................................................................................................1

Factual Background ...................................................................................................3

     A.     The Lease Agreements and Related Contracts. ...........................................3

     B.     The Carlyle Transaction.............................................................................6

     C.     Frontier Protests the Carlyle Transaction. ..................................................7

     D.     The Instant Lawsuit....................................................................................8

Argument ...................................................................................................................8

    I.     THERE IS NO SUBJECT MATTER JURISDICTION FOR
           FRONTIER'S CONTRACT-BASED CLAIMS. ....................................................8

    II.     THE FIRST CLAIM FOR BREACH OF CONTRACT SHOULD
           BE DISMISSED FOR FAILURE TO STATE A CLAIM. ...................................12

     A.     The Amended Complaint Does Not Allege Any Transfer or
            Assignment by a Lessor or an Owner Participant.......................................12

     B.     The Amended Complaint Does Not Allege Damages. .............................16

    III.     THE SECOND AND THIRD CLAIMS FOR DECLARATORY
           RELIEF SHOULD BE DISMISSED.....................................................................17

    IV.     THE FOURTH CLAIM FOR AN ORDER UNDER RULE 67
           SHOULD BE DISMISSED. ..................................................................................20

    V.     THE FIFTH AND SIXTH CLAIMS UNDER THE NEW YORK
           UNIFORM VOIDABLE TRANSACTIONS ACT SHOULD BE
           DISMISSED. ........................................................................................................22

Conclusion ................................................................................................................24

# TABLE OF AUTHORITIES

Page(s)

## **Cases**

*Am. Standard, Inc. v. Oakfabco, Inc.*,
  498 F. Supp. 2d 711 (S.D.N.Y. 2007) ................................................................. 9, 10

*Amusement Indus., Inc. v. Midland Ave. Assocs.*,
  820 F. Supp. 2d 510 (S.D.N.Y. 2011) ....................................................................... 24

*Baxter v. United Forest Prods. Co.*,
  406 F.2d 1120 (8th Cir. 1969) .................................................................................. 22

*Bender v. City of N.Y.*,
  78 F.3d 787 (2d Cir. 1996) ....................................................................................... 24

*Best Food Corp. v. N.Y. 46th LLC*,
  56 A.D.3d 302 (1st Dep't 2008) ............................................................................... 13

*Boehner v. Heise*,
  734 F. Supp. 2d 389 (S.D.N.Y. 2010) ...................................................................... 13

*Bolanos v. Hooten*,
  2021 WL 516580 (S.D.N.Y. Feb. 11, 2021) ............................................................ 10

*Chase Manhattan Bank, N.A. v. Aldridge*,
  906 F. Supp. 870 (S.D.N.Y. 1995) ........................................................................... 11

*City of Almaty, Kazakhstan v. Ablyazov*,
  2019 WL 4747654 (S.D.N.Y. Sept. 30, 2019) ......................................................... 24

*City of N.Y. v. N.Y. Pizzeria Delicatessen, Inc.*,
  2006 WL 2850237 (S.D.N.Y. Sept. 29, 2006) ......................................................... 18

*Dennis' Nat. Mini-Meals, Inc. v. 91 Fifth Ave. Corp.*,
  172 A.D.2d 331 (1st Dep't 1991) ............................................................................. 15

*Dinkins v. Gen. Aniline & Film Corp.*,
  214 F. Supp. 281 (S.D.N.Y. 1963) ..................................................................... 21, 22

*DirecTV Latin Am., LLC v. Park 610, LLC*,
  691 F. Supp. 2d 405 (S.D.N.Y. 2010) ...................................................................... 15

*Duane Reade, Inc. v. St. Paul Fire & Marine Ins. Co.*,
  411 F.3d 384 (2d Cir. 2005) ..................................................................................... 17

*E.R. Squibb & Sons, Inc. v. Accident & Cas. Ins. Co.*,
   160 F.3d 925 (2d Cir. 1998) ................................................................................. 11

*Edwards v. Sequoia Fund, Inc.*,
   938 F.3d 8 (2d Cir. 2019) ..................................................................................... 12

*EFG Bank AG, Cayman Branch v. AXA Equitable Life Ins. Co.*,
   309 F. Supp. 3d 89 (S.D.N.Y. 2018) ............................................................... 17, 19

*ESPN, Inc. v. Off. of Com'r of Baseball*,
   76 F. Supp. 2d 383 (S.D.N.Y. 1999) ..................................................................... 18

*Exxon Mobil Corp. v. Allapattah Servs., Inc.*,
   545 U.S. 546 (2005) ............................................................................................... 9

*Ferring B.V. v. Allergan, Inc.*,
   4 F. Supp. 3d 612 (S.D.N.Y. 2014) ....................................................................... 19

*Fleisher v. Phoenix Lite Ins. Co.*,
   858 F. Supp. 2d 290 (S.D.N.Y. 2012) .................................................................... 17

*Gen. Pencil Co. v. George N. Kahn Co.*,
   246 F. Supp. 60 (S.D.N.Y. 1965) .......................................................................... 22

*Glob. Reinsurance Corp. of Am. v. Century Indem. Co.*,
   30 N.Y.3d 508 (2017) ............................................................................................ 13

*Greenfield v. Philles Recs., Inc.*,
   98 N.Y.2d 562 (2002) ............................................................................................ 13

*Hirsch v. Arthur Andersen & Co.*,
   72 F.3d 1085 (2d Cir.1995) ................................................................................... 14

*In re Prudential Lines Inc.*,
   158 F.3d 65 (2d Cir. 1998) .................................................................................... 19

*INTL FCStone Markets, LLC v. Intercambio Mexicano de Comercio S.A. de C.V.*,
   2021 WL 5304285 (S.D.N.Y. Nov. 15, 2021) ......................................................... 16

*Ixe Banco, S.A. v. MBNA Am. Bank, N.A.*,
   2008 WL 650403 (S.D.N.Y. Mar. 7, 2008) ............................................................ 19

*Jordan v. Verizon Corp.*,
   2009 WL 1490813 (S.D.N.Y. May 27, 2009) ......................................................... 10

*Katel Liab. Co. v. AT & T Corp.*,
    607 F.3d 60 (2d Cir. 2010) ............................................................................. 15

*Keiler v. Harlequin Enters. Ltd.*,
    751 F.3d 64 (2d Cir. 2014) ............................................................................. 15

*Kheel v. Port Auth. of N.Y.*,
    457 F.2d 46 (2d Cir. 1972) ............................................................................... 9

*Kolari v. New York-Presbyterian Hosp.*,
    455 F.3d 118 (2d Cir. 2006) ........................................................................... 11

*Krause v. Forex Exch. Mkt., Inc.*,
    356 F. Supp. 2d 332 (S.D.N.Y. 2005) ........................................................... 12

*L-7 Designs, Inc. v. Old Navy LLC*,
    64 F.3d 419 (2d Cir. 2011) ............................................................................... 3

*L-7 Designs, Inc. v. Old Navy, LLC*,
    647 F.3d 419 (2d Cir. 2011) ........................................................................... 14

*Lippe v. Bairnco Corp.*,
    229 B.R. 598 (S.D.N.Y. 1999) ....................................................................... 24

*Lopez v. Heritage of Pride, Inc.*,
    2019 WL 6529317 (S.D.N.Y. Dec. 3, 2019) ................................................... 9

*Mariah Re Ltd. v. Am. Family Mut. Ins. Co.*,
    52 F. Supp. 3d 601 (S.D.N.Y. 2014) ............................................................. 17

*MassMutual Asset Fin. LLC v. ACBL River Operations, LLC*,
    220 F. Supp. 3d 450 (S.D.N.Y. 2016) ..................................................... 14, 15

