UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| FRONTIER AIRLINES, INC.,<br><br>        Plaintiff,<br><br>    v.<br><br>AMCK AVIATION HOLDINGS IRELAND LIMITED, ACCIPITER INVESTMENT 4 LIMITED, VERMILLION AVIATION (TWO) LIMITED, ACCIPITER HOLDINGS DAC, CARLYLE AVIATION MANAGEMENT LIMITED, MAVERICK AVIATION HOLDINGS LTD., MANCHESTER AVIATION FINANCE S.a.r.l., VERMILLION AVIATION HOLDINGS LIMITED, WELLS FARGO TRUST COMPANY, N.A., solely in its capacity as OWNER TRUSTEE, and UMB BANK, N.A., solely in its capacity as OWNER TRUSTEE,<br><br>        Defendants. | Case No. 1:22-cv-02943 (PAE)<br><br>ECF Case |

# MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT VERMILLION HOLDINGS' MOTION TO DISMISS THE SECOND AMENDED COMPLAINT

**BINDER & SCHWARTZ LLP**
366 Madison Avenue, 6th Floor
New York, New York 10017
(212) 510-7008

*Counsel for Plaintiff Frontier Airlines, Inc.*

## **TABLE OF CONTENTS**

*Page*

PRELIMINARY STATEMENT ................................................................................................ 1

FACTUAL BACKGROUND ...................................................................................................... 1

    A.    Vermillion Holdings Receives AMCK Holdings' Assets Without Consideration ........................................................................................................ 1

    B.    The Claims Against Vermillion Holdings ............................................................. 2

ARGUMENT ................................................................................................................................. 2

CONCLUSION .............................................................................................................................. 5

Plaintiff Frontier Airlines, Inc. ("Frontier") respectfully submits this memorandum of law in opposition to the motion to dismiss the Second Amended Complaint (the "Motion") filed by Defendant Vermillion Aviation Holdings Limited ("Vermillion Holdings").[1]

## PRELIMINARY STATEMENT

Vermillion Holdings is one of the AMCK affiliate entities that played a critical role in the Asset Transfer and scheme to shield Carlyle and AMCK from Frontier's claims in the Framework Agreement Action by stripping assets from AMCK Holdings, the defendant in the Framework Agreement Action, in anticipation of a potential judgment. Vermillion Holdings moves to dismiss on a subset of the same grounds that are the subject of all other Defendants' motion to dismiss filed on October 7, 2022 (ECF No. 40) (the "Initial Motion to Dismiss"). Vermillion Holdings joins in that motion and seeks to dismiss the declaratory judgment claims and the fraudulent transfer claims as against it. Its motion was filed later because it is a Hong Kong entity and was served after the other Defendants. For the reasons set out below and in Frontier's Opposition to the Initial Motion to Dismiss, Vermillion Holdings' Motion should be denied.

## FACTUAL BACKGROUND

Frontier refers to and incorporates the factual background set forth in the Opposition.

### A. Vermillion Holdings Receives AMCK Holdings' Assets Without Consideration

After AMCK Holdings transferred over 98.5% of its assets to Defendant Manchester, AMCK Holdings then transferred its 100% ownership interest in Manchester to Vermillion Holdings and, upon information and belief, Vermillion Holdings provided no value to AMCK Holdings in exchange. *See* SAC ¶¶ 68-79, 184. The assets received by Vermillion Holdings included nearly all of AMCK Holdings' subsidiary entities, including Defendant Vermillion Aviation (Two) Limited, the Owner Participant for one of the Leases that is the subject of this action. *See id.* ¶¶ 23, 75. According to AMCK's 2020 financial statements filed with the

---

[1] Capitalized terms not defined herein have the meaning given to them in Frontier's Memorandum of Law in Opposition to Defendants' Motion to Dismiss (ECF No. 43) (the "Opposition").

