DocuSign Envelope ID: 1BD7B53E-DBE6-496F-8DA7-43685A45EBB9

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| FRONTIER AIRLINES, INC.,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>AMCK AVIATION HOLDINGS IRELAND LIMITED, ACCIPITER INVESTMENT 4 LIMITED, VERMILLION AVIATION (TWO) LIMITED, ACCIPITER HOLDINGS DAC, CARLYLE AVIATION MANAGEMENT LIMITED, MAVERICK AVIATION HOLDINGS LTD., MANCHESTER AVIATION FINANCE S.a.r.l., VERMILLION AVIATION HOLDINGS LIMITED, WELLS FARGO TRUST COMPANY, N.A., solely in its capacity as OWNER TRUSTEE, and UMB BANK, N.A., solely in its capacity as OWNER TRUSTEE,<br><br>　　　　　　Defendants. | Case No. 1:22-cv-02943 (PAE) |

## DECLARATION OF PAUL LAMBERT

I, Paul Lambert, declare as follows:

1.　　I am outside counsel for Plaintiff Frontier Airlines, Inc. ("Frontier") for its fleet management matters and am knowledgeable about the matters set forth herein.

2.　　AMCK Aviation Holdings Ireland Limited and its affiliates (collectively, "AMCK") beneficially owned 15 aircraft for which Wells Fargo Trust Company, N.A. ("Wells Fargo") or UMB Bank, N.A. ("UMB") acted as owner trustee (together, the "AMCK Lessors"), and which the AMCK Lessors leased to Frontier.

3.　　The 15th aircraft was later returned by Frontier pursuant to the terms of the lease.

4.　　Of the 14 aircraft still leased by Frontier, 13 have leases that follow a common

format, referred to by the parties as Lease Form 1. The other aircraft's lease followed a slightly different form, termed Lease Form 2. A true copy of Lease Form 1 is attached as **Exhibit 1**, and a true copy of Lease Form 2 is attached as **Exhibit 2**.

5. Both Lease Form 1 and Lease Form 2 contain express protections for Frontier in the event the lessors collaterally assign or transfer ownership of the aircraft.

6. Among other protections, Section 20.2(a)(ii) of Lease Form 1 states that Frontier need not agree to any transfer or assignment that would "result in any restriction . . . on Lessee's rights under this Agreement or the other Lessee's Documents or on Lessee's use or operation of the Aircraft."

7. Among other protections, Section 22.3(v) of Lease Form 2 allows a transfer only if it "will not increase Lessee's obligations, liabilities (financial or otherwise), or risks or diminish Lessee's rights and benefits, in each case under any Operative Document or in respect of the Aircraft."

8. Generally accepted usage within the aviation industry reads references to "transfers" of ownership broadly to capture transactions at different levels of the corporate structure.

9. Frontier executed the most recent Framework Agreement for six leases with AMCK in March 2020, which governed the parties' conduct with respect to those leases. A true copy of the Framework Agreement is attached as **Exhibit 3**.

10. Almost immediately, AMCK told Frontier that it wanted to repudiate the Framework Agreement because of the adverse effect the COVID-19 pandemic had on aircraft financing markets.

11. Frontier and AMCK also actively discussed deferring both the delivery of recently

leased Aircraft that had not yet been supplied by Airbus, as well as the deferral of associated rent due to pandemic travel restrictions. AMCK granted Frontier this temporary rent deferral while the parties negotiated other commercial details of the deferral, including with other parties like Airbus.

12. AMCK reneged on its agreement with Frontier to temporarily defer rent.

13. On May 8, 2020, without warning, AMCK issued Frontier a Notice of Termination of the Framework Agreement on the ground that Frontier had not paid the rent that AMCK had told Frontier it could defer. Accordingly, AMCK retracted its commitment to purchase five remaining aircraft from Airbus and then lease them back to Frontier, as provided in the Framework Agreement.

14. To avoid a default with Airbus, Frontier quickly secured separate sources of financing for the yet-to-be-delivered Aircraft, at substantial loss to Frontier.

15. On November 18, 2020, Frontier filed a lawsuit against AMCK and other defendants bearing the case number 1:20-cv-09713. In that lawsuit, AMCK alleges several breaches of both the leases and the Framework Agreement, including that AMCK anticipatorily repudiated the Framework Agreement, as well as breach of quiet enjoyment, promissory estoppel, and fraud. A true copy of the complaint filed in that lawsuit is attached as **Exhibit 4**.

16. On January 29, 2021, the defendants filed a partial motion to dismiss. On May 5, 2021, the court denied the motion in its entirety. A true copy of Judge Stanton's order denying the motion to dismiss is attached as **Exhibit 5**.

17. Discovery in this case has closed and the defendants' summary judgement motions are fully briefed and are awaiting a decision from Judge Stanton.

18. AMCK sold its entire aircraft portfolio to Carlyle Aviation Partners and certain other affiliated entities in or around January 2022. A December 2021 press release from Carlyle

(the "Press Release") announced the sale, which Frontier discovered in January 2022. A true copy of the Press Release is attached as **Exhibit 6**. AMCK never informed Frontier that it intended to sell or had sold its portfolio to Carlyle. Rather, Frontier learned of the sale when it discovered the Press Release.

