# Exhibit 4

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

FRONTIER AIRLINES, INC.,

                       Plaintiff,

      v.

AMCK AVIATION HOLDINGS IRELAND
LIMITED, ACCIPITER INVESTMENT 4
LIMITED, VERMILLION AVIATION (TWO)
LIMITED, WELLS FARGO TRUST
COMPANY, N.A., solely in its capacity as
OWNER TRUSTEE, and UMB BANK, N.A.,
solely in its capacity as OWNER TRUSTEE,

                       Defendants.

Case No. _____

**COMPLAINT**

Plaintiff, Frontier Airlines, Inc. ("Frontier"), by its attorneys Binder & Schwartz LLP and Lane Powell PC, states as follows:

## PARTIES, JURISDICTION AND VENUE

1.      Plaintiff Frontier, a Colorado corporation, is headquartered in Denver, Colorado.

2.      Defendant AMCK Aviation Holdings Ireland Limited ("AMCK Holdings"), a company incorporated in Ireland and formerly known as Accipiter Holdings DAC, is headquartered in Dublin, Ireland.

3.      Defendant Accipiter Investments Aircraft 4 Limited ("Accipiter"), a company incorporated in Ireland, is headquartered in Dublin, Ireland.

4.      Defendant Vermillion Aviation (Two) Limited ("Vermillion"), a company incorporated in Ireland, is headquartered in Dublin, Ireland.

5.      Defendant Wells Fargo Trust Company, N.A. ("WFTC"), a national banking association, not in its individual capacity, but solely as Owner Trustee, is headquartered in Salt Lake City, Utah.

6.      Defendant UMB Bank, N.A. (UMB), a national banking association, not in its individual capacity, but solely as Owner Trustee, is headquartered in Salt Lake City, Utah.

7.     All the Defendants as named in paragraphs No. 2-4 shall hereunder be collectively referred to as AMCK or individually as an AMCK entity.  Defendants WFTC and UMB are nominal defendants named solely in the capacity as owner trustees.

8.     This Court has diversity jurisdiction under 28 U.S.C. § 1332, since Plaintiff and Defendants are citizens of different states and the amount in controversy is greater than $75,000.

9.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(3), because the defendants are subject to the Court's personal jurisdiction by agreement of parties.

10.     This Court has personal jurisdiction over Defendants because the parties submitted to the jurisdiction of this Court by agreement.

## INTRODUCTION

11.     Frontier is a U.S.-based passenger airline that operates commercial passenger aircraft leased from various aircraft lessors.  AMCK Holdings is an international aircraft leasing company that, through various subsidiaries and owner trustee entities, owns and leases to Frontier multiple aircraft through sale-leaseback financing arrangements.

12.     On March 15, 2020, Frontier and AMCK executed a Framework Agreement (the "March 2020 Framework Agreement").  Under the March 2020 Framework Agreement, AMCK committed to purchasing from and leasing back to Frontier six new Airbus model A320-251N aircraft that Frontier was scheduled to purchase and take possession of from Airbus.  The key economic terms of the March 2020 Framework Agreement were finalized and agreed upon in September 2019.

13.     In 2019, the commercial aircraft operating leasing market was very competitive with leasing companies aggressively pursuing airlines with top credit ratings like Frontier for the opportunity to finance newly delivered commercial aircraft.  Frontier awarded AMCK the March 2020 Framework Agreement for six aircraft because of Frontier's substantial existing leasing relationship with AMCK and the competitive economic terms AMCK offered to Frontier.

14.     Shortly after executing the March 2020 Framework Agreement, the United States aviation market began to suffer the negative impacts of the COVID-19 pandemic as airline

2

passenger travel dropped dramatically in the United States and other countries where Frontier operates. New commercial aircraft financing deals negotiated post-COVID-19 have been done on much more favorable terms to the aircraft leasing companies. This unexpected market change made the economic terms of deals finalized before the COVID-19 pandemic much less attractive to aircraft leasing companies, and on information and belief motivated AMCK's conduct giving rise to Frontier's claims in this case.

15.     Frontier is a U.S. major airline that operates North American, Central American and Caribbean routes. These routes were not affected by the COVID-19 pandemic until shortly after the March 2020 Framework Agreement was executed.

16.     On March 16, 2020, Frontier took delivery of the aircraft bearing manufacturer's serial number 10038 ("MSN 10038"), which was the first of the six aircraft covered by the 2020 Framework Agreement, and started paying rent for MSN 10038.

17.     Under the March 2020 Framework Agreement, AMCK committed to finance a second of five aircraft that Airbus was scheduled to deliver to Frontier in May 2020. However, shortly after financing MSN 10038, AMCK communicated its desire to Frontier to repudiate the March 2020 Framework Agreement because the aircraft financing market quickly turned against AMCK after the impact of the COVID-19 pandemic became apparent in the U.S. financial markets.

18.     Shortly following the delivery of MSN 10038, Frontier requested all of its aircraft lessors consider granting Frontier a voluntary one-time, short-term (three-month) aircraft rent deferral in light of the sudden and significant impact of COVID-19 on domestic U.S. air travel. Around that same time, the other U.S. major airlines were all taking similar or even more aggressive measures to defer aircraft rental costs in an effort to preserve cash.

19.     Upon receiving Frontier's request for a short-term rent deferral, in addition to conveying its desire to repudiate the March 2020 Framework Agreement, AMCK immediately demanded that the economic terms of this agreement be renegotiated to improve AMCK's profit margin. AMCK further demanded that Frontier work with Airbus to delay the deliveries of the

3

five new aircraft that AMCK was required to purchase pursuant to the March 2020 Framework Agreement. To facilitate these requested complex and multi-dimensional business and legal negotiations, AMCK granted Frontier a temporary suspension of rent payments that allowed Frontier to defer its obligation to pay monthly rent on 14 of the 15 aircraft pending the outcome of the negotiations. Specifically, AMCK agreed that Frontier could defer rent payments for these aircraft until May 15, 2020. Frontier had always made timely monthly rent payments to AMCK and was otherwise in compliance with the terms of each of the existing aircraft lease agreements with AMCK. Frontier was financially capable of making rent payments in full had there not been an agreed upon temporary rent suspension.