*Mfrs. Hanover Overseas Capital Corp. v. Southwire Co.*,
    589 F. Supp. 214 (S.D.N.Y. 1984) ................................................................ 21

*Miller v. HSBC Bank U.S.A., N.A.*,
    2015 WL 585589 (S.D.N.Y. Feb. 11, 2015) ................................................. 16

*NAS Elecs., Inc. v. Transtech Elecs. PTE Ltd.*,
    262 F. Supp. 2d 134 (S.D.N.Y. 2003) ........................................................... 20

*Oppenheimer & Co. v. Trans Energy, Inc.*,
    946 F. Supp. 2d 343 (S.D.N.Y. 2013) ............................................................. 3

*Pravin Banker Assocs., Ltd. v. Banco Popular Del Peru*,
    109 F.3d 850 (2d Cir. 1997) ........................................................................ 13, 18

*Prudential Ins. Co. of Am. v. BMC Indus., Inc.*,
    630 F. Supp. 1298 (S.D.N.Y. 1986) ................................................................. 22

*Purchase Partners, LLC v. Carver Fed. Sav. Bank*,
    914 F. Supp. 2d 480 (S.D.N.Y. 2012) ............................................................. 18

*Radha Geismann, M.D., P.C. v. ZocDoc, Inc.*,
    909 F.3d 534 (2d Cir. 2018) ....................................................................... 20, 21

*Robinson v. Berkshire Life Ins. Co. of Am.*,
    2019 WL 1614831 (S.D.N.Y. Apr. 16, 2019) ................................................ 10, 11

*Rowe v. Great Atl. & Pac. Tea Co.*,
    46 N.Y.2d 62 (1978) ......................................................................................... 13

*Scherer v. Equitable Life Assurance Soc'y of U.S.*,
    347 F.3d 394 (2d Cir. 2003) ............................................................................... 9

*Sea Cliff Delicatessen, Inc. v. Skrepek*,
    199 A.D.2d 510 (2d Dep't 1993) ...................................................................... 15

*SEC v. Credit Bancorp, Ltd.*,
    738 F. Supp. 2d 376 (S.D.N.Y. 2010) ............................................................. 17

*Skanska USA Bldg. Inc. v. Atl. Yards B2 Owner, LLC*,
    31 N.Y.3d 1002 (2018) ..................................................................................... 23

*Turban v. Bar Giacosa Corp.*,
    2019 WL 3495947 (S.D.N.Y. Aug. 1, 2019) .................................................... 10

*W.W.W. Assocs., Inc. v. Giancontieri*,
    77 N.Y.2d 157 (1990) ....................................................................................... 13

*Weir v. Cenlar FSB*,
    2018 WL 3443173 (S.D.N.Y. July 17, 2018) ..................................................... 9

*Wiederman v. Spark Energy, Inc.*,
    2020 WL 3965258 (S.D.N.Y. Mar. 9, 2020) .................................................... 19

*Wolff v. Rare Medium, Inc.*,
    210 F. Supp. 2d 490 (S.D.N.Y. 2002) ............................................................. 12

*Yamashita v. Scholastic Inc.*,
  936 F.3d 98 (2d Cir. 2019) ................................................................................................ 21

## **Rules & Regulations**

28 U.S.C. § 1332 ............................................................................................................... 8

28 U.S.C. § 1367 ............................................................................................................... 11

28 U.S.C. § 2201 ............................................................................................................... 17

Fed. R. Civ. P. 67 ................................................................................................ 20, 21, 22

N.Y. Debt. & Cred. Law § 277(b) .................................................................................... 23

N.Y. Debt. & Cred. Law § 279(b) .................................................................................... 23

Defendants AMCK Aviation Holdings Ireland Limited ("AMCK Holdings"), Accipiter Investments Aircraft 4 Limited ("Accipiter"), Vermillion Aviation (Two) Limited ("Vermillion"), Accipiter Holdings DAC ("Accipiter Holdings"), Carlyle Aviation Management Limited ("Carlyle Aviation"), Maverick Aviation Holdings Ltd. ("Maverick"), Manchester Aviation Finance S.a.r.l. ("Manchester"), UMB Bank, N.A., not in its individual capacity but solely as Owner Trustee ("UMB"), and Wells Fargo Trust Company, N.A., not in its individual capacity but solely as Owner Trustee ("Wells Fargo") (collectively, "Defendants") submit this Memorandum of Law in support of their Motion to Dismiss the Amended Complaint filed by Plaintiff Frontier Airlines, Inc. ("Frontier").  The motion is also supported by the accompanying Declaration of Jeff E. Butler dated August 26, 2022 ("Butler Decl.").

## Introduction

Plaintiff Frontier is a commercial airline that leases some of the passenger aircraft used in its business.  Defendants Accipiter and Vermillion are the beneficial owners of certain Airbus A320 aircraft on lease to Frontier.  This action arises from recent corporate transactions in which Accipiter and Vermillion were sold to an affiliate of defendant Carlyle Aviation.  These transactions are referred to collectively as the "Carlyle Transaction."

Before the Carlyle Transaction, Accipiter and Vermillion were owned by affiliates of defendant AMCK Holdings.  As a result of the Carlyle Transaction, Accipiter and Vermillion are now owned by an affiliate of Carlyle Aviation.  Importantly, nothing else has changed with respect to the leasing of the aircraft to Frontier.  The same corporate entities own the aircraft; the same lease agreements remain in place and unchanged; Frontier continues to possess and operate the relevant aircraft; and Frontier continues to make monthly rent payments as required under the

leases.  In short, Frontier is operating its business today in exactly the same way as before the Carlyle Transaction.

The Amended Complaint asserts that the lease agreements give Frontier the right to "advance notice" of the Carlyle Transaction and "assurances" that Frontier's rights will not be impaired.  Even assuming those assertions to be true, the Amended Complaint does not explain how Frontier has suffered financial harm from any breach of these alleged rights.  Indeed, the Amended Complaint fails to quantify *any* harm to Frontier's business arising from the closing of the Carlyle Transaction.  To paraphrase Macbeth, the Amended Complaint presents a tale full of sound and fury, but signifying nothing.

Frontier's contract-based claims should be dismissed primarily because the Carlyle Transaction did not actually breach any provision of the lease agreements.  The restrictions in the lease agreements, which are quoted and incorporated by reference into the Amended Complaint, apply only to transfers and/or assignments of aircraft or leases by Accipiter or Vermillion, neither of which has occurred here.  There is no language in these lease agreements that restricts equity transfers made by corporate parents of Accipiter or Vermillion.  Accordingly, based solely on the facts alleged in the Amended Complaint and/or incorporated by reference, Frontier's contract-based claims are meritless and should be dismissed as a matter of law.

In addition, the failure to allege damages should be fatal to Frontier's contract-based claims.  *First*, Frontier has the burden to satisfy the amount in controversy requirement for federal subject matter jurisdiction.  In the absence of plausible allegations of financial harm, Frontier cannot meet this fundamental requirement.  *Second*, damages are an essential element of any breach of contract claim.  In the absence of monetary damages, a breach of contract claim should be dismissed as a matter of law.

The Amended Complaint also asserts claims under the New York Uniform Voidable Transactions Act arising from AMCK Holdings' transfer of assets as part of the Carlyle Transaction.  These claims should be dismissed for the simple reason that this New York statute applies only to transfers by persons located in New York, and AMCK Holdings is located in Ireland, not New York.  In addition, even if this New York statute applies, it allows relief only against the *transferee* in a covered transaction.  Because AMCK Holdings is the alleged *transferor*, the statute does not authorize the relief sought by Frontier.