government of Ireland, the entities transferred to Vermillion Holdings without consideration represented over 98.5% of AMCK Holdings' net worth prior to the transfer, totaling approximately $574,839,553 in value, *id.* ¶¶ 75, 79, 184, and left AMCK Holdings with less than $10 million in assets—far less than its liabilities to Frontier and the minimum GAAP net worth requirement under the guarantees. *Id.* ¶ 79.  Based on those disclosures, AMCK Holdings did not receive any value in exchange for the transfer of interest in Manchester to Vermillion Holdings. *Id.* ¶¶ 69-70.  No AMCK party, including Vermillion Holdings, notified Frontier of the transfer. *Id.* ¶¶ 85-86.

After the Asset Transfer, Vermillion Holdings promptly sold those very assets— including Vermillion Aviation (Two) Limited and the related aircraft and Lease—to Carlyle in connection with the Carlyle Transaction.  *Id.* ¶¶ 63-65.  Once again, Carlyle, Vermillion Holdings, and AMCK did not notify Frontier of the transfer.  *Id.* ¶¶ 85-86.

### B.  The Claims Against Vermillion Holdings

The Second Amended Complaint asserts four claims against Vermillion Holdings: two claims for declaratory judgment arising from Vermillion Holdings' improper transfer of the Vermillion Lease Agreement, SAC ¶¶ 139-61, and claims for fraudulent transfer and constructive fraudulent transfer, respectively, arising from the Asset Transfer and its receipt of AMCK Holdings' assets, *id.* ¶¶ 162-88.

### ARGUMENT

Vermillion Holdings has not met its burden to establish that Frontier's claims against Vermillion Holdings should be dismissed at the pleading stage.

With respect to the declaratory judgment claims, Vermillion Holdings argues that the claims should be dismissed because Vermillion Holdings "is not a party to any agreement with Frontier."  Mem. Law Supp. Mot. Dismiss at 2, ECF No. 46 ("VAHL Brief").  But that is not the relevant standard.  *See, e.g.*, *Gov't Emps. Ins. Co. v. Saco*, No. 12-cv-5633 (NGG) (MDG), 2014 WL 639419, at *5 (E.D.N.Y. Feb. 18, 2014) (noting that contractual privity not required for an

actual controversy under Declaratory Judgment Act).  Vermillion Holdings played an integral role in the Carlyle Transaction and Asset Transfers.  As explained in the Opposition, Frontier's declaratory judgment claims seek relief against the key Carlyle and AMCK entities involved in the Carlyle Transaction and Lease Agreements.  As relevant to Vermillion Holdings, and among other relief, Frontier's Second and Third Claims seek declarations that Frontier is entitled to the information and assurances sufficient to determine whether the Carlyle Transaction satisfies the requirements of the Lease Agreements, SAC ¶¶ 149-50, and that Frontier is not deemed to have consented to the transfer of the Lease Agreements in connection with the Asset Transfer or the Carlyle Transaction.  *Id.* ¶ 161; *see also id.* ¶¶ 69, 73, 81.  As a party to both of those transactions, declaratory relief against Vermillion Holding is both proper and necessary, and Vermillion Holdings has not established that such relief will not "serve a useful purpose" in finalizing the controversy.  *Duane Reade, Inc. v. St. Paul Fire & Marine Ins. Co.*, 411 F.3d 384, 389 (2d Cir. 2005).  To the extent Vermillion Holdings joins in the arguments made by the remaining Defendants in their Motion to Dismiss, Frontier incorporates its reasoning set out in the Opposition.  *See* Opp. at 22-23.