19. Upon review of publicly available financial statements and other corporate records of relevant entities, Frontier came to understand that AMCK conducted a series of internal transfers that effectively relinquished AMCK's valuable assets. Those assets, including companies holding the AMCK subsidiaries that had leased the Aircraft to Frontier, were then contributed to a separate entity and sold to Carlyle for less than fair value, leaving AMCK Aviation Holdings as an undercapitalized shell entity unlikely to be solvent to pay any judgment obtained by Frontier in the lawsuit described above.

20. Frontier learned in discovery in its lawsuit against AMCK that AMCK and Carlyle had entered into a private agreement to apportion liability between them for any judgment in the action before Judge Stanton. Frontier does not know the details of this arrangement.

21. On January 4, 2022, Frontier made a written demand on AMCK for documents and information relevant to the transfer of ownership interests to Carlyle. Despite its obligations under the leases, AMCK denied that the sale was a "transfer" under the leases and provided no information. AMCK responded similarly to a second written demand from Frontier.

22. On April 13, 2022, Carlyle notified Frontier that its transaction with AMCK had closed and Carlyle had taken over as the new Servicer with respect to the aircraft leased to Frontier. Frontier objected to the transactions, Carlyle did not respond, and then Frontier filed the above-captioned action.

23. In June 2022, Carlyle delivered to Frontier a Notice of Security Assignment and

Notices of Effect Date for certain of the leased aircraft. A true copy of one of the notices is attached as **Exhibit 7**. Carlyle provided Frontier no advance notice of this transaction. The June 2022 transactions resulted in the security assignment of all 14 lease aircraft to new lenders.

24. In November 2022, Carlyle also requested that Frontier approve an assignment of ownership interests in certain of the aircraft to two separate third parties.

25. Carlyle demanded that Frontier acknowledge these assignments. However, Frontier could not acknowledge the assignment without, among other prejudice and cost to Frontier, abandoning its valuable claims that AMCK had wrongfully transferred the Aircraft to Carlyle in the first instance, undermining Frontier's valuable claims in both this action and in Frontier's action against AMCK.

26. To avoid this issue, Frontier sought to secure alternative security from Carlyle to support the claims Frontier had already asserted. Carlyle rejected Frontier's proposals, but offered that a solvent Carlyle entity guarantee any liability a Carlyle-owned entity is found to have to Frontier in the lawsuit in front of Judge Stanton.

27. Frontier told Carlyle that it was willing to accept as security Carlyle's choice of: (i) a letter of credit for $60 million; (ii) a bond in an amount to be determined by the court on a joint application; or (iii) a first lien security interest in 3 of the aircraft. Carlyle refused.

28. Frontier also understands that certain of Carlyle's proposed assignments cannot yet occur even if Frontier were to consent, because a condition of such transfer would be the execution of a new tripartite agreement between CFM, who manufactures the engines used in the Aircraft, Frontier, and the proposed transferees. In the aircraft industry, engines generally are obtained directly from an engine manufacturer separate and apart from the lease of the aircraft in which they are used.

29. On April 27, 2023, Carlyle sent Frontier a letter asserting that Frontier had breached its obligations under the Leases and the Non-Waiver Agreement executed by Frontier and Carlyle. A true copy of that letter is attached as **Exhibit 8**.

30. The purpose of the Non-Waiver Agreement was to allow AMCK and Carlyle to continue honoring the Leases in the ordinary course, without continued performance being interpreted as a waiver or abandonment of Frontier's rights to challenge that proper transfers had taken place.

31. The April 27 letter misrepresented several of Frontier's positions. For example, the letter states that Frontier insisted the new lessor and security trustee subordinate their security rights to Frontier, ignoring that Frontier had been attempting to negotiate alternative security with Carlyle.

32. Frontier responded to this letter on May 3, 2023 correcting the above misstatements and expressing continued willingness to negotiate toward mutually agreeable terms. A true copy of Frontier's response is attached as **Exhibit 9**.

33. On the afternoon of Friday, May 26, 2023, Carlyle served Frontier with notices of default on all 14 aircraft leases. True copies of those leases are attached as **Exhibit 10**. The sole basis given for the claimed default was Frontier's alleged failure to execute transfer documents as presented by lessor under Section 20.2(b) of Lease Form 1.

34. Under Section 16.1(c) of the Leases, serving notice of default starts a 15-day cure period under Form 1 (30 days under Form 2) after which an Event of Default is triggered. The 15-day cure period would expire on June 10, 2023.

35. The Notices threaten five actions available under the Aircraft leases following a default by the lessee, two of which are "grounding of the Aircraft" and "cancelation of the leasing

of the Aircraft and requiring return of the Aircraft to Lessor . . . ."

36. On June 5, 2023, Carlyle filed an action against Frontier in the Supreme Court of the State of New York, County of New York, and served Frontier. A true copy of that complaint—as filed with redactions—is attached as **Exhibit 11**.

37. On June 6, 2023, Frontier removed the action to federal court on the basis of diversity.

38. There has been no prior application for the relief requested in Frontier's motion by order to show cause for a temporary restraining order and preliminary injunction.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: June 7, 2023

DocuSigned by:

*Paul Lambert*
5E536831DE89403...
Paul Lambert