20. At AMCK's request, Frontier promptly engaged Airbus in very complex negotiations to postpone the scheduled deliveries of the new aircraft that were to be financed by AMCK. Frontier was ultimately successful in convincing Airbus to agree to delay the delivery of all of the remaining five aircraft subject to the March 2020 Framework Agreement as AMCK requested. Notwithstanding these successful negotiations with Airbus, shortly after Frontier informed AMCK that Frontier succeeded in obtaining the deferral of such aircraft, on May 8, 2020, AMCK unilaterally issued to Frontier a Notice of Termination of the March 2020 Framework Agreement (the "Termination Notice"). In the Termination Notice, AMCK alleged that Frontier's non-payment of rent on other aircraft not subject to the March 2020 Framework Agreement gave rise to AMCK's right to repudiate. At that time, the only aircraft delivered under the March 2020 Framework Agreement was MSN 10038. Frontier made the rent payments in full for MSN 10038 and continues to pay the rent for MSN 10038 in full. Frontier vehemently disputed AMCK's right to terminate. To date, Frontier is current on all rent payments for the 15 aircraft that AMCK owns and leases to Frontier.

21. Due to AMCK's breach of the March 2020 Framework Agreement, Frontier was forced to seek last minute alternative financing from another leasing company, which has resulted in significant financial losses to Frontier. Within the first two months of AMCK's breach, Frontier obtained financing and subsequently closed, at a significant loss, on three of the five remaining

4

aircraft that AMCK was obligated to finance under the March 2020 Framework Agreement. Only recently has Frontier obtained committed financing, at further significant loss, on the remaining two aircraft that AMCK was obligated to finance under the March 2020 Framework Agreement.

22.     As the guarantor, AMCK irrevocably and unconditionally guarantees the due and punctual payment and performance of all of the lessor's obligations under each of the aircraft lease agreements, including the payment of attorney's fees incurred by Frontier in connection with enforcing each of the Guarantees.

23.     Accipiter irrevocably and unconditionally guarantees the due and punctual payment and performance of all of the lessor's obligations under each of the aircraft lease agreements, including the payment of attorney's fees incurred by Frontier in connection with enforcing each of the Guarantees.

24.     Vermillion irrevocably and unconditionally guarantees the due and punctual payment and performance of all of the lessor's obligations under MSN 10038, including the payment of attorney's fees incurred by Frontier in connection with enforcing the Guarantee. Vermillion is a wholly owned subsidiary of AMCK.

25.     WFTC, not in its individual capacity but solely as owner trustee, is the lessor under certain relevant lease agreements as described herein.

26.     UMB, not in its individual capacity but solely as owner trustee, is the lessor under certain relevant lease agreements as described herein.

## FACTUAL ALLEGATIONS

A.     **The Sale Leaseback Structure and the Existing Relationship between Frontier and AMCK**

27.     Frontier relies on leased aircraft for 100% of its aircraft fleet. Aircraft leasing through sale and leaseback arrangements is a widely used method by airlines to finance new aircraft acquisition. In such a transaction, an airline has an existing aircraft purchase agreement with an aircraft manufacturer in which it is obligated to take delivery of the aircraft pursuant to the established delivery schedule in the aircraft purchase agreement. The airline will make pre-

delivery payments ("PDP") to the aircraft manufacturer as construction of the aircraft progresses. Then, prior to the delivery of the aircraft (often one year or six months before delivery), the airline will enter into a sale leaseback arrangement with an aircraft leasing company in which the aircraft leasing company agrees with the airline to buy the aircraft from the aircraft manufacturer at the time of delivery of the aircraft through a purchase assignment agreement (a standard form agreement drafted by the aircraft manufacturer) and to simultaneously lease the aircraft to the airline. The purchase price of the aircraft under the sale leaseback arrangement is negotiated solely between the airline and the aircraft leasing company with no involvement of the aircraft manufacturer, but the aircraft leasing company will pay the purchase price directly to the aircraft manufacturer at the time of delivery. Depending on the purchase price negotiated between the airline and the leasing company, the airline may receive a refund from the aircraft manufacturer for the PDP overpayments.

28. Until and unless the aircraft leasing company has paid the purchase price, the airline remains fully responsible to perform its obligation to purchase the aircraft under its purchase agreement with the aircraft manufacturer. If an aircraft leasing company fails to perform under the sale and leaseback structure as agreed, the airline will be required to use its own funds to purchase the aircraft, or risk defaulting on its aircraft purchase agreement with the aircraft manufacturer.

29. Frontier is a party to an A320 Family Aircraft Purchase Agreement dated as of September 30, 2011 (the "Airbus Purchase Agreement") executed with Airbus S.A.S. (Airbus S.A.S. or Airbus Americas, Inc., as applicable, is hereinafter referred to as "Airbus"). Frontier is obligated to purchase and take delivery of new aircraft under this Airbus Purchase Agreement. On or about June 13, 2019, Frontier sent out a request for sale lease-back proposals to select aircraft leasing companies. AMCK responded with a proposal on June 28, 2019 and expressed an interest in continuing to grow its fleet size with Frontier. After rounds of negotiations, Frontier and AMCK executed a Letter of Intent (the "LOI") on September 10, 2019 with mutually agreed material

6

business terms for six of the 2020 aircraft, the expected timeframe of deliveries, aircraft purchase price, rent formula, and return compensation.