## **Factual Background**[1]

### A.    **The Lease Agreements and Related Contracts.**

Frontier is a passenger airline based in Denver, Colorado.  (Am. Compl. ¶¶ 1, 22.) Frontier is a party to individual lease agreements for 15 Airbus A320 aircraft (the "Lease Agreements").  (*Id.* ¶¶ 2, 27-28, 42.)  The counterparty in each Lease Agreement is either UMB or Wells Fargo, acting not in its individual capacity, but as the "Owner Trustee" under the terms of a related trust agreement.  Each of the Lease Agreements was signed by Frontier as the "Lessee" and either UMB or Wells Fargo as the "Lessor."  No other party signed the Lease Agreements.  (*See* ¶¶ 2-4 & Exs. 1-3.)[2]  Under each Lease Agreement, the Lessor acts for the beneficial owner of the aircraft, known as the "Owner Participant."  (Am. Compl. ¶¶ 2, 41-42.)

---

[1] Defendants accept well-pled factual allegations as true solely for the purpose of this motion to dismiss.

[2] The Court may consider the contracts attached to the Butler Declaration.  On a motion to dismiss, a complaint is "deemed to include" documents that are "incorporated in it by reference, and documents that, although not incorporated by reference, are integral to the complaint."  *L-7 Designs, Inc. v. Old Navy LLC*, 64 F.3d 419, 422 (2d Cir. 2011) (internal quotation marks and alterations omitted); *Oppenheimer & Co. v. Trans Energy, Inc.*, 946 F. Supp. 2d 343, 344 (S.D.N.Y. 2013) ("Where the claim is for breach of contract, as here, the complaint is deemed to incorporate the alleged contract by reference because the alleged contract is integral to the claim.").

Accipiter is the Owner Participant for 14 of the leases, and Vermillion is the Owner Participant

for one.  (*Id.* ¶¶ 24, 26.)  At the time the Lease Agreements were entered, Accipiter and

Vermillion were affiliates of AMCK Holdings.  (*Id.* ¶¶ 2, 26.)

Frontier's contract claims are based on language appearing in one or the other of two

forms of lease agreements, which are substantially similar and which the Amended Complaint

calls "Aircraft Lease Form 1" and "Aircraft Lease Form 2."  These provisions govern transfers

by the Lessors (UMB or Wells Fargo) or Owner Participants (Accipiter or Vermillion).

Specifically, 13 of the Lease Agreements use Aircraft Lease Form 1, which provides in

relevant part:

> Each of Lessor and Owner Participant (and any subsequent permitted
> assignee or transferee) shall have the right at any time, at its own expense
> and upon prior written notice to Lessee, to transfer ownership or beneficial
> ownership, as applicable, of the Aircraft, or to assign (including to assign as
> security), mortgage, novate, transfer, grant participations in, or otherwise
> dispose of its rights and obligations under this Agreement and the other
> Operative Documents, to any other person by outright transfer or
> assignment or collateral assignment or by operation of law and Lessee
> hereby consents to any such transfer or assignment; provided that . . . .
>
> (i)   Lessee shall have no greater financial obligation or liability under this
>        Agreement and the other Lessee Documents as a result of such transfer
>        based on the facts and circumstances existing and applicable laws in
>        effect at the time of such transfer, than it would have had if such
>        transfer had not taken place . . . .
>
> (iii) in the case of a sale of the Aircraft by Lessor or transfer of the
>        beneficial interest of Owner Participant in the Aircraft or a transfer
>        (other than to an Affiliate of the Lessor Guarantor) of a controlling
>        interest in the Owner Participant, any such assignee or transferee shall
>        be a Permitted Transferee and shall unconditionally guaranty the
>        obligations of Lessor under this Agreement pursuant to a Guarantee in
>        form substantially similar to the Guarantee executed by Owner
>        Participant in favor of Lessee unless the existing Lessor Guarantee will
>        remain in full force and effect following such transfer. . . .

(Am. Compl. ¶¶ 52-53; Butler Decl. Ex. 1, § 20.2(a).)

The remaining two Lease Agreements use Aircraft Lease Form 2, which provides in

relevant part:

> Lessor may sell, assign, novate or otherwise transfer its right, title and interest in the Aircraft or this Lease without Lessee's consent (a "**Transfer**"), subject to the following conditions:
>
> > (i)      the proposed purchaser, assignee or transferee (the "**Transferee**") shall enter into an agreement, reasonably satisfactory to Lessee, assuming all obligations of Lessor under this Lease and the other Operative Documents and of Beneficiary under the Participation Agreement and other Operative Documents; . . .
> >
> > (v)      any Transfer will not increase Lessee's obligations, liabilities (financial or otherwise), or risks or diminish Lessee's rights and benefits, in each case under any Operative Document or in respect of the Aircraft (to be determined in each case as at the time of such Transfer by applying all applicable laws as are enacted and/or in effect on the effective date of such Transfer), it being acknowledged by Lessee that the inclusion of the Transferee as an Indemnitee and as an Additional Insured will not constitute an increase in Lessee's obligations, liabilities or risks . . . .

(Am. Compl. ¶ 54; Butler Decl. Exs. 2-3, § 22.3.)

In connection with the Lease Agreements using Aircraft Lease Form 2, the Owner Participant (Accipiter) also entered into a "Participation Agreement" with Frontier.  (Am. Compl. ¶¶ 57, 62-63; Butler Decl. ¶ 5 & Ex. 4.)  In this agreement, Accipiter agreed that it could transfer "all or any of its rights" under various contracts, including the Lease Agreements, in certain circumstances.  (Am. Compl. ¶ 63; Butler Decl. Ex. 4, §§ 1, 3.1(a).)

The Amended Complaint also refers to written guarantees (the "Guarantees") that were provided by one of Accipiter, Accipiter Holdings or Vermillion.  (Am. Compl. ¶¶ 24-26, 58.) Each Guarantee provides a guarantee of performance for the obligations under the Lease Agreement.  (*See* Butler Decl. ¶¶ 6-7 & Exs. 5-6, § 1.)  Thirteen of the Guarantees provide:

> If Lessor fails to perform or comply with any such Guaranteed Obligation(s) in accordance with the Lease, then Guarantor hereby agrees to pay, perform or cause to be paid and/or performed, on demand, such Guaranteed Obligation(s) to the same extent as if it were the primary obligor.

(*Id.*)  The remaining two guarantees use substantially the same language, but refer to the underlying obligation of the Owner Participant, rather than the Lessor.  (*See* Butler Decl. Ex. 6, § 1.)

       **B.**    **The Carlyle Transaction.**

    In December 2021, the ultimate corporate parent of AMCK Holdings, Accipiter and Vermillion announced an agreement to sell its aircraft leasing business to an affiliate of Carlyle Aviation.  (Am. Compl. ¶¶ 64, 67.)  As applicable here, the Amended Complaint alleges that this transaction proceeded in two phases.  *First*, in December 2021, AMCK Holdings transferred its ownership in numerous corporate entities—including the entity that owned Vermillion—to defendant Manchester (which AMCK Holdings owned), and then transferred its ownership interest in Manchester to non-party Vermillion Aviation Holdings Limited ("Vermillion Holdings").  (*Id.* ¶¶ 70, 75.)  The Amended Complaint refers to these events as the "December 2021 Transfer."  (*Id.* ¶ 72.)  *Second*, in April 2022, Vermillion Holdings transferred Manchester to defendant Maverick, an affiliate of defendant Carlyle Aviation.[3]  (*See id.* ¶¶ 9, 12, 100.)  The Amended Complaint refers to this event as the closing of the Carlyle Transaction.  (*Id.* ¶ 100.)  For the sake of clarity, this memorandum will refer to this event as the "April 2022 Transfer."