  Finally, Frontier has pled claims for fraudulent transfer and constructive fraudulent transfer against Vermillion Holdings under New York law.  Vermillion Holdings does not challenge these claims under New York law.  Instead, Vermillion Holdings argues that Irish law should apply because Vermillion Holdings is not party to the Lease Agreements, Participation Agreements, and Framework Agreement containing the New York choice-of-law provisions.  VAHL Br. at 2; *see also* Opp. at 23-25.  For the reasons explained in the Opposition with respect to Defendant Maverick, these provisions are binding on Vermillion Holdings as well: Vermillion Holdings was the beneficial owner of defendant Vermillion and the Lease Agreement and related documents; it received a direct benefit from those agreements upon the improper sale to Carlyle; and it was the entity that directly benefited from the scheme to raid AMCK Holdings of its assets and shield them from a potential judgment in the Framework Agreement Action.  *See* Opp. at 24.

3

Further, Vermillion Holdings was a beneficial owner of AMCK Holdings prior to the transactions at issue in this action. *See* Corporate Disclosure Statement of Def. AMCK Aviation Holdings Ireland Limited at 1, *Frontier Airlines, Inc. v. AMCK Aviation Holdings Ireland Ltd.*, No. 20-cv-9713 (S.D.N.Y. 2020), ECF No. 21.[2] Thus, Vermillion Holdings is closely related to the parties to the Lease Agreement and the Framework Agreement and is bound by these Agreements' New York choice-of-law provisions. *See In re Platinum-Beechwood Litig.*, 427 F. Supp. 3d 395, 460 (S.D.N.Y. 2019) (non-signatories may properly be bound by forum selection clauses and governing law provisions where entity is "so closely related to either the parties to the contract or the contract dispute itself that enforcement of the clause against the non-party is foreseeable"); *Diamond v. Calaway*, No. 18-cv-3238 (KPF), 2018 WL 4906256, at *5 (S.D.N.Y. Oct. 9, 2018) (holding defendant was "closely related" to the signatory, such that she was bound by forum selection clause as non-signatory, where defendant was "intimately involved in the scheme to defraud Plaintiff of the disputed funds [at issue in the proceeding]"); *LaRoss Partners, LLC v. Contact 911 Inc.*, 874 F. Supp. 2d 147, 160 (E.D.N.Y. 2012) (citing cases holding "closely related" non-signatories were bound by forum selection clauses).[3] Therefore, New York, and not Irish law, applies to Frontier's fraudulent transfer claims. Vermillion Holdings' arguments in favor of dismissal fail, and the claims should not be dismissed. *See* Opp. at 24-25.

---

[2] On a motion to dismiss, a court may take judicial notice of pleadings filed in another action. *E.g., United States v. Allergan, Inc.*, 899 F.3d 163, 169 n.5 (2d Cir. 2018). AMCK Holdings and the other Defendants have failed to comply with their obligation to file corporate disclosure statements in this action.

[3] Although these cases concerned application of a forum selection clause, and did not expressly address governing law, the reasoning is applicable to the facts of this case. *Cf. VTX Commc'ns, LLC v. AT&T Inc.*, No. 7:19-cv-00269, 2020 WL 4465968, at *5 (S.D. Tex. Aug. 4, 2020) (applying "'closely related' doctrine" of Second Circuit and other circuits and holding non-signatory affiliated entities were bound by a choice-of-law provision).

## **CONCLUSION**

For the foregoing reasons, Frontier respectfully requests that the Court deny Vermillion Holdings' Motion to Dismiss and grant any such other and further relief as the Court deems appropriate.

Dated: November 22, 2022
New York, New York

Respectfully submitted,

**BINDER & SCHWARTZ LLP**

/s/ Eric B. Fisher
Eric B. Fisher
Tessa B. Harvey
366 Madison Avenue, 6th Floor
New York, New York 10017
Tel: (212) 510-7008
Fax: (212) 510-7299
Email: efisher@binderschwartz.com
Email: tharvey@binderschwartz.com

-and-

**LANE POWELL PC**
David Schoeggl (*pro hac vice motion forthcoming*)
601 S.W. Second Avenue
Suite 2100
Portland, Oregon 97204
Telephone: (503) 778-2100
Email: schoeggld@lanepowell.com

*Counsel for Plaintiff Frontier Airlines, Inc.*