30.     Prior to the execution of the September 10, 2019 LOI, AMCK, through similar sale and lease back arrangements, already owned and leased to Frontier 14 aircraft, making AMCK the largest lessor of Frontier.  As a relative newcomer to the aircraft leasing industry, AMCK only started financing Frontier's fleet in 2016.  Since the beginning of their business relationship, Frontier always timely performed its contractual duties, including the duties to pay rent on time.  AMCK also finances aircraft for other affiliated airlines of Frontier located in other countries.

31.     In the September 10, 2019 LOI, Frontier and AMCK agreed to rely on the pre-existing legal document forms to expedite the negotiation process.  This included Frontier and AMCK agreeing to execute a framework agreement with an agreed upon form of lease agreement prior to the delivery of the first of the six aircraft.  Frontier and AMCK also agreed that at the time of each aircraft delivery, they would execute the agreed form of aircraft lease agreement specific to the aircraft.  Upon the execution of the March 2020 Framework Agreement, the parties were both fully committed to all the terms and conditions of the sale and leaseback of six aircraft scheduled to be delivered by Airbus in 2020.

32.     As a result of the large existing and growing relationship, AMCK was kept apprised of Frontier's up-to-date financial condition and was and is fully aware that Frontier was and is financially strong despite the ongoing global COVID-19 pandemic.

**B.     The March 2020 Framework Agreement and AMCK's Obligations to Perform Thereunder**

33.     Consistent with the terms of the September 10, 2019 LOI, Frontier and AMCK executed the March 2020 Framework Agreement on March 15, 2020.  The March 2020 Framework Agreement obligated AMCK to purchase six aircraft from Airbus through a purchase assignment agreement and to lease the aircraft back to Frontier.  Specifically, under the March 2020 Framework Agreement, AMCK undertakes to:

(a) cause the applicable Lessor (acting in its capacity as owner trustee under the Trust Agreement) to execute and deliver the Purchase Agreement Assignment in

7

respect of each Aircraft and purchase such Aircraft from the Manufacturer; (b) cause the applicable Lessor to execute and deliver the Lease Agreement and the other Definitive Documents in respect of each Aircraft and the other Lessee's Documents (as defined in each Lease Agreement) to which the Lessor is a party; (c) cause the applicable Lessor to lease each Aircraft to Frontier pursuant to the terms of the applicable Lease Agreement; and (d) execute and deliver, or cause the applicable Lessor Guarantor (if not AMCK [Holdings]) to execute and deliver, the Lessor Guarantee in respect of each Aircraft[.]

AMCK is also obligated itself to:

cause the relevant Lessor to make a payment to the Manufacturer on the relevant Delivery Date for each Aircraft in the amount of the Purchase Price for such Aircraft. Such payment shall be paid to the Manufacturer in satisfaction of the relevant Lessor's obligation under the Purchase Agreement Assignment for such Aircraft. Immediately upon payment of the relevant Purchase Price to the Manufacturer[.]

The specific aircraft delivery schedule is established by Airbus per the terms of the Airbus Purchase Agreement between Airbus and Frontier.

34.     Pursuant to the terms of the March 2020 Framework Agreement, AMCK was obligated to take delivery from Airbus of six new aircraft that Airbus was scheduled to deliver in March, May, June, and August 2020.

35.     On March 16, 2020, AMCK and Frontier took delivery of MSN 10038, the first of the six aircraft covered under the March 2020 Framework Agreement. The lease is guaranteed by an AMCK entity.  The next two aircraft were scheduled to be delivered in May and June per the original Airbus delivery schedule.

36.     AMCK had no right to (i) repudiate, amend, or modify the March 2020 Framework Agreement without Frontier's written consent, (ii) require Frontier to postpone delivery of any scheduled new aircraft deliveries, or (iii) terminate the March 2020 Framework Agreement, unless there was a Framework Agreement Event of Default.  At the time when AMCK demanded that Frontier delay taking deliveries from Airbus and renegotiate the economic terms of the March 2020 Framework Agreement, Frontier was in full compliance of each of the aircraft lease agreements it has with AMCK and had always been timely in making rent payments on all the AMCK aircraft.

C.    **The COVID-19 Pandemic and its Profound Impact on the Commercial Aviation Industry**

37.    The COVID-19 pandemic began to impact the aviation industry in some parts of the world as early as January 2020.  However, Frontier, as an airline that operates mostly domestic U.S. routes, was largely unaffected until after the sudden and large-scale outbreaks within the U.S. that led to stay-at-home orders in many states.  Until such time, Frontier had enjoyed continuous and steady growth.  Even with the on-going slowdown in air travel, Frontier has managed to maintain a strong cash position and has effectively managed its costs.  To date, Frontier continues to take new aircraft deliveries from Airbus to expand its fleet.

38.    On information and belief, with the dramatic slowdown in air travel, U.S. airlines were forced to look for ways to preserve cash.  Even the airlines with strongest balance sheets started to request rent accommodations, such as rent deferrals, from aircraft leasing companies.  On information and belief, some U.S. major airlines have requested from their lessors a complete rent abatement instead of a short-term deferral and repayment arrangement.

39.    On information and belief, aircraft leasing companies began engaging in rent accommodation negotiations with different airlines not long after the COVID-19 outbreak started.  On information and belief, both airlines and the aircraft leasing companies agree and understand that the airlines have no contractual right to seek such accommodations as the aircraft lease agreements are usually "hell or high water" leases.  Nevertheless, given the nature and scale of the COVID-19 pandemic crisis and the general industry practice in light of unexpected disasters (such as 9/11, the Boeing 737 MAX grounding, etc.), aircraft leasing companies are generally amenable to airlines' requests in order to preserve the long-term economic strength of the airlines and industry relationships that normally take years to build.