    As a result of these transfers, the Owner Participants for the 15 aircraft leased to Frontier were no longer owned by AMCK Holdings or its affiliates.  However, there is no allegation that the ownership of the aircraft changed, or that any rights or obligations of the Lessor or Owner Participant were transferred.

---

[3] At the same time, another AMCK affiliate transferred Accipiter to Maverick.

### C.      Frontier Protests the Carlyle Transaction.

After learning about the Carlyle Transaction from public sources, Frontier began sending agitated letters to AMCK Holdings, demanding detailed information about the deal.  (*Id.* ¶¶ 86-88.)  AMCK Holdings responded but declined to provide the requested information at that time, noting that the transaction "does not involve any transfer or an assignment by a Lessor or an Owner Participant."  (*Id.* ¶¶ 87-99.)  By letter dated March 30, 2022, AMCK Holdings informed Frontier it expected "Carlyle or one of its affiliates to act as the new manager (or servicer) under the Lease Agreements," and that Carlyle would send a further notice to that effect after the closing.  (*See id.* ¶¶ 95-99; Butler Decl. ¶ 8 & Ex. 7.)  The Amended Complaint alleges that the information provided was insufficient.  (Am. Compl. ¶¶ 96, 99.)

The Carlyle Transaction closed on April 12, 2022.  (*Id.* ¶ 100.)  Following the closing, Carlyle Aviation took on the role of Servicer under the Lease Agreements.  (*Id.* ¶ 101.)  On or about April 13, 2022, Carlyle Aviation provided Frontier with notice regarding this change.  (*Id.*; Butler Decl. ¶ 9 & Ex. 8.)[4]

On June 1, 2022, the Lessors under the Lease Agreements—UMB and Wells Fargo, as owner trustees—pledged all their interests in the Lease Agreements to UMB Bank, N.A., acting in its capacity as security trustee under a separate financing arrangement (the "June 2022 Security Assignment").  (Am. Compl. ¶ 114; Butler Decl. ¶¶ 10-12 & Exs. 9-11.)  The same day,

---

[4] The Amended Complaint asserts that this notice was ineffective because it was sent *by* Carlyle Aviation, not the Lessor.  (Am. Compl. ¶ 108; *see also* Butler Decl. Ex. 1, § 1.1 (defining Servicer as a person whom "Lessor may notify Lessee in writing as being the servicer . . . .").)  This argument is a red herring.  As discussed in the next paragraph, Carlyle Aviation also provided Frontier with a series of notices on June 1, 2022.  (Am. Compl. ¶ 114.)  Each such notice was signed by the applicable Lessor and stated that Carlyle Aviation "shall act as servicer of the Aircraft unless and until we or the Security Trustee otherwise directs in writing."  (Butler Decl. Exs. 9-11.)  Thus, even assuming that Frontier's reading of the notice requirement is correct, any defect was cured.

Carlyle Aviation provided Frontier with a "Notice of Security Assignment" for each Lease Agreement describing the pledge. (*Id.*) The notices explained that the pledge was taking place pursuant to an April 11, 2022 Security Agreement among the Lessor, Maverick, UMB Bank, N.A. as security trustee and other parties. (Butler Decl. Exs. 9-11.) Each notice further provided that Frontier should pay "all monies that may be payable by you or on your behalf" to accounts held in the name of Accipiter or UMB Bank Trust Dept. (*Id.*)

**D.    The Instant Lawsuit.**

Frontier commenced this action on April 8, 2022, before the Carlyle Transaction had closed. Frontier filed the Amended Complaint on June 24, 2022. The Amended Complaint includes claims for breach of contract (First Claim), declaratory relief (Second and Third Claims), injunctive relief (Fourth Claim) and violation of the New York Uniform Voidable Transactions Act (Fifth and Sixth Claims).

<u>**Argument**</u>

**I.    THERE IS NO SUBJECT MATTER JURISDICTION FOR FRONTIER'S CONTRACT-BASED CLAIMS.**

The First through Fourth Claims of the Amended Complaint allege that the December 2021 Transfer, the April 2022 Transfer and the June 2022 Security Assignment violated Frontier's contractual rights. Specifically, Frontier contends that Defendants did not provide sufficient information or assurances about those transactions and have not agreed to pay Frontier's unspecified "costs and expenses." (Am. Compl. ¶¶ 128-135, 146-47, 158.) These claims should be dismissed because the Amended Complaint does not satisfy the amount in controversy requirement for subject matter jurisdiction.

Frontier invokes the Court's diversity jurisdiction under 28 U.S.C. § 1332. (*See* Am. Compl. ¶ 34.) Under this provision, a plaintiff has the burden of showing both that there is

complete diversity and that the amount in controversy exceeds $75,000.  *See Scherer v. Equitable Life Assurance Soc'y of U.S.*, 347 F.3d 394, 397 (2d Cir. 2003).  The purpose of the amount in controversy requirement is to "ensure that diversity jurisdiction does not flood the federal courts with minor disputes."  *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 552 (2005).  To satisfy the jurisdictional amount, the dispute must involve some claimed *monetary* benefit to plaintiff.  *See Kheel v. Port Auth. of N.Y.*, 457 F.2d 46, 49 (2d Cir. 1972) ("The federal courts cannot take cognizance . . . of cases in which the rights are not capable of valuation in monetary terms.").  On a claim for declaratory relief, the amount in controversy is measured by "the monetary value of the benefit that would flow to the plaintiff."  *Am. Standard, Inc. v. Oakfabco, Inc.*, 498 F. Supp. 2d 711, 717 (S.D.N.Y. 2007).

There is a "rebuttable presumption" that "the face of the complaint is a good faith representation about the amount in controversy . . . ."  *Scherer*, 347 F.3d at 397 (internal quotation marks omitted).  However, "where a complaint does not contain facts plausibly suggesting that the amount in controversy meets the jurisdictional minimum, the Court is not required to presume that the bare allegations in the complaint are a good faith representation of the actual amount in controversy."  *Lopez v. Heritage of Pride, Inc.*, No. 19 Civ. 6065, 2019 WL 6529317, at *5 (S.D.N.Y. Dec. 3, 2019); *see also Weir v. Cenlar FSB*, No. 16 Civ. 8650, 2018 WL 3443173, at *12 (S.D.N.Y. July 17, 2018) ("[T]he jurisdictional amount, like any other factual allegation, ought not to receive the presumption of truth unless it is supported by facts rendering it plausible.").

Frontier does not meet its burden here.  The Amended Complaint includes a formulaic statement that the "amount in controversy is greater than $75,000."  (Am. Compl. ¶ 34.)  This assertion is insufficient because it lacks any plausible factual support.  Notably, the Amended

Complaint does not allege that the transactions at issue have caused Frontier to suffer any monetary harm. Instead, it alleges that Frontier has not received sufficient information or assurances about those transactions. (*See id.* ¶¶ 128-34.) The Amended Complaint contains no allegations concerning the value of the information or assurances allegedly withheld. Therefore, the amount in controversy requirement has not been satisfied. *See Robinson v. Berkshire Life Ins. Co. of Am.*, No. 18 Civ. 7689, 2019 WL 1614831, at *5 (S.D.N.Y. Apr. 16, 2019) (finding jurisdictional amount not satisfied where the value of certain rights under insurance policy "depends on multiple contingencies" and was too "speculative"); *Jordan v. Verizon Corp.*, No. 08 Civ. 6414, 2009 WL 1490813, at *3 (S.D.N.Y. May 27, 2009) (same, where plaintiff complained of being denied "exit interview" but failed to allege that it "would have yielded any tangible or financial benefit"); *Am. Standard*, 498 F. Supp. 2d at 718 (same, where claimed indemnification rights lacked "precise monetary benefit" and were "too uncertain and speculative to be quantifiable").