D.    **Frontier's Request For Rent Accommodation and AMCK's Anticipatory Repudiation of the March 2020 Framework Agreement**

40.    When the COVID-19 took a sudden turn for the worse within the U.S. around the end of the first quarter of 2020, Frontier acted quickly to implement a series of measures to conserve cash while maintaining overall operational efficiency and financial stability.  Frontier

requested all of its lessors to consider offering a one-time 3-month rent deferral. In exchange, Frontier would pay back the deferred amounts with interest and would designate the lessors who agreed to offer accommodations as Frontier's "strategic partners." At the time when Frontier made this request, Frontier was (and it continues to be) current on all of its rent payment obligations. Frontier's request made it clear that the lessors' participation was entirely voluntary and that Frontier had no intention of withholding its own performance or rescinding any of the existing aircraft lease agreements.

41.    Upon receiving Frontier's request, AMCK immediately advised Frontier that, in violation of the March 2020 Framework Agreement, it would not take delivery of and finance the remaining five new aircraft on the timeline scheduled by Airbus. AMCK also asked that Frontier seek a deferral from Airbus of these new aircraft deliveries by six months in exchange for AMCK's consideration of Frontier's request for a one-time three month rent deferral. AMCK had no contractual right to repudiate or to unilaterally require Frontier to modify the March 2020 Framework Agreement.

42.    During various phone calls regarding rent accommodation and pandemic response, AMCK attempted to justify its intent to repudiate by stating that AMCK's shareholder did not intend to take deliveries of new aircraft only to have them parked in storage even if Frontier continues to pay rent as required under each of the aircraft lease agreements.

43.    AMCK has no legal right under its agreed form of aircraft lease agreement with Frontier to dictate how Frontier uses its aircraft or to restrict Frontier's right to make operational decisions regarding its aircraft. Under each of the aircraft lease agreements, as long as Frontier pays the rent and complies with the lease terms, Frontier is entitled to quiet enjoyment of the aircraft.

44.    Even though AMCK had no right to make such demand, AMCK also demanded that Frontier agree that the new aircraft to be financed under the March 2020 Framework Agreement be put into revenue service and not parked while any reduced flight activity might be in force.

10

45.     Despite Frontier's proven financial stability and assurances of its plan to fully utilize the new aircraft, AMCK continued to insist and represent that it would not perform contractual obligations under the March 2020 Framework Agreement.

46.     AMCK further demanded that the new aircraft deliveries be deferred as the condition for AMCK to continue performing under the March 2020 Framework Agreement and the first step of any rent accommodation related negotiations.  In particular, AMCK represented to Frontier that 1) any discussions of rent accommodation needed to be conditioned on a six-month deferral on new aircraft deliveries; and 2) it would not take delivery of the remaining five aircraft under the March 2020 Framework Agreement unless Frontier agreed to significantly revise the terms including deferring the new aircraft delivery schedules.

47.     On April 3, 2020, AMCK informed Frontier in writing that AMCK would grant a three-month rent deferral on 14 of the 15 aircraft "strictly only on the basis that [AMCK] suspend the [sale leaseback] for six months[.]"  Frontier, while requesting AMCK retract its anticipatory repudiation of the March 2020 Framework Agreement, confirmed that it had the financial resources to continue paying rent on the all of the aircraft covered under the March 2020 Framework Agreement.

48.     Following the April 3, 2020 email from AMCK, AMCK then, via phone calls and emails (including but not limited to emails sent on April 6, 2020, April 13, 2020, and April 30, 2020), further confirmed its intent to not perform the March 2020 Framework Agreement unless Frontier agrees to amend both the March 2020 Framework Agreement and the existing leases, including deferring the new deliveries by six months.

49.     The timing of AMCK's April 2020 demand and threat left Frontier with no choice but to immediately negotiate with Airbus to defer the deliveries of the new aircraft.  When AMCK announced in April 2020 its intent to not perform under the March 2020 Framework Agreement, it was impossible for Frontier to find and negotiate alternative financing for a new aircraft delivery in May 2020.  While Frontier could have chosen to simply hold AMCK responsible for its breach of the March 2020 Framework Agreement, Frontier, without waiving any rights or remedies,

believed it would be in the parties' best interest to avoid such a situation in light of this unprecedented global crisis. Frontier acquiesced in AMCK's demand to negotiate the new aircraft delivery deferrals with Airbus.

50.     AMCK was fully aware that deferring the delivery of the new aircraft required Frontier to negotiate with Airbus and that Airbus was under no contractual obligation to grant any such request. AMCK and Frontier further both understood that given that the first few delivery dates were approximately one month away, Airbus would not be motivated to delay these deliveries as assembly of the aircraft in question was almost fully completed and Airbus would only incur additional costs if the deliveries were delayed. AMCK was further aware that negotiations with Airbus would take time to accomplish.

51.     Based on AMCK's demands and representations and in reliance on AMCK's April 3, 2020 representations, Frontier was led to believe that AMCK would offer rent deferrals and perform its obligations under the March 2020 Framework Agreement as long as Frontier obtained the new aircraft delivery deferrals from Airbus. Frontier took immediate action and started to negotiate with Airbus for aircraft delivery deferrals on April 4, 2020 – one day after AMCK made its written demand. On information and belief, AMCK knew that by refusing to honor its obligations under the March 2020 Framework Agreement unless Frontier obtained an aircraft delivery deferral, Frontier was exposed to the major risk of defaulting on its Airbus Purchase Agreement.

52.     Frontier diverted significant resources to the deferral negotiations with Airbus and engaged in complex efforts to negotiate and draft an amendment to the Airbus Purchase Agreement. Frontier regularly kept AMCK apprised of the status of Frontier's negotiations with Airbus.

53.     As a result of AMCK's awareness that the Airbus negotiations would take time, AMCK communicated to Frontier that its rent obligations on the 14 of the 15 aircraft leased from AMCK would be temporarily suspended to accommodate Frontier's negotiations with Airbus.