Frontier also makes the conclusory assertion that the alleged breaches have caused it to "incur costs and expenses." (Am. Compl. ¶ 135.) However, Frontier does not describe or quantify any cost or expense actually incurred. A vague reference to fees and expenses is not sufficient to meet the jurisdictional requirement. *See Bolanos v. Hooten*, No. 21 Civ. 366, 2021 WL 516580, at *1 (S.D.N.Y. Feb. 11, 2021) (dismissing claim where legal fees would have to be "nine times the amount of damages" to reach $75,000, which "would be unreasonable"); *Turban v. Bar Giacosa Corp.*, No. 19 Civ. 1138, 2019 WL 3495947, at *3 (S.D.N.Y. Aug. 1, 2019) (dismissing claims for lack of plausible allegation that former employee's alleged interference

with customers and padding of hours came to $75,000).[5]

Defendants acknowledge that the Fifth and Sixth Claims under the New York Uniform Voidable Transactions Act may satisfy the amount in controversy requirement. (*See* Am. Compl. ¶ 177.) These claims, however, are asserted solely against AMCK Holdings. They do not give rise to original subject matter jurisdiction over any other defendant. It is well-settled that a plaintiff cannot "aggregate its claims against individual defendants to meet the jurisdictional requirement," but rather "must satisfy the jurisdictional amount with respect to each defendant." *E.R. Squibb & Sons, Inc. v. Accident & Cas. Ins. Co.*, 160 F.3d 925, 933 (2d Cir. 1998); *Chase Manhattan Bank, N.A. v. Aldridge*, 906 F. Supp. 870, 874 (S.D.N.Y. 1995).

Moreover, there is no reason for the Court to exercise supplemental jurisdiction here. As discussed in Section V below, the Fifth and Sixth Claims should be dismissed because they are facially defective. The Court may decline supplemental jurisdiction where it has "dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3); *see also Kolari v. New York-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) (noting that courts typically decline supplemental jurisdiction "in the usual case in which all federal-law claims are eliminated before trial" (internal quotation marks omitted)). In any event, even if the Fifth and Sixth Claims survive this motion in some form, courts may decline supplemental jurisdiction where an additional claim "substantially predominates" over the claim within the Court's original jurisdiction. *See* 28 U.S.C. § 1367(c)(2). Here, the contract-based claims are clearly the focus of the Amended Complaint and they are factually distinct from the voidable transfer claims. In these circumstances, the Court should decline to exercise supplemental jurisdiction. *See, e.g.,*

---

[5] In addition, to the extent Frontier seeks to include legal fees in its recovery, such fees are relevant to the amount in controversy "only where they are recoverable as of right pursuant to statute or contract." *Robinson*, 2019 WL 1614831, at *4 (internal quotation marks omitted).

*Krause v. Forex Exch. Mkt., Inc.*, 356 F. Supp. 2d 332, 338 (S.D.N.Y. 2005) (declining

jurisdiction over state law claims concerning contractual relationship where main claim involved

different issues of fraud).

## II.    THE FIRST CLAIM FOR BREACH OF CONTRACT SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM.

In its First Claim, Frontier alleges that various Defendants breached their contractual

obligations in connection with the December 2021 Transfer, the April 2022 Transfer and the

June 2022 Security Assignment.  This claim should be dismissed because the Carlyle

Transaction did not violate any provision of the Lease Agreements and because the Amended

Complaint fails to allege any damages.

### A.    The Amended Complaint Does Not Allege Any Transfer or Assignment by a Lessor or an Owner Participant.

Frontier asserts that the December 2021 Transfer and the April 2022 Transfer triggered

the "lease transfer" provisions of the Lease Agreements and Participation Agreements, and that

Defendants did not comply with those terms or the related terms of the Guarantees.  (Am.

Compl. ¶¶ 126-28, 130-31.)  This claim is meritless.  The lease transfer provisions are

inapplicable because, as alleged in the Amended Complaint, the December 2021 Transfer and

the April 2022 Transfer did not involve any transfer or assignment by a Lessor or an Owner

Participant.

For a breach of contract claim, "the complaint must allege: (i) the formation of a contract

between the parties; (ii) performance by the plaintiff; (iii) failure of defendant to perform; and

(iv) damages." *Edwards v. Sequoia Fund, Inc.*, 938 F.3d 8, 12 (2d Cir. 2019) (internal quotation

marks omitted).  In addition, "[w]hen pleading these elements, a plaintiff must identify the

specific provision of the contract that was breached as a result of the acts at issue." *Wolff v. Rare

Medium, Inc.*, 210 F. Supp. 2d 490, 494 (S.D.N.Y. 2002); *see also Boehner v. Heise*, 734 F.

Supp. 2d 389, 408 (S.D.N.Y. 2010) ("Under New York law, a plaintiff must allege the specific

provisions within a contract upon which the breach of contract claim is based.").

It is well-established that "[t]he best evidence of what parties to a written agreement

intend is what they say in their writing," and so an unambiguous contract "must be enforced

according to the plain meaning of its terms." *Greenfield v. Philles Recs., Inc.*, 98 N.Y.2d 562,

569 (2002). For that reason, "[e]vidence outside the four corners of the document as to what was

really intended but unstated or misstated is generally inadmissible to add to or vary the writing."

*W.W.W. Assocs., Inc. v. Giancontieri*, 77 N.Y.2d 157, 162 (1990). In addition, "where an

agreement is negotiated between sophisticated, counseled business people negotiating at arm's

length, courts should be extremely reluctant to interpret an agreement as impliedly stating

something which the parties have neglected to specifically include." *Glob. Reinsurance Corp. of*

*Am. v. Century Indem. Co.*, 30 N.Y.3d 508, 518-19 (2017) (internal quotation marks and

alterations omitted).

Courts give contractual restrictions on assignment an especially narrow reading. Indeed,

"[u]nder New York law, only *express* limitations on assignability are enforceable" and "such

covenants are to be construed strictly even if expressly stated." *Pravin Banker Assocs., Ltd. v.*

*Banco Popular Del Peru*, 109 F.3d 850 (2d Cir. 1997); *Rowe v. Great Atl. & Pac. Tea Co.*, 46

N.Y.2d 62, 69 (1978); *see also Best Food Corp. v. N.Y. 46th LLC*, 56 A.D.3d 302, 303 (1st Dep't

2008) (noting that "restrictions against assignment are disfavored as restraints on alienation and

are to be construed strictly").

In this case, each Lease Agreement contains certain restrictions on transfers or

assignments by the Lessor or Owner Participant. (Am. Compl. ¶¶ 53-54, 63; Butler Decl. Ex. 1,

§ 20.2; *id.* Exs. 2-3, § 22.3; *see also id.* Ex. 4, §§ 1, 3.1(a).) However, the Lease Agreements

contain no restriction on transfers by a corporate affiliate of the Owner Participant.  The Carlyle

Transaction involved only this latter kind of transfer.  Indeed, the Carlyle Transaction as a whole

is not alleged to involve any assignment, transfer or disposal by a Lessor or Owner Participant.