Such temporary rent suspension for the duration of the parties' negotiations was a common practice and course of dealing during this crisis.

**E. AMCK and Frontier's Agreement to Temporarily Suspend Frontier's Obligation to Pay Rent**

54. On April 6, 2020, the day when the first of Frontier's April 2020 rent payments would have become due, Paul Sheridan of AMCK sent an email to Frontier confirming that because it would take time for Frontier to reach an agreement with Airbus for the deferral of the new aircraft deliveries, AMCK "won't take any actions or call any defaults linked to non-payment of rents on any aircraft where the rent is due from today to 21 April (i.e., for the next 10 working days)." It was the parties' clear understanding that this first temporary rent suspension was offered to cover the on-going Frontier/Airbus negotiations and that the 10-working-day timeframe was only a suggested date because neither party could control the pace at which Airbus would negotiate.

55. Both parties also understood that during this time of crisis, Airbus' response time would be adversely affected. The negotiation completion date was impossible to predict given the fluid circumstances. As a result, and knowing that negotiations were on-going, AMCK did not request Frontier to make any rent payments on April 21, 2020.

56. On April 9, 2020, while Frontier was still working with Airbus on the deferral of deliveries, AMCK circulated to Frontier its draft deferral agreement which set forth the terms of a three-month deferral starting in April for 14 of the 15 aircraft on lease to Frontier. At the same time, AMCK, on various occasions, represented that Frontier did not need to make rent payments on 14 of the 15 aircraft while the parties were working out a solution that would defer the rent payments and would enable AMCK to retract its anticipatory repudiation of the March 2020 Framework Agreement.

57. Relying on AMCK's representations and express waiver, Frontier suspended rent payments for the 14 AMCK aircraft while it continued its aircraft delivery deferral negotiations with Airbus and rent deferral agreement with AMCK. Frontier continued making rent payments

for MSN 10038 as the parties expressly agreed. It is a common industry practice and course of dealing for aircraft lessors to temporarily suspend rent payments while the parties negotiate to reach a rent deferral agreement.

58. On April 30, 2020, following conversations with Frontier, Mr. Sheridan again emailed Frontier making clear that the rent deferral was still in place and would continue until May 15, 2020. Indeed, Mr. Sheridan expressed his appreciation to Frontier for its efforts in working with Airbus to push back the aircraft delivery schedule.

59. At the same time that it was agreeing to the rent deferral, AMCK reiterated its position that it would not perform under the March 2020 Framework Agreement unless Frontier agreed to amend the March 2020 Framework Agreement and the existing aircraft lease agreements. The amendments AMCK proposed were significant as they required Frontier to agree to, among other things, (i) extend the lease term by 4 years relating to 12 of the existing aircraft under existing leases, and (ii) remove Frontier's early termination option on all six aircraft covered under the March 2020 Framework Agreement.

60. On May 5, 2020, Frontier and Airbus finally reached an agreement to defer upcoming deliveries in which Airbus agreed to defer the May and June deliveries to July and the August deliveries to February 2021. AMCK was so informed. With the delivery dates now confirmed, AMCK still refused to retract its anticipatory repudiation and AMCK continued to push for additional, more favorable financial terms for itself, which would require significant modification to the March 2020 Framework Agreement and the existing aircraft lease agreements, including aircraft lease agreements not covered under the March 2020 Framework Agreement.

61. Between May 5, 2020 and May 8, 2020, AMCK and Frontier continued to negotiate while Frontier also worked diligently to persuade AMCK to reconsider its repudiation of the March 2020 Framework Agreement. Although AMCK never agreed to retract its repudiation of the March 2020 Framework Agreement, AMCK did lead Frontier to believe that the parties would come to a business solution that would allow AMCK to eventually agree to resume performing under the March 2020 Framework Agreement.

62.     During the entire time AMCK allowed Frontier to temporarily suspend rent payments, AMCK never asserted or implied that it would revoke the temporary rent suspension that was set to expire on May 15, 2020, nor did it ever request that Frontier pay any rent.  As a result of the agreement between the parties, Frontier had no obligation to make rent payments prior to May 15, 2020.  In addition, it is evident from the parties course of dealing, as well as the fact that Frontier had secured for AMCK a material concession from Airbus, that Frontier had until May 15, 2020 to make the rent payments that had been suspended.  Furthermore, based on the parties' course of dealing, AMCK led Frontier to believe that AMCK would retract its repudiation of the March 2020 Framework Agreement.

**F.     AMCK's Unilateral Termination of the March 2020 Framework Agreement.**

63.     At 6:41 PM (MT) on May 8, 2020, without any warning, AMCK sent an email with the title "AMCK – notice" with an attachment entitled "Notice of Termination" (the "Termination Notice") to Frontier declaring that the March 2020 Framework Agreement was terminated due to the occurrence of a "Framework Event of Default."

64.     AMCK wrongfully asserted on behalf of various AMCK entity lessors that Frontier was in default by not making rent payments under the 14 aircraft lease agreements that AMCK had agreed were suspended until May 15, 2020.  None of the 14 aircraft lease agreements were subject to the March 2020 Framework Agreement.  AMCK asserted that the non-payments under the 14 aircraft lease agreements were an Event of Default under each agreement, and in turn constituted an Event of Default under the cross-default provision of the Aircraft Lease Agreement for MSN 10038.

65.     The MSN 10038 aircraft is the only aircraft subject to the March 2020 Framework Agreement.  Notwithstanding AMCK's orchestration of the alleged cross-defaults, Frontier was and is in compliance with the terms of the Lease Agreement for MSN 10038, including having made full and timely payments to date.