Rather, the Amended Complaint states only that there was a "change to the beneficial ownership

of the Lessor and Owner Participant."  (*See* Am. Compl. ¶¶ 9, 12, 82-84.)  In other words, the

December 2021 Transfer and the April 2022 Transfer involved transfers *of* the Owner

Participants, not transfers *by* the Owner Participants.[6]

These indirect changes in corporate control do not trigger the conditions set forth in the

Lease Agreements or the Participation Agreements.  The relevant contract language regulates

only actions taken by the Lessors or the Owner Participants.  They do not contain any restriction

on upstream actions by the corporate parents of the Owner Participants.  Moreover, it is well-

settled that changes in corporate ownership do not affect a corporate party's rights or obligations

under existing contracts.  As one court has explained:

> [I]t is well-established that a corporate parent and subsidiary possess a
> separate existence and are to be treated separately from one another.
> Similarly, a corporate parent which owns the shares of a subsidiary does not
> own or have legal title to the assets of the subsidiary.  A contract with a
> subsidiary does not constitute a contract with a subsidiary's parent.

*MassMutual Asset Fin. LLC v. ACBL River Operations, LLC,* 220 F. Supp. 3d 450, 456-57

(S.D.N.Y. 2016) (internal citations and alterations omitted).  On that basis, the court in

---

[6] The Amended Complaint vaguely alleges in one place that AMCK Holdings will "transfer its
interests in each of the Lease Agreements to Carlyle."  (Am. Compl. ¶ 127.)  However, this
conclusory assertion is belied by the more detailed allegations discussed above.  For that reason,
it should be disregarded.  *See L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 422 (2d Cir.
2011) (noting that factual allegations are "assume[d] to be true unless contradicted by more
specific allegations or documentary evidence"); *Hirsch v. Arthur Andersen & Co.*, 72 F.3d 1085,
1092 (2d Cir.1995) ("General, conclusory allegations need not be credited . . . when they are
belied by more specific allegations of the complaint.").

*MassMutual* rejected an argument that a contractual restriction on transfer applied to an

"upstream 'change of control'" by a party's corporate parents.  *Id.* at 456; *see also Sea Cliff*

*Delicatessen, Inc. v. Skrepek*, 199 A.D.2d 510, 511 (2d Dep't 1993) ("The landlord's argument,

that the sale of [tenant's] shares to [third party] constituted an assignment of the lease, is without

merit."); *Dennis' Nat. Mini-Meals, Inc. v. 91 Fifth Ave. Corp.*, 172 A.D.2d 331, 334 (1st Dep't

1991) (holding that "a corporate tenant's transfer of all of its stock to a third party does not

constitute a breach of a nonassignment provision of a lease").

       If the parties had wanted broader restrictions that would apply to changes in corporate

ownership, they could have included appropriate language in the agreements.  The fact that they

did not should be fatal to Frontier's breach of contract claim.  *See MassMutual*, 220 F. Supp. 3d

at 456 ("Courts routinely refuse to find a change of control provision in contracts that do not use

the phrase 'change of control.'"); *DirecTV Latin Am., LLC v. Park 610, LLC*, 691 F. Supp. 2d

405, 431 (S.D.N.Y. 2010) ("[T]he language of the Joint Venture Agreement only prohibits

attempts by a Member . . . to transfer an interest in [the venture].  It does not prevent [a member]

from transferring interests in itself.").

       Frontier alleges that there is an "industry practice" to treat lease transfer provisions

"broadly and to cover transfers occurring at different levels of the corporate structure . . . ."

(Am. Compl. ¶ 55.)  Even if true (and it is not), industry practice does not take precedence over

the plain language of the contract.  "[A] written agreement that is complete and unambiguous is

to be interpreted without the aid of extrinsic evidence and that *industry practice may not be used*

*to vary the terms of such a contract*."  *Keiler v. Harlequin Enters. Ltd.*, 751 F.3d 64, 69 (2d Cir.

2014) (emphasis added); *see also Katel Liab. Co. v. AT & T Corp.*, 607 F.3d 60, 66 (2d Cir.

2010) ("Because the Agreement is unambiguous, there is no occasion to consider evidence of

custom or practice.").

In sum, because the Lease Agreements and Participation Agreements do not restrict or impose conditions on changes in upstream corporate ownership of the Owner Participants, the transfer provisions of those contracts do not apply to the December 2021 Transfer or the April 2022 Transfer.  For similar reasons, there was no breach of the Guarantees in connection with these transfers.  The Guarantees only apply "[i]f Lessor [or the Owner Participant] fails to perform" under the Lease Agreements.  (*See* Butler Decl. Exs. 5-6, § 1.)  Because there is no underlying failure to perform, the Guarantees are not implicated.

**B.    The Amended Complaint Does Not Allege Damages.**

Frontier does not allege any damages arising from the December 2021 Transfer, the April 2022 Transfer or the June 2022 Security Assignment.  As discussed in Section I above, the Amended Complaint does not identify any harm to Frontier's business arising from the alleged failure to provide information and assurances about the Carlyle Transaction.  In the absence of any alleged harm, Frontier's breach of contract claim should be dismissed.  *See INTL FCStone Markets, LLC v. Intercambio Mexicano de Comercio S.A. de C.V.*, No. 18 Civ. 1004, 2021 WL 5304285, at *5 (S.D.N.Y. Nov. 15, 2021) (dismissing breach of contract claim because "Defendant does not plausibly allege how damages could, or did, result"); *Miller v. HSBC Bank U.S.A., N.A.*, No. 13 Civ. 7500, 2015 WL 585589, at *4 (S.D.N.Y. Feb. 11, 2015) (noting that an "unsupported claim that [plaintiff] 'suffered damages,' without any further factual enhancement, is not enough to properly plead the damages element of a breach of contract claim").

Frontier does make the conclusory assertion that the alleged breaches have caused it to "incur costs and expenses."  (Am. Compl. ¶ 135.)  However, Frontier does not explain what costs or expenses it has actually incurred.  Moreover, to the extent Frontier seeks to recover legal fees, it cites no contractual basis for doing so other than a provision in the Guarantees.  (*See* Am.

Compl. ¶ 61; Butler Decl. Exs. 5-6, § 2.2).  That provision applies only to fees incurred "in connection with the enforcement of this Guaranty."  (*Id.*)  The Amended Complaint does not allege that Frontier has incurred any such fees.

## III.   THE SECOND AND THIRD CLAIMS FOR DECLARATORY RELIEF SHOULD BE DISMISSED.

Frontier's claims for declaratory relief—the Second and Third Claims—are premised on the same alleged breaches of contract discussed above.  (*See* Am. Compl. ¶¶ 137-47, 149-58.) These claims should be dismissed because they are redundant and serve no useful purpose.

In "a case of actual controversy," a court "may declare the rights and other legal relations of any interested parties seeking such declaration, whether or not further relief is or could be sought."  28 U.S.C. § 2201.  Courts have discretion to grant declaratory relief and, in exercising that discretion, generally consider: "(1) whether the judgment will serve a useful purpose in clarifying or settling the legal issues involved; and (2) whether a judgment would finalize the controversy and offer relief from uncertainty."  *Duane Reade, Inc. v. St. Paul Fire & Marine Ins. Co.*, 411 F.3d 384, 389 (2d Cir. 2005).  Declaratory relief is designed to be "prospective," and is therefore not appropriate "where only past acts are involved."  *Mariah Re Ltd. v. Am. Family Mut. Ins. Co.*, 52 F. Supp. 3d 601, 623 (S.D.N.Y. 2014) (internal quotation marks omitted)); *SEC v. Credit Bancorp, Ltd.*, 738 F. Supp. 2d 376, 388-89 (S.D.N.Y. 2010) (same).

Here, a declaratory judgment would serve no useful purpose because the First Claim would resolve the same issues.  *See EFG Bank AG, Cayman Branch v. AXA Equitable Life Ins. Co.*, 309 F. Supp. 3d 89, 99 (S.D.N.Y. 2018) (dismissing claim for declaratory relief as duplicative); *Fleisher v. Phoenix Lite Ins. Co.*, 858 F. Supp. 2d 290, 302 (S.D.N.Y. 2012) ("The fact that a lawsuit has been filed that will necessarily settle the issues for which declaratory judgment is sought suggests that the declaratory judgment will serve no useful purpose."