66.     Frontier did not default under the 14 aircraft lease agreements.  AMCK's assertion of non-payments as an Event of Default under those lease agreements was contrary to AMCK's agreement to temporarily suspend rent payments on which Frontier relied.

67.     The Termination Notice was the latest express announcement from AMCK about its intent to repudiate the March 2020 Framework Agreement following multiple emails and verbal representations that AMCK made since April 3, 2020.  Frontier immediately responded and demanded that AMCK withdraw its wrongfully issued Termination Notice.  AMCK refused.

68.     On May 15, 2020, the last day of the temporary rent suspension granted by AMCK, Frontier made a one-time catch up payment on all rent due on the AMCK aircraft subject to the temporary rent suspension.  Frontier continues to make full rent payments on all AMCK aircraft.

## G.     AMCK Intentionally Orchestrated a "Framework Event of Default" to Justify Its Anticipatory Repudiation

69.     AMCK's conduct was deliberate and intentional with the pre-conceived goal of evading its own obligations under the March 2020 Framework Agreement.

70.     On information and belief, AMCK knew as soon as it took delivery of MSN 10038, the first of the six aircraft, that it was going to repudiate the March 2020 Framework Agreement. This was to avoid the economic terms it perceived were not as profitable as anticipated.

71.     When Frontier requested its lessors to consider on a strictly voluntary basis offering a one-time, three-month rent deferral on the leased aircraft, AMCK saw an opportunity to create a scheme to deceive Frontier into what AMCK would contend was a technical "Event of Default" that it would seek to use to justify AMCK's anticipatory repudiation and to cover up its material breach.

72.     AMCK first announced that it would repudiate the March 2020 Framework Agreement unless Frontier could defer the new delivery schedules by six months.  Once Frontier started acting on AMCK's demand by negotiating with Airbus for new aircraft delivery deferrals at great expense, AMCK offered and represented that there would be temporary suspensions of

16

rent payments on 14 aircraft subject to earlier framework agreements.  Frontier accepted and relied on AMCK's agreement to temporarily suspend Frontier's rent obligations.

73.    After Frontier temporarily suspended rent payments, AMCK continued to keep Frontier engaged in further business negotiations on rent deferrals and other business matters. AMCK deliberately led Frontier to believe that AMCK was interested in offering Frontier a three-month rent deferral and that AMCK would eventually retract its repudiation of the March 2020 Framework Agreement.

74.    After Frontier suspended its rent payments on the 14 aircraft in reliance on AMCK's express promises and conduct, on May 8, 2020 and without notice or warning, AMCK purported to terminate the March 2020 Framework Agreement citing Frontier's alleged failure to pay rent. By doing so, AMCK used an alleged technical default that it engineered to justify its own prior anticipatory repudiation.

**H.    Frontier Has Suffered Damages Due to AMCK's Breach and Fraudulent Conduct**

75.    Because of AMCK's repudiation of the March 2020 Framework Agreement, Frontier was forced to seek alternative financing in less than two months before the scheduled aircraft delivery of multiple new aircraft.

76.    Frontier managed to find a new lessor to finance the delivery of the three aircraft in the month of July causing major financial damages to Frontier.

77.    To date, Frontier has received committed financing from replacement aircraft lessors for the remaining two aircraft.  The financing arrangements with the replacement lessors were also unavoidably on terms resulting in Frontier suffering major financial damages compared to the deal terms under the March 2020 Framework Agreement.

78.    Frontier incurred considerable expenses, including legal fees, in enforcing its rights under each of the aircraft lease agreements in light of the AMCK's wrongful conduct.

### FIRST CLAIM FOR RELIEF
**(Breach of Contract - Anticipatory Repudiation of the March 2020 Framework Agreement)**

79.    Frontier incorporates the allegations in paragraphs 11-78, as if fully set forth herein.

17

80.     Under the March 2020 Framework Agreement, AMCK is obligated to purchase a total of six aircraft scheduled to be delivered in 2020 and lease them back to Frontier. In material breach of its obligations, AMCK rescinded the March 2020 Framework Agreement after taking delivery of only one aircraft.

81.     In April 2020, AMCK refused to perform under the March 2020 Framework Agreement when it was scheduled to take delivery of the remaining five aircraft with the next aircraft initially scheduled to be delivered in May 2020. The March 2020 Framework Agreement covers six aircraft and AMCK's refusal to take deliveries of and pay for all five aircraft substantially impaired the value of the contract to Frontier as it left a cash shortfall of over $200 million immediately before the deliveries.

82.     AMCK repeatedly expressed, both in writing and verbally, its clear intent to not perform under the March 2020 Framework Agreement and sent its last repudiation notice on May 8, 2020 using a pre-textual rationale.

83.     Frontier, having requested AMCK to retract the anticipatory breach, chose to await AMCK's performance upon receiving AMCK's notification of anticipatory repudiation. Without obligation, Frontier agreed to make accommodations for AMCK, including obtaining new aircraft delivery deferrals from Airbus in the hope that AMCK would eventually retract its anticipatory repudiation for the parties' mutual benefit.

84.     It was reasonably foreseeable that AMCK's contract repudiation would result in significant damages to Frontier. As a result of AMCK's contract repudiation, Frontier has been directly damaged in an amount of not less than $53,000,000.

### SECOND CLAIM FOR RELIEF

**(Breach of Contract - Breach of the March 2020 Framework Agreement)**

85.     Frontier incorporates the allegations in paragraphs 11-84, as if fully set forth herein.

86.     When AMCK formally announced its repudiation of the March 2020 Framework Agreement AMCK asserted that it was entitled to terminate the March 2020 Framework

Agreement based on a Framework Event of Default, namely an Event of Default under the Aircraft Lease Agreement for MSN 10038 due to non-payment of rent.

87.     Frontier has and continues to make rent payments in accordance with the terms of Aircraft Lease Agreement for MSN 10038.  To declare an Event of Default, AMCK had to contrive an Event of Default under other aircraft lease agreements in effect between Frontier and AMCK.