(internal quotation marks omitted)).  Moreover, the declaratory claims suffer from the same legal

defects as the breach of contract claims, namely, that the Lease Agreements, by their terms, do

not apply to the transfers carried out in the Carlyle Transaction.

Frontier also fails to articulate any need for prospective relief.  The transactions described

in the Amended Complaint have already taken place.  If they violated some applicable contract

provision, then Frontier may obtain damages for breach.  However, the transactions themselves

would not be void.  On the contrary, it is well-settled that an assignment in violation of contract

terms is *not* void unless the contract contains "clear, definite, and appropriate language declaring

an assignment invalid."  *Purchase Partners, LLC v. Carver Fed. Sav. Bank*, 914 F. Supp. 2d 480,

505 (S.D.N.Y. 2012) (internal quotation marks omitted); *see also Pravin*, 109 F.3d at 856.  The

Lease Agreements contain no such language.

Importantly, Frontier is not seeking to terminate the Lease Agreements.  The Amended

Complaint alleges that the Lease Agreements are "in full force."  (*See* Am. Compl. ¶ 124).

Therefore, Frontier must continue to perform its own obligations under the Lease Agreements.

Indeed, under the election of remedies doctrine:

> [I]t is black-letter law that when one party to a contract materially breaches,
> the nonbreaching party has two options: it can terminate the agreement and
> sue for total breach, or it can continue the contract and sue for partial
> breach.  There is, however, no third option allowing the party claiming a
> breach to invoke self-help and only perform those obligations it wishes to
> perform.

*ESPN, Inc. v. Off. of Com'r of Baseball*, 76 F. Supp. 2d 383, 397-98 (S.D.N.Y. 1999) (internal

citations and quotation marks omitted); *see also City of N.Y. v. N.Y. Pizzeria Delicatessen, Inc.*,

No. 05 Civ. 2754, 2006 WL 2850237, at *7 (S.D.N.Y. Sept. 29, 2006) (same).  Thus, backward-

looking declaratory relief as to whether the Carlyle Transaction violated Frontier's rights would

not have any prospective effect on Frontier's obligations under the Lease Agreements.[7]

Even if the Court upholds the Second or Third Claims in some form, these claims should be dismissed as to AMCK Holdings, Carlyle Aviation, Manchester and Maverick because these entities are not party to any relevant agreement.  "It is hornbook law that a non-signatory to a contract cannot be named as a defendant in a breach of contract action unless it has thereafter assumed or been assigned the contract." *Ferring B.V. v. Allergan, Inc.*, 4 F. Supp. 3d 612, 625 (S.D.N.Y. 2014) (internal quotation marks omitted); *see also Wiederman v. Spark Energy, Inc.*, No. 19 Civ. 4564, 2020 WL 3965258, at *8 (S.D.N.Y. Mar. 9, 2020) ("It is black letter law that non-parties ordinarily cannot be held liable for a breach of contract." (internal alteration and quotation marks omitted)).  This is so even with respect to related corporate entities.  Indeed, "New York law respects corporate separateness," and so a plaintiff seeking to hold non-party affiliates liable must plausibly allege facts to support the "heavy burden" of piercing the corporate veil.  *Ixe Banco, S.A. v. MBNA Am. Bank, N.A.*, No. 07 Civ. 432, 2008 WL 650403, at *12 (S.D.N.Y. Mar. 7, 2008).

Here, Frontier's counterparties under the Lease Agreements are UMB or Wells Fargo. (Am. Compl. ¶¶ 27-28, 42; Butler Decl. ¶¶ 2-4 & Exs. 1-3.)  The counterparties to the Guarantees are Accipiter, Vermillion or Accipiter Holdings.  (*See* Am. Compl. ¶¶ 24-25, 58; Butler Decl. ¶¶ 6-7 & Exs. 5-6.)  Only Accipiter and Wells Fargo are party to the Participation

---

[7] In its Second Claim, Frontier asks for a declaration regarding "advance written notice of any security assignment."  (Am. Compl. ¶ 147.)  While this is potentially prospective in nature, Frontier does not allege that there is likely to be any future assignment.  In such circumstances, declaratory relief is inappropriate.  *See In re Prudential Lines Inc.*, 158 F.3d 65, 70 (2d Cir. 1998) ("Where the contingent event upon which the controversy rests is unlikely to occur, the controversy lacks 'sufficient immediacy and reality' to warrant declaratory relief."); *EFG Bank*, 309 F. Supp. 3d at 99 (dismissing declaratory claim concerning "other matters" not "at issue in this case").

Agreements.  (*See* Butler Decl. ¶ 5 & Ex. 4.)  The Amended Complaint sets forth no basis for

seeking declaratory relief against AMCK Holdings, Carlyle Aviation, Manchester or Maverick.

Since they are not party to any relevant agreement, there is no legitimate controversy between

Frontier and those entities.

## IV.    THE FOURTH CLAIM FOR AN ORDER UNDER RULE 67 SHOULD BE DISMISSED.

In its Fourth Claim, Frontier asks the Court for permission to make future rent payments

under the Lease Agreements to the Court pursuant to Rule 67 of the Federal Rules of Civil

Procedure.  (*See* Am. Compl. ¶¶ 19, 167.)  This unusual request should be rejected as a matter of

law.[8]

Rule 67 provides a mechanism for the voluntary deposit of contested funds with the

Court pending disposition of those funds by the Court.  It provides, in relevant part:

> If any part of the relief sought is a money judgment or the disposition of a
> sum of money or some other deliverable thing, a party—on notice to every
> other party and by leave of court—may deposit with the court all or part of
> the money or thing, whether or not that party claims any of it.

Fed. R. Civ. P. 67(a).  The "core purpose" of Rule 67 is to "relieve a party who holds a contested

fund from responsibility for disbursement of that fund among those claiming some entitlement

thereto."  *Radha Geismann, M.D., P.C. v. ZocDoc, Inc.*, 909 F.3d 534, 541 (2d Cir. 2018)

(internal quotation marks omitted).  The rule essentially "allows a party to use the court as an

escrow agent" for "disputed funds pending the resolution of a legal dispute, but it cannot be used

as a means of altering the contractual relationships and legal duties of the parties."  *Id.* (internal

---

[8] The Fourth Claim is titled "Injunctive Relief," but Frontier does not seek an injunction order
against any defendant.  To the extent Frontier is seeking an actual injunction, the claim is
defective because a request for injunction is a form of relief, not an independent claim or a cause
of action.  *See NAS Elecs., Inc. v. Transtech Elecs. PTE Ltd.*, 262 F. Supp. 2d 134, 149
(S.D.N.Y. 2003).

quotation marks omitted). The rule may be invoked "only where there is a dispute concerning the funds." *Mfrs. Hanover Overseas Capital Corp. v. Southwire Co.*, 589 F. Supp. 214 (S.D.N.Y. 1984).

Rule 67, by its terms, does not apply to the facts presented in this case. The plain language of Rule 67 allows the deposit of money only where that money is part of the "relief sought" in the case. In this case, however, Frontier does not claim future rent payments as damages for any of its claims. For this reason alone, the rule does not apply. *See Dinkins v. Gen. Aniline & Film Corp.*, 214 F. Supp. 281, 283 (S.D.N.Y. 1963) (holding that "Rule 67 literally does not fit this case" because no money judgment was sought for the amount at issue).