88.     There were no Events of Default by Frontier under the other aircraft lease agreements between Frontier and AMCK.  Frontier and AMCK had valid temporary rent payment suspensions in place that were established expressly in writing and further affirmed by the parties' conduct and course of dealing.  Frontier suspended rent payments based on AMCK's express permission and paid the deferred amounts on May 15, 2020, as agreed by the parties.  Frontier has continued to make timely payments to AMCK since May 15, 2020, and has a history of making timely rent payments to AMCK.

89.     AMCK breached its contractual obligations when it terminated the March 2020 Framework Agreement when there was no Framework Event of Default.

90.     AMCK's breach of the March 2020 Framework Agreement directly caused reasonably foreseeable damages to Frontier of not less than $53,000,000.

## THIRD CLAIM FOR RELIEF

### (Breach of Contract - Breach of the Aircraft Lease Agreements)

91.     Frontier incorporates the allegations in paragraphs 11-90, as if fully set forth herein.

92.     AMCK, through various AMCK entities, has executed 15 valid aircraft lease agreements for each of the 15 aircraft that Frontier leases from it.

93.     Each of the aircraft lease agreements are in full force.  AMCK authorized, with the exception of MSN 10038, the temporary suspension of rent payments for 14 of the 15 aircraft.

94.     AMCK has received all rent payments from Frontier pursuant to the terms of the Aircraft Lease Agreement for MSN 10038.  AMCK thus has no right to declare an Event of Default under the Aircraft Lease Agreement for MSN 10038.

95.     By wrongfully declaring Events of Default that resulted in AMCK improperly asserting a cross-default under the lease agreement for MSN 10038, each of the 14 AMCK affiliated lessors breached their respective lease agreements.  The AMCK lessor of MSN 10038 also breached that lease agreement by wrongfully declaring a cross-default.

96.     Various AMCK entities have provided Frontier an irrevocable and unconditional guarantee with respect to the performance of each of the 15 lease agreements that were breached as the result of an improper assertion of an Event of Default.  Each guarantor is obligated to pay or perform in case the lessor of the guaranteed aircraft lease agreement fails to pay or perform.  As a result, each guarantor is responsible for damages resulting from the lessors' breaches of the lease agreements, including those reasonably foreseeable damages incurred by Frontier of not less than $53,000,000, arising from AMCK's wrongful termination of the March 2020 Framework Agreement.  Additionally, each guarantor is responsible for Frontier's attorney's fees incurred in connection with enforcing its rights under the Aircraft Lease Agreements, including the Aircraft Lease Agreement for MSN 10038.

97.     Defendants AMCK Holdings, Vermillion, and Accipter are guarantors with respect to the lease agreements, under which they are responsible for all damages incurred by Frontier as a result of the lessors' breaches and all reasonable fees and expenses, including attorney's fees incurred by Frontier in connection with the enforcement of its rights.

## FOURTH CLAIM FOR RELIEF

### (Breach of Implied Duty of Good Faith and Fair Dealing)

98.     Frontier incorporates the allegations of paragraphs 11-97, as if fully set forth herein.

99.     Implied in every contract governed by New York law is the duty of good faith and fair dealing.  AMCK breached the duty of good faith and fair dealing by acting dishonestly, and failing to observe reasonable commercial standards of fair dealing as more fully described below.

100.     The aviation industry is one of the hardest hit industries by the global COVID-19 pandemic.  Both airlines and lessors are working hard on absorbing the negative impacts of the pandemic.  Instead of working together with its long-term partner, AMCK chose to use this

unprecedented crisis to threaten the repudiation of its own existing contractual obligations to extort concessions from Frontier.

101.   AMCK realized no later than around March 2020 that the economic terms in the March 2020 Framework Agreement were not as favorable as it had anticipated and contrived a scheme to rescind it.  As soon as Frontier asked its lessors to consider working with it on a short-term rent deferral arrangement, AMCK saw this as its opportunity to disavow its own contractual obligations.  AMCK first announced that it was not going to perform and then pressed Frontier to consider adopting substantial modifications to the existing March 2020 Framework Agreement, including requesting from Airbus the delay of new aircraft deliveries.  AMCK never retracted its repudiation despite Frontier's diligent efforts to obtain concessions, including aircraft delivery deferrals.  AMCK instead used its repudiation as leverage to press Frontier to agree to new extremely one-sided terms.

102.   Further, AMCK then agreed that Frontier could suspend rent payments on the aircraft not covered under the March 2020 Framework Agreement and then attempted to use that non-payment as a basis to try to improperly terminate the March 2020 Framework Agreement.

103.   AMCK's conduct amounts to a breach of the duty of good faith and fair dealing and as a result, Frontier has been directly damaged in an amount not less than $53,000,000.

**FIFTH CLAIM FOR RELIEF**

**(Breach of the Covenant of Quiet Enjoyment)**

104.   Frontier incorporates the allegations of paragraphs 11-103, as if fully set forth herein.

105.   Each of the lessor Defendants of the 15 aircraft granted Frontier the right to quietly enjoy and possess each of the aircraft pursuant to the terms of each of the aircraft leases agreements.

106.   By wrongfully claiming an Event of Default under each of the aircraft lease agreements and asserting default remedies under each of the aircraft lease agreements, the lessor

defendants improperly interfered with Frontier's use of the aircraft by disturbing Frontier's fleet plans.

107.    The unexpected termination of the March 2020 Framework Agreement within less than two months before the next scheduled new aircraft delivery date materially compromised Frontier's fleet plans and negatively affected its ability to effectively utilize its aircraft fleet, including the existing 15 AMCK aircraft.