In addition, there is no genuine dispute concerning Frontier's obligation to make future rent payments. Frontier continues to use the aircraft under the Lease Agreements and does not claim to be relieved of its monthly rent payments. Since these rent payment obligations are not disputed, Frontier cannot invoke Rule 67 "simply because the entire dispute has not yet been resolved." *Mfrs. Hanover*, 589 F. Supp. at 221 (rejecting application of Rule 67 following ruling that party was entitled to the funds at issue).

The Amended Complaint also speculates that, absent further information about the rent payment recipient, Frontier "*could* find itself in a circumstance where it is not permitted to pay rent" and might not be "legally permitted to do business with the entity." (Am. Compl. ¶¶ 19, 161 (emphasis added).) However, there is no allegation—much less a plausible one—that making rent payments to Accipiter or "an account earmarked for [Carlyle's] lenders" (*see id*. ¶ 165) would pose any legal problem for Frontier. *See Yamashita v. Scholastic Inc.*, 936 F.3d 98, 105 (2d Cir. 2019) (dismissing complaint that was "fairly characterized as no more than a collection of speculative claims based on suspicion alone").

Finally, Frontier cannot invoke Rule 67 simply to avoid the contractual consequences of failing to make rent payments.  If Frontier believes it is entitled to withhold monthly rent because of some breach, it may do so without any intervention by the Court.  In these circumstances, courts do not allow a party to "defer decision, and by depositing the money in court, to preserve all its rights under the contract and to avoid the risk of a breach of contract on its part if its position should turn out to be wrong."  *Dinkins*, 214 F. Supp. at 283; *see also Prudential Ins. Co. of Am. v. BMC Indus., Inc.*, 630 F. Supp. 1298, 1300 (S.D.N.Y. 1986) (noting that where "plaintiff affirmed a contract and sued for damages," it could not use Rule 67 "to avoid having to fulfill its obligation to make payments to the defendant pursuant to the contract" (citing *Baxter v. United Forest Prods. Co.*, 406 F.2d 1120, 1126 (8th Cir. 1969)); *Gen. Pencil Co. v. George N. Kahn Co.*, 246 F. Supp. 60, 61 (S.D.N.Y. 1965) (rejecting Rule 67 relief where "plaintiff wishes to deposit the monies in court so that no claim can be made by defendant that by failure to pay the same the plaintiff has breached the contract with defendant").

## V.     THE FIFTH AND SIXTH CLAIMS UNDER THE NEW YORK UNIFORM VOIDABLE TRANSACTIONS ACT SHOULD BE DISMISSED.

Frontier alleges that AMCK Holdings engaged in the December 2021 Transfer to frustrate a potential judgment against AMCK Holdings that Frontier is seeking in a separate lawsuit pending before Judge Stanton, *Frontier Airlines, Inc. v. AMCK Aviation Holdings Ireland Limited et al.*, No. 20 Civ. 9713 (LLS) (S.D.N.Y.).  On that basis, Frontier asserts two claims under the New York Uniform Voidable Transactions Act (the "New York UVTA").  These claims should be dismissed as a matter of law because the 2020 revisions to the New York UVTA make clear that the statute does not apply to this transfer.

The New York UVTA contains an express choice of law provision.  The statute provides:

> A claim for relief in the nature of a claim for relief under this article is governed by the *local law of the jurisdiction in which the debtor is located*

when the transfer is made or the obligation is incurred.

N.Y. Debt. & Cred. Law § 279(b) (emphasis added).  An organizational debtor that has only one place of business is "located" at "its place of business," and one that has more than one place of business is located at its chief executive office.  *Id.* § 279(a).  This "clear rule" of Section 279 "eliminates the risk that the laws of multiple jurisdictions might be applicable to a single transfer involving property in multiple jurisdictions or injuring creditors in multiple jurisdictions."  *Id.*, McKinney's cmt.

AMCK Holdings does not maintain a place of business in New York.  As alleged in the Amended Complaint, AMCK Holdings is located in Ireland.  (Am. Compl. ¶ 23.)  Thus, the New York UVTA does not apply to transfers by AMCK Holdings.  On this basis alone, the Fifth and Sixth Claims should be dismissed as a matter of law.[9]

In addition, even if the New York UVTA applied, AMCK Holdings is not a proper defendant here.  The Amended Complaint asserts that the December 2021 Transfer was "a series of transfers made by AMCK Holdings" that "left AMCK Holdings with insufficient assets . . . ." (Am. Compl. ¶¶ 72-73.)  Frontier asks the Court to unwind that transfer and for an award of monetary relief.  (Am. Compl. ¶¶ 180-181, 189-90.)  However, the statute is clear that such relief "is available only against" the *recipient* of a transfer.  *See* N.Y. Debt. & Cred. Law § 277(b)(1)-(2).  In other words, "the transferor of the property—that is, the debtor—is not the proper defendant in a fraudulent conveyance claim."  *Amusement Indus., Inc. v. Midland Ave. Assocs.*,

---

[9] The Framework Agreement's choice-of-law clause is not relevant to this issue.  While the parties chose New York law to govern their relationship, they did not, and could not, incorporate New York statutory law that does not by its terms apply.  S*ee Skanska USA Bldg. Inc. v. Atl. Yards B2 Owner, LLC*, 31 N.Y.3d 1002, 1007 (2018) ("The mere fact that an agreement, and disputes arising thereunder, are governed by the law of a particular jurisdiction does not transform all statutory requirements that may otherwise be imposed under that body of law into contractual obligations . . . .").

820 F. Supp. 2d 510, 527 (S.D.N.Y. 2011); *see also Lippe v. Bairnco Corp.*, 229 B.R. 598, 601 (S.D.N.Y. 1999) ("As the transferor, [debtor] would not be a proper defendant in a fraudulent conveyance claim under New York's Debtor and Creditor Law (the 'NYDCL'), which lies only against the transferees and beneficiaries of the challenged conveyances.").  Because AMCK Holdings is alleged to be the transferor, not the transferee, there is no basis for a claim against AMCK Holdings under the New York UVTA.

This makes perfect sense.  "The goal of a fraudulent conveyance claim is not to increase the debtor's liability but rather to increase the pool of assets that could be used to satisfy that liability."  *City of Almaty, Kazakhstan v. Ablyazov*, No. 15 Civ. 5345, 2019 WL 4747654, at *3 (S.D.N.Y. Sept. 30, 2019).  Frontier already has a pending lawsuit against AMCK Holdings seeking a judgment for the alleged underlying debt.  If Frontier does not succeed in that suit, there would be no debt to recover.  If Frontier prevails, it would not be entitled to a second judgment against AMCK Holdings for the same amount.  *See, e.g., Bender v. City of N.Y.*, 78 F.3d 787, 793 (2d Cir. 1996) ("A basic principle of compensatory damages is that an injury can be compensated only once.").  Thus, any judgment under the New York UVTA would be duplicative.

## Conclusion

For the reasons set forth above, Defendants' Motion to Dismiss should be granted.

Dated: August 26, 2022                                Respectfully submitted,
　　　　New York, New York

　　　　　　　　　　　　　　　　　　　　　　　　 s/ Jeff E. Butler

　　　　　　　　　　　　　　　　　　　　　 Jeff E. Butler
　　　　　　　　　　　　　　　　　　　　　 John P. Alexander
　　　　　　　　　　　　　　　　　　　　　 Gege Wang
　　　　　　　　　　　　　　　　　　　　　 CLIFFORD CHANCE US LLP
　　　　　　　　　　　　　　　　　　　　　 31 West 52nd Street
　　　　　　　　　　　　　　　　　　　　　 New York, New York 10019

　　　　　　　　　　　　　　　　　　　　　 *Attorneys for Defendants*