108.    As a reasonably foreseeable result of the lessor defendants' interference with Frontier's use of the aircraft, Frontier has been damaged in the amount of not less than $53,000,000 securing alternative sale leaseback arrangements to acquire aircraft necessary to meet its operational needs.

## SIXTH CLAIM FOR RELIEF

### (Promissory Estoppel)

109.    Frontier incorporates the allegations in paragraphs 11-108, as if fully set forth herein.

110.    AMCK made clear and unambiguous promises that it would not require Frontier to make rent payments before May 15, 2020 in light of Frontier's on-going new aircraft delivery deferral negotiations with Airbus and in light of the parties' on-going negotiations.

111.    Because of AMCK's promises to suspend rent payments in exchange for Frontier negotiating a delivery deferral with Airbus and to work with Frontier, Frontier temporarily withheld rent payments and at the same time incurred considerable expenses to negotiate with Airbus so that the upcoming deliveries of new aircraft could be delayed.  Frontier managed to obtain Airbus' consent to delay the deliveries within an extremely short timeline.

112.    In reliance on AMCK's promises and representations, Frontier changed positions to its detriment and suspended rent payments that it could have made, but for AMCK's promises and representations.  Accordingly, AMCK is estopped from asserting that Frontier was in breach of the March 2020 Framework agreement.

113.    As a result of AMCK's wrongful conduct, Frontier has suffered reasonably foreseeable damages of not less than $53,000,000 resulting from AMCK's wrongful termination of the March 2020 Framework Agreement based on Frontier's excused delay in making rent payments on various aircraft.

**SEVENTH CLAIM FOR RELIEF**

**(Fraud)**

114.    Frontier incorporates the allegations of paragraphs 11-113, as if fully set forth herein.

115.    AMCK devised a scheme to repudiate the March 2020 Framework Agreement soon after executing it without any legal basis to do so.  Such scheme allowed AMCK to cover up its own anticipatory breach.  At all times, AMCK had actual knowledge that Frontier was and is financially capable of making monthly rent payment on each of the aircraft under lease back agreements notwithstanding the pandemic.  On information and belief, AMCK concluded that it did not have a contractual right to terminate or to repudiate the March 2020 Framework Agreement unless it could lead Frontier into taking affirmative actions that would later be used as a pretext to justify AMCK's repudiation.

116.    As a result, AMCK used Frontier's request for short-term rent relief as its opportunity to develop a scheme that would create a technical default that Frontier would otherwise have never committed.

117.    To accomplish this scheme, (i) AMCK represented that it would consider retracting its repudiation if Frontier could defer new aircraft deliveries and that Frontier would receive temporary rent deferrals on 14 of 15 aircraft; (ii) AMCK knew that the representations were false at the time made because it had no intention to honor the temporary rent deferrals as evidenced by its conduct repudiating the March 2020 Framework Agreement and subsequent actions; (iii) Frontier relied on AMCK's temporary rent suspension representations by immediately engaging in aircraft delivery deferral negotiations with Airbus and thereby risking a potential significant default on the Aircraft Contract with Airbus; (iv) Frontier had a right to rely on AMCK's

representations; and (v) AMCK's used false representations to induce Frontier to negotiate and ultimately conclude a new aircraft delivery deferral agreement with Airbus for AMCK's benefit, as well as to induce Frontier to forgo making timely aircraft lease payments that AMCK knew Frontier was capable of making.

118. Frontier suffered significant damages as a result of AMCK's fraudulent conduct. Frontier incurred considerable expenses to negotiate with Airbus following AMCK's March 2020 Framework Agreement repudiation and demand that aircraft deliveries be deferred. Following Frontier's change of position and reliance on AMCK's statements and conduct regarding a temporary rent suspension, AMCK contrived an Event of Default to wrongfully and without notice repudiate the March 2020 Framework Agreement. This conduct left Frontier with no financing when deliveries of the three aircraft were scheduled less than two months away.

119. As a result of AMCK's fraudulent conduct, Frontier was forced to find alternative financing arrangement with a new lessor and Frontier suffered ascertainable damages in the amount of not less than $53,000,000 in lower financial amounts in connection with the sale of the aircraft, significantly higher leasing costs and rent payments on all five aircraft, additional attorney's fees and costs from negotiations and the preparation of sale and leaseback documentation with the replacement lessors, loss of use of the aircraft that were delivered later due to AMCK's breach, and loss of business reputation with Airbus as it was not able to commit to taking delivery until only two weeks before the scheduled delivery dates for three of the five aircraft.

120. AMCK's conduct was willful, wanton and in violation of societal norms such that Frontier is entitled to punitive damages in an amount that will be proven at trial.

WHEREFORE, Frontier prays for judgment in its favor against defendants AMCK and AMCK entities as follows:

1. On its First through Sixth claims for relief for an amount not less than $53,000,000, prejudgment and post judgment interest, and reasonable attorney's fees and costs;

2.    On its Seventh claim for relief an amount not less than $53,000,000, punitive damages in an amount to be proven at trial, and prejudgment and post judgment interest and costs; and

3.    For such other relief as the court deems reasonable and just.

Dated:  November 18, 2020

Respectfully submitted,

**BINDER & SCHWARTZ LLP**

By:  /s/ Neil S. Binder
     Neil S. Binder
     366 Madison Avenue, 6th Floor
     New York, New York 10017
     Telephone No.: (212) 510-7008
     Facsimile No.:  (212) 510-7299
     Email: nbinder@binderschwartz.com

     -and-

**LANE POWELL PC**
Peter D. Hawkes
David G. Hosenpud *(pro hac vice forthcoming)*
601 S.W. Second Avenue
Suite 2100
Portland, Oregon 97204
Telephone: (503) 778-2100
Email: hawkesp@lanepowell.com
Email: hosenpudd@lanepowell.com

*Attorneys for Plaintiff Frontier Airlines, Inc.*