**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| FRONTIER AIRLINES, INC.,<br><br>        Plaintiff,<br><br>v.<br><br>AMCK AVIATION HOLDINGS IRELAND LIMITED, ACCIPITER INVESTMENT 4 LIMITED, VERMILLION AVIATION (TWO) LIMITED, ACCIPITER HOLDINGS DAC, CARLYLE AVIATION MANAGEMENT LIMITED, MAVERICK AVIATION HOLDINGS LIMITED, MANCHESTER AVIATION FINANCE S.A.R.L., VERMILLION AVIATION HOLDINGS LIMITED, WELLS FARGO TRUST COMPANY, N.A., solely in its capacity as OWNER TRUSTEE, and UMB BANK, N.A., solely in its capacity as OWNER TRUSTEE,<br><br>        Defendants. | Case No.: 1:22-cv-02943 (PAE) |

**DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION BY ORDER TO SHOW CAUSE FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

## **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ...................................................................................................1
BACKGROUND .............................................................................................................................1
    I.    THE LEASES........................................................................................................1
    II.    FRONTIER DEFAULTS UNDER THE LEASES .......................................................4
ARGUMENT ...................................................................................................................................9
    I.    LEGAL STANDARD................................................................................................9
    II.    PLAINTIFF HAS NOT DEMONSTRATED A LIKELIHOOD OF SUCCESS ON THE MERITS ....................................................................................................................10
    III.    PLAINTIFF HAS NOT DEMONSTRATED IMMINENT IRREPARABLE HARM IF THE SOUGHT RELIEF IS DENIED ....................................................................12
    IV.    THE BALANCE OF EQUITIES AND HARDSHIPS DO NOT WEIGH IN FRONTIER'S FAVOR ..............................................................................................14
    V.    ANY INJUNCTION SHOULD BE NARROWLY TAILORED ..............................15
    VI.    FRONTIER MUST POST A BOND........................................................................15
CONCLUSION................................................................................................................................16

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Carlyle Aviation Mgmt. Ltd., et al v. Frontier Airlines, Inc.*,
   1:23-cv-04774 (June 6, 2021), ECF No. 1 ................................................................................9

*Expedia, Inc. v. United Airlines, Inc.*,
   No. 19-cv-1066 (PKC), 2019 WL 1499269 (S.D.N.Y. Apr. 5, 2019) ....................................13

*Faiveley Transp. Malmo AB v. Wabtec Corp.*,
   559 F.3d 110 (2d Cir. 2009) ....................................................................................................12

*Fed. Ins. Co. v. Metro. Transp. Auth.*,
   No. 17-cv-3425 (JFK), 2017 WL 2929471 (S.D.N.Y. July 10, 2017) ...............................9, 13

*JN Contemporary Art LLC v. Phillips Auctioneers LLC*,
   472 F. Supp. 3d 88 (S.D.N.Y. 2020) ................................................................................ 12, 13

*Johnson Controls, Inc. v. A.P.T. Critical Sys., Inc.*,
   323 F. Supp. 2d 525 (S.D.N.Y. 2004) .....................................................................................13

*Register.com, Inc. v. Verio, Inc.*,
   356 F.3d 393 (2d Cir. 2004) ....................................................................................................13

*Rex Medical L.P. v. Angiotech Pharmaceuticals (US), Inc.*,
   754 F. Supp. 2d 616 (S.D.N.Y. 2010) ............................................................................... 13, 14

*Robbins v. Comprehensive Medical Mgmt., Inc.*,
   No. 00cv57, 2000 WL 502693 (D. Conn. Mar. 21, 2000) ......................................................10

*Shaw Cablesystems G.P. v. TV Guide Int'l, Inc.*,
   19-cv-3698, 2019 WL 13193712 (S.D.N.Y. May 10, 2019)............................................ 10, 12

*White Plains Towing Corp. v. Polizzi Towing Corp.*,
   No. 88 CIV. 6194, 1988 WL 125680 (S.D.N.Y. Nov. 9, 1988) ..............................................13

*Williams v. N.Y.C. Dept. of Corrections*,
   19-cv-3347(LCL)(JLC), 2020 WL 7079497 (S.D.N.Y. Dec. 3, 2020).....................................10

*Yang v. Kosinski*,
   960 F.3d 119 (2d Cir. 2020) ....................................................................................................14

**Other Authorities**

Fed. R. Civ. P. 65(c)......................................................................................................................15

*Frontier Airlines Orders 91 Additional A321neo Aircraft, Tripling Size by 2029*
   (Nov. 14, 2021) ................................................................................................................14

Defendants Wells Fargo Trust Company, N.A., solely in its capacity as Owner Trustee ("Wells Fargo"), and UMB Bank, N.A., solely in its capacity as Owner Trustee ("UMB"), respectfully submit this memorandum of law in opposition to Plaintiff Frontier Airlines, Inc.'s ("Plaintiff" or "Frontier") Motion by Order to Show Cause for a Temporary Restraining Order and Preliminary Injunction (ECF No. 52) (the "TRO Motion").

## PRELIMINARY STATEMENT

In its motion for a preliminary injunction, Frontier asks this Court to prevent Defendants from exercising their contractual remedies under a number of Leases (defined below) that have arisen because of Frontier's serial and ongoing breaches of those Leases. But Frontier's request fails for several reasons.

First, before a party can obtain an injunction, it must show a probability of success on the merits of its claim. But Frontier has no claim related to Defendants' attempt to exercise their contractual remedies. Indeed, all of the facts that form the basis of Frontier's request for an injunction have occurred well after the filing of the operative complaint in this case and do not relate to the claims actually before the Court. For that reason alone, Frontier's request must be denied.

Second, analysis of the other factors also does not support an injunction. Frontier has failed to show that it faces imminent, irreparable harm if Defendants exercise their contractual remedies, or that the balance of the equities tip in its favor. Accordingly, the Court should deny Frontier's request for an injunction.

## BACKGROUND

I. **THE LEASES**

Frontier is a commercial airline and party to individual lease agreements for fourteen (14) Airbus A320 passenger aircraft (the "Leases"), that it uses in its business from certain of the

defendants. Thirteen of the Leases contain substantially similar terms ("Lease Form 1")[1] (Ex. 1)[2] and one Lease contains slightly different, but similar terms to Lease Form 1 ("Lease Form 2")[3] (Ex. 2). The counterparty in each Lease is either UMB or Wells Fargo, acting not in each of their individual capacities but solely as the "Owner Trustees" under the terms of a related trust agreement. Each Lease was signed by Frontier as the "Lessee" and either UMB or Wells Fargo as the "Lessor." The Servicer, Carlyle Aviation Management Limited ("CAML"), manages the sale, lease, and financing of the aircraft.

Under each Lease, the Lessor acts for the beneficial owner of the aircraft, known as the "Owner Participant." Either Accipiter Investments Aircraft 4 Limited ("Accipiter") or Vermillion Aviation (Two) Limited ("Vermillion") is the Owner Participant for the Leases. At the time the Leases were entered, Accipiter and Vermillion were affiliates of AMCK Aviation Holdings Ireland Limited ("AMCK Holdings" or "AMCK"). The Owner Trustee (UMB or Wells Fargo) legally owns the aircraft, whereas the Owner Participant (Accipiter or Vermillion) is the beneficial owner of the aircraft.

Each of the Leases has language that allows for the transfer of ownership of the aircraft pursuant to certain conditions. These provisions govern transfers by the Lessors (UMB or Wells Fargo) or Owner Participants (Accipiter or Vermillion).

Section 20.2(a) of each of Lease Form 1 states that "[e]ach of Lessor [i.e., UMB or Wells Fargo] and Owner Participant [i.e., Accipiter or Vermillion] (and any subsequent permitted

---

[1] Those thirteen Leases relying on Lease Form 1 are for the aircraft bearing the following manufacturer's serial numbers: 8102, 8239, 8357, 8307, 8402, 8766, 8857, 8913, 8977, 9026, 9068, 9177, and 10038.

[2] Unless otherwise specified, "Ex. __" refers to exhibits to the Declaration of Jed M. Schwartz, filed contemporaneously herewith.

[3] The one Lease relying on Lease Form 2 is for the aircraft bearing the following manufacturer's serial number: 7524.

2

assignee or transferee) shall have the right at any time . . . to transfer ownership or beneficial ownership, as applicable, of the Aircraft," among other things. (Ex. 1 § 20.2(a).) To ensure that Lessor and Owner Participant could accomplish this, they specifically bargained for an obligation for Frontier to cooperate with such transfer. Specifically, Section 20.2(b) of the Lease Form 1 states that "Lessee [i.e., Frontier] shall comply with all reasonable requests of Lessor or Owner Participant, and at the expense of Lessor, to cooperate in effecting" any "transfer, novation, assignment, mortgage, grant or other disposition referred to in paragraph (a) above and will execute any and all consents, agreements, amendments or other instruments . . . in form and substance reasonably satisfactory to Lessee . . . ." (*Id.* § 20.2(b).)

With respect to Lease Form 2, Section 22.3 allows Lessor to "sell, assign, novate or otherwise transfer its right, title and interest in the Aircraft or this Lease without Lessee's consent," provided certain conditions are met, *e.g.*, the proposed purchaser, assignee, or transferee shall enter into an agreement, reasonably satisfactory to Lessee, and assume all obligations of Lessor under the Leases and other related documents, and any transfer will not increase Lessee's obligations, liabilities, or risks or diminish Lessee's benefits. (Ex. 2 § 22.3). Section 22.2 of Lease Form 2 requires Frontier to "promptly execute (or cause to be executed) all documents reasonably requested by Lessor [i.e., Wells Fargo] to effect, perfect, record or implement" certain assignments, and to "comply with any other reasonable requests of Lessor, its successors and assigns in respect of any such . . . assignment," provided that certain conditions are met. (*Id.* § 22.2.)

Four of the aircraft are subject to purchase agreements executed between certain Defendants and third-party purchasers, pursuant to which a third-party purchaser has agreed to purchase the aircraft. Ten of the aircraft are subject to financing agreements executed between

3

certain Defendants and third-party financiers, pursuant to which the financier has agreed to finance the aircraft pursuant to a temporary financing. In addition, six of the aircraft (including one of the aircraft subject to a purchase agreement) are subject to refinancing agreements executed between certain Defendants and third-party financiers pursuant to a long-term financing.

## II.     FRONTIER DEFAULTS UNDER THE LEASES

As the Court is aware, on April 8, 2022, Frontier commenced this litigation, asserting claims for breach of contract, fraudulent transfer, and declaratory relief. (ECF No. 1). Frontier's claims arose from a transaction that closed in 2022 involving the indirect transfer of beneficial ownership of the aircraft subject to the Leases (the "Transaction").

Despite the pendency of litigation between Frontier and certain Defendants, the parties needed to continue working together to conduct business. At Frontier's request, in mid-2022, CAML began engaging with Frontier to facilitate ordinary course activities relating to the aircraft, including the sale or refinancing of the aircraft, leased by Frontier.

Sales and financings of aircraft are typical and ordinary course transactions and have nothing to do with the litigations pending between the parties. Indeed, to make clear that UMB and Wells Fargo were not trying to seek any advantage in a litigation, they agreed, along with certain Defendants, at Frontier's request, to enter into an agreement that allowed the parties to continue working together on commercial and sale operations, among other ordinary course matters, without prejudicing their litigation positions.

On October 21, 2022, Frontier and certain Defendants, including Wells Fargo and UMB, executed the Non-Waiver Agreement. The Non-Waiver Agreement importantly states that "[d]espite the existence of the [Action filed in 2022] . . . the Parties recognize the mutual operational benefits to the Parties from cooperating with each other in good faith regarding the day-to-day administration of the Lease Agreements and the Aircraft," and "[a]ccordingly, ***the***

***Parties hereby confirm that they will continue to cooperate in good faith regarding all Lease Administration Activities***." (Ex. 3, ¶ 4 (emphasis added).) The Non-Waiver Agreement further stated that "unless otherwise agreed to in a writing executed by the relevant Parties, no Party shall be treated as having waived any contractual or extracontractual rights by engaging or participating in any Lease Administrative Activity during the term of this Agreement." (*Id.* ¶ 5.)

From mid-2022 through April 2023, certain Defendants attempted to engage with Frontier in good faith to negotiate various ordinary-course agreements in connection with refinancing or sales of the aircraft, including security notices and acknowledgments, internal trust transfers, lease assignments, a guaranty, and a guaranty termination, in order to effectuate the sale and financing of the aircraft.

Defendants have requested that Frontier consent to a security assignment and lease assignment for certain of the aircraft subject to the Leases in order for Plaintiffs to sell or refinance the aircraft. These security assignments and lease assignments have no impact on Frontier's operations or interest in the aircraft. Such consents are granted as a matter of ordinary course in the airline industry, including by major U.S. air carriers, and have been granted by Frontier. The Leases, as is standard for operating leases with commercial airlines, expressly contemplate that security assignments and lease assignments will occur and require Lessee's cooperation with documentation that may be required in connection with such security assignments and lease assignments.

In November and December 2022, Frontier and CAML sent multiple letters regarding CAML's executed letters of intent to sell four leased aircraft, which CAML gave notice to Frontier of on November 16, 2022. On November 23, 2022, Frontier indicated that the purported transfers could be void pending this Action and made several requests for information regarding the

5

transfers. On November 29, 2022, CAML provided responses to Frontier's requests for information, and CAML reminded Frontier that it agreed to cooperate in good faith regarding the administration of the leases of the aircraft, including with sales and financings, pursuant to the Non-Waiver Agreement. On December 1, 2022, Frontier indicated that it was entitled to evaluate and assess whether the transfers and security assignments will satisfy the transfer requirements of the Lease Agreements.

From December 5 to December 9, 2022, CAML contacted Frontier several times for updates on the draft security notices and the lease assignment document. CAML would email Frontier eight more times for a copy of the draft lease assignment, which Frontier insisted on drafting itself based on a form it had prepared, but never entered into, with AMCK. CAML did not receive the draft lease assignment from Frontier until January 22, 2023.

Frontier insisted on including language related to this Action and another litigation in the security assignment notices and the lease assignment to UMB as the New Lessor. Frontier's proposed language in the security assignment notice is, in relevant part, as follows:

> Each of the Lessor and the Security Trustee agrees, covenants, represents and warrants for the benefit of the Lessee that the security assignment transaction described hereunder (including any associated liens and encumbrances of Security Trustee) complies with the applicable terms and conditions of Clause 20.2 of the Lease and that pursuant to Clause 20.2(a)(ii) Lessee's rights, including but not limited to Lessee's rights as plaintiff and a judgment creditor (as applicable) arising from or in connection with the pending lawsuits filed in U.S. District Court for the Southern District of New York as case numbers 1:22-cv-02943 and 1:20-cv-09713, including, without limitation, Lessee's right to collect and recover damages, shall not be restricted or otherwise prejudiced as a result of such security assignment transaction. Any prejudice to or loss of priority of Lessee's rights and interests as a judgement creditor as a result of the security assignment described herein shall be deemed a restriction to the Lessee's rights under the Lease and other Lessee's Documents. If any such restriction occurs, the Lessor and the Security Trustee shall immediately upon the request of the Lessee subordinate any liens, security interests, encumbrances and collection rights of the Security Trustee against property or assets, including, without limitation, against the Aircraft, the Lease Documents and monies held pursuant the Lease Documents, to the judgment creditor rights of the

Lessee.

(Ex. 4, ¶ 7.)

Frontier's proposed language in the lease assignment to UMB as the New Lessor is, in relevant part, as follows:

> The purported transfer of the Aircraft and Lease (as such term is defined in Schedules 1 and 2 hereto) contemplated hereunder is subsequent to the purported sale of aircraft assets by CK Capital (Hong Kong) Limited and related entities to New Owner Participant Parent Assignor and related transactions (the "Specified Transaction"), which Specified Transaction was not consented to by Lessee and is being challenged by Lessee as novations conducted in violation of Clause 20.2 of the Lease and a fraudulent conveyance to prevent Lessee from collecting any potential judgement under the Actions (as defined below).  Prior to the Specified Transaction, Lessee filed actions against Assignors, Existing Owner Participant, and other affiliates to Existing Owner Participant for breach of contract, fraud and other claims arising from the parties' dealings in connection with contracts among the parties including the Lease and other "Operative Documents" (as such term is defined in the Lease).  As a result of these actions two cases are pending with the U.S. District Court for the Southern District of New York (the "Court") under case numbers 1:22-cv-02943 and 1:20-cv-09713 (collectively, the "Actions," each an "Action").
>
> (A). In the Action bearing case number 1:22-cv-02943, Lessee has sought determinations that (1) Lessee was harmed by conduct by Assignor and other defendants and (2) that the Specified Transaction constitutes a lessor default under the Lease and other Operative Documents and with respect to the Specified Transaction, Lessee intends to seek an order declaring such novation as void and seek other available remedies. The named defendants in the Actions deny wrongdoing.  Lessee is entering into this Agreement as an accommodation to Existing Owner Participant to facilitate daily operations of Lessor, but such accommodations by Lessee are done without waiver of any rights, remedies or contentions relating to the Actions, including, without limitation, Lessee's challenge of the validity of the Specified Transaction, right to void the Specified Transaction and right to recover damages from the defendants in the Actions.

(Ex. 5, Background Section A.)

Frontier's proposed language is unreasonable because, among other reasons, it (i) requires the Lessor to agree that the Leases provide Lessee certain rights or benefits that are not stated in the Leases, including that the Lessee has a right to a particular priority position as a creditor pursuant to the Lease and that the Leases provide that the Lessee's claims in this Action and

7

another litigation not be prejudiced, (ii) require the Lessor's financier's security interest in any of Lessor's assets to be subordinated to the Lessee's judgement creditor rights, and (iii) memorialize that Lessor defaulted under the Leases, which is inaccurate.

On March 24, 2023, CAML sent Frontier a guaranty proposal to try to respond to Frontier's purported concerns, and in an effort to mitigate the parties' losses and to facilitate the closure of sales or financings, although CAML was under no obligation to do so. The Guarantor under each Lease is currently Accipiter Holdings, Accipiter, or Vermillion. As part of the guaranty proposal, CAML has offered additional security to Frontier pursuant to a new Guaranty, by proposing that Maverick Aviation (Ireland) DAC, a subsidiary of Maverick Aviation Partnership LP, having a net worth of hundreds of millions of US dollars, provide a guaranty in favor of Frontier as to payment of amounts determined to be owed to Frontier in this Action and another litigation by a defendant that is a direct or indirect subsidiary of Maverick Aviation Partnership LP, pursuant to a final, non-appealable judgment.

After certain Defendants and Frontier exchanged several proposals for the Guaranty, Frontier most recently sent a counterproposal on May 5, 2023. In Frontier's response, as opposed to granting Plaintiffs' straightforward request for a consent to a security assignment and lease assignment for certain of the aircraft, Frontier instead demanded that Plaintiffs provide Frontier with either (i) a $60 million letter of credit for Frontier's benefit or (ii) a first lien mortgage against three of the aircraft selected by Frontier (which mortgages will be perfected with filings on the International Registry and the Federal Aviation Administration's registry). But all the monetary obligations under the Leases run from Frontier to Plaintiffs. Frontier is, in effect, the "borrower" under the leases and Plaintiffs are the "lenders". Therefore, Frontier's request is akin to a homeowner demanding that his or her bank post a letter of credit to secure the bank's obligations

under a mortgage, which is unreasonable.

CAML, as servicer, sent a letter, dated April 27, 2023, to Frontier detailing Frontier's multiple breaches of the Leases, and attaching notices previously sent to Frontier informing Frontier of the certain contemplated transactions regarding the aircraft (the "April 27 Letter"). On May 3, 2023, Frontier sent a letter to CAML responding to the April 27 letter. In that letter, Frontier not only continued to refuse CAML's reasonable requests, which were made on its own behalf and on behalf of certain Defendants in this Action, but also incorrectly asserted, among other things, that CAML refuses to provide a guarantee for the proposed transfer.

As a result, on May 26, 2023, Wells Fargo and UMB issued notices of default to Frontier under the relevant Leases (the "Default Notices"). Certain Defendants in this Action also filed a complaint under seal in New York State Supreme Court, which Frontier removed to this Court on June 6, 2021 (the "Removed Proceeding"). *See* Compl., *Carlyle Aviation Mgmt. Ltd., et al v. Frontier Airlines, Inc.*, 1:23-cv-04774, (June 6, 2021), ECF No. 1. Defendants' three claims for relief in the Removed Proceeding include (i) Frontier's breach of contract of the Leases, (ii) Frontier's breach of contract of the Non-Waiver Agreement, and (iii) Frontier's tortious interference with prospective economic advantage. (*Id.*)

## ARGUMENT

**I.   LEGAL STANDARD**

"Preliminary injunctive relief is 'one of the most drastic tools in the arsenal of judicial remedies.'" *Fed. Ins. Co. v. Metro. Transp. Auth.*, No. 17-cv-3425 (JFK), 2017 WL 2929471, at *2 (S.D.N.Y. July 10, 2017) (citation omitted). A movant seeking preliminary injunctive relief, must "establish (1) irreparable harm; and (2) either (a) likelihood of success on the merits or (b) sufficiently serious questions going to the merits of [its] claims to make them a fair ground for litigation" in addition to "a balance of hardships tipping decidedly in favor of the moving party;

and (3) that a preliminary injunction is in the public interest." *Shaw Cablesystems G.P. v. TV Guide Int'l, Inc.*, 19-cv-3698, 2019 WL 13193712 (S.D.N.Y. May 10, 2019).  Frontier cannot establish any of these elements, and, thus, its motion for preliminary injunctive relief should be denied.

## II.     PLAINTIFF HAS NOT DEMONSTRATED A LIKELIHOOD OF SUCCESS ON THE MERITS

Frontier cannot show a likelihood of succeeding on the merits of any claim related to the Default Notices ***because it does not have any claim related to the Default Notices***.  This Action has nothing to do with the Default Notices.  Rather, in this Action, Frontier has asserted a number of claims (most of which have now been dismissed) that arise from the Transaction.  But the events that gave rise to the Default Notices all occurred after this Action was commenced.  Indeed, the Default Notices were issued on May 26, 2023, nearly nine months after Frontier filed the operative complaint in this case.  (Second Am. Compl., ECF No. 35.)

Without a claim challenging the Default Notices, there is simply "no basis for injunctive relief" with respect to any actions that might be taken pursuant to the Default Notices.  *See, e.g.*, *Robbins v. Comprehensive Medical Mgmt., Inc.*, No. 00cv57, 2000 WL 502693, at *2 (D. Conn. Mar. 21, 2000) (denying motion for temporary restraining order and preliminary injunction and finding that "there is no basis for injunctive relief" where defendant had not filed any action because "there is no underlying claim on which to find a likelihood of success on or serious question going to the merits").  Indeed, an injunction is not an appropriate remedy where the [requested] injunction 'deals with a matter lying wholly outside the issues in the suit." *Williams v. N.Y.C. Dept. of Corrections*, 19-cv-3347(LCL)(JLC), 2020 WL 7079497, at *2 (S.D.N.Y. Dec.

3, 2020) (noting that "it is inappropriate for the court to grant a request for injunctive relief that is unrelated to the claims and the defendants in the complaint") (internal quotation marks omitted).

In an apparent attempt to side-step this issue, Frontier makes an argument that appears nowhere in its operative complaint—that it "was not required to consent to Carlyle's assignments," because under Section 20.2(a)(ii) of the Leases under Lease Form 1, Frontier did not have to consent if such consent would "result in any restriction . . . on Lessee's rights under this Agreement or the other Lessee's Documents." (Mem. of Law at 9-10, ECF No. 53 (internal quotations omitted).) And, according to Frontier, "[b]y acknowledging the assignments, Frontier would render itself unable to enforce its judgment against the defendant's property, because Frontier would have acknowledged that [the assignee] has a superior security interest in that property." (*Id.* at 10 (citing authority discussion the rights of judgment creditors).) But any right that Frontier might have as a judgment creditor does not arise from the Lease or other Lessee Documents, and so Section 20.2(a)(ii) of the Leases under Lease Form 1 Leases is not implicated. Moreover, it is entirely unreasonable for Frontier to have refused to consent in light of Carlyle's offer to provide a guarantor with a net worth of hundreds of millions of dollars to guaranty the payment of amounts determined to be owed to Frontier in this Action and another litigation. And, finally, Section 20.2(a)(ii) of Lease Form 1 does not even apply to Defendants' requests relating to the aircraft that Defendants are attempting to refinance. By its terms, Section 20.2(a)(ii) only applies to "such transfer," i.e., a "transfer" referenced in the preamble to Section 20.2(a). But the consents regarding the aircraft that are to be refinanced do not relate to a "transfer" of the aircraft.[4]

---

[4] Defendants do not believe that any indirect sales of the aircraft by a person other than the Lessor or the Owner Participant would be a "transfer," nor that the conditions set out in Section 20.2(a) of the Leases apply to any such indirect sale, other than the requirement to provide a replacement Guarantee to the extent it will result in the existing Lessor Guarantee no longer remaining in full

## III. PLAINTIFF HAS NOT DEMONSTRATED IMMINENT IRREPARABLE HARM IF THE SOUGHT RELIEF IS DENIED

Frontier cannot demonstrate a threat of imminent, irreparable harm. "'A showing of irreparable harm is the single most important prerequisite for the issuance of a preliminary injunction.'" *JN Contemporary Art LLC v. Phillips Auctioneers LLC*, 472 F. Supp. 3d 88, 93 (S.D.N.Y. 2020) (quoting *Faiveley Transp. Malmo AB v. Wabtec Corp.*, 559 F.3d 110, 118 (2d Cir. 2009)). To satisfy the irreparable harm requirement, Frontier "must demonstrate that absent a preliminary injunction [it] will suffer an injury that is neither remote nor speculative, but actual and imminent, and one that cannot be remedied if a court waits until the end of trial to resolve the harm." *Id*. (citation and quotation omitted) "Where there is an adequate remedy at law, such as an award of money damages, injunctions are unavailable except in extraordinary circumstances." *Id*. (citation and quotation omitted).

Frontier fails to satisfy the irreparable harm requirement for three reasons. *First*, the risk of harm is not imminent. Despite issuing the Default Notices, Defendants repossession of the aircraft is not imminent. As Frontier acknowledges, "serving notice of default starts a 15-day cure period under [Lease] Form 1 (30 days under [Lease] Form 2) after which an Event of Default is triggered." (Mem. of Law at 7, ECF No. 53.) As Frontier also recognizes, if Frontier does not cure the alleged defaults, Defendants "*could* attempt to declare an Event of Default as early as June 10, 2023." (*Id*. (emphasis added).) The Default Notices raise only the possibility that Defendants could repossess the aircraft; by no means is repossession imminent. *See Shaw Cablesystems G.P. v. TV Guide Int'l, Inc.,* No. 19-cv-3698, 2019 WL 13193712, at *4 (S.D.N.Y. May 10, 2019) (holding that defendant's "reservation of the right to suspend or terminate the

---

and effect, but in light of the Court's Opinion & Order, dated June 7, 2023 (ECF No. 59), do not raise that argument here, but rather simply note it for preservation purposes.

12

service, standing alone, demonstrates only a possibility that the feared harm will come to pass").

*Second*, Frontier's assertion that "its customers would be irreparably harmed" is not relevant to the analysis of whether **Frontier** will be harmed. Courts in the Second Circuit have held that potential third party injuries are not to be considered when considering irreparable harm. *See, e.g.*, *Expedia, Inc. v. United Airlines, Inc.*, No. 19-cv-1066 (PKC), 2019 WL 1499269 (S.D.N.Y. Apr. 5, 2019) (harm to third parties, including customers who already purchased tickets through Expedia for United Airlines' flights, does not demonstrate that Expedia itself will suffer irreparable harm); *Fed. Ins. Co. v. Metro. Transp. Auth.*, No. 17-cv-3425 (JFK), 2017 WL 2929471, at *3 (S.D.N.Y. July 10, 2017) ("[T]he public interest is a factor in the preliminary injunction analysis, but the theoretical possibility of harm to third parties is not relevant to, and does not establish, the required showing of irreparable harm to [plaintiff], the proponent of injunctive relief in this application."). Absent injunctive relief, Frontier must show how Frontier itself, not its customers, will suffer irreparable harm. Frontier fails to demonstrate such harm.

*Finally*, Frontier's conclusory assertion that "[r]estricting Frontier's use of the Aircraft . . . would cause Frontier substantial loss of customer good will and damage to its business reputation" (Mem. of Law at 8, ECF No. 53), is also insufficient. *See, e.g.*, *JN Contemporary Art LLC*, 472 F. Supp. 3d at 93-94 (finding that conclusory assertions that "intangible damages 'go directly to the heart of whether or not Plaintiff can stay in business'" are "not evidence that [plaintiff] has suffered anything other than compensable financial harm"); *see also White Plains Towing Corp. v. Polizzi Towing Corp.*, No. 88 CIV. 6194, 1988 WL 125680 (S.D.N.Y. Nov. 9, 1988) (citing cases).[5] As articulated in *Rex Medical L.P. v. Angiotech Pharmaceuticals (US), Inc.*,

---

[5] Moreover, the cases Frontier relies on to support its arguments that it will suffer irreparable harm are factually distinguishable. *See Register.com, Inc. v. Verio, Inc.*, 356 F.3d 393, 397 (2d Cir. 2004) (enjoining defendant from using plaintiff's trademarks or otherwise representing to third parties that defendant is affiliated with plaintiff); *Johnson Controls, Inc. v. A.P.T. Critical Sys., Inc.*, 323 F. Supp. 2d 525, 532

relied on by Frontier, courts have found irreparable harm from a loss of goodwill "where the dispute between the parties leaves one party unable to provide its product to its customers." 754 F. Supp. 2d 616, 621 (S.D.N.Y. 2010). Here, Frontier has not made any such showing. Frontier currently "operates a fleet of 127 commercial passenger aircraft," (Mem. of Law at 2, ECF No. 53), and is in the process of purchasing hundreds more. *Frontier Airlines Orders 91 Additional A321neo Aircraft, Tripling Size by 2029*, (Nov. 14, 2021), https://ir.flyfrontier.com/node/7201/pdf. Even if all 14 aircraft were grounded today, Frontier would still have use of nearly 90% of the aircraft in its fleet.

## IV. THE BALANCE OF EQUITIES AND HARDSHIPS DO NOT WEIGH IN FRONTIER'S FAVOR

Frontier does not meet its burden in showing that the balance of equities and hardships weigh in its favor. In assessing the balance of equities under a preliminary injunction, the Court "balance[s] the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief," as well as "the public consequences in employing the extraordinary remedy of injunction." *Yang v. Kosinski*, 960 F.3d 119, 135-36 (2d Cir. 2020). If the Court enjoins Defendants from exercising their contractual remedies, Frontier will have the ability to continue to breach the Leases, which will continue to harm Defendants, in the form of lost proceeds in the millions of dollars that could have been realized from potential sales or refinancings of the aircraft. The right to ground and/or repossess aircraft following an event of default is a fundamental bargained-for right of a lessor.

With regard to public interest, while Defendants do not dispute that some of Frontier's passengers may temporarily be inconvenienced by the potential grounding or repossession of the

---

(S.D.N.Y. 2004) (irreparable harm found where a party violates a non-compete clause, causing loss of client relationships and customer goodwill built over a long-term period).

aircraft, such inconvenience is not so great as to warrant a preliminary injunction. Airline passengers are already familiar with flight delays and cancellations, which are routine in the age of modern travel. By asserting that 12,000 passengers per day "would be unable to travel" if Frontier cannot use its aircraft, Frontier fails to acknowledge that Frontier is not the only airline serving passengers in domestic air travel. (Mem. of Law at 10, ECF No. 53.) Many other airlines with numerous aircraft can adequately fill in any gaps in service resulting from temporary grounding of the aircraft. Moreover, as explained in Section III *supra*, repossession is by no means imminent and, therefore, Frontier would have adequate time to make the necessary adjustments for passengers in the event of the temporary grounding or repossession of the 14 aircraft.

## V. ANY INJUNCTION SHOULD BE NARROWLY TAILORED

If the Court determines to grant an injunction, that injunction should be narrowly tailored to the issue before the Court. Frontier has requested that Defendants be enjoined "during the pendency of this Action from grounding, impounding and/or deregistering any of the fourteen Aircraft that are the subject of this lawsuit (the 'Aircraft') or terminating the lease agreements for any of the Aircraft." (Order to Show Cause at 1-2, ECF No. 56.) But such an order is overly broad because it is not tailored to the specific defaults that are the subject of the Default Notices. For example, if the Court were to enter such an order, Frontier could cease making its Lease payments, but Defendants would be enjoined from terminating the Leases or repossessing the aircraft. That would give Frontier license to engage in further breaches of the Leases.

Accordingly, any injunction should only prevent Defendants from grounding, impounding and/or deregistering the aircraft, or terminating the Leases for the aircraft based solely on the defaults asserted in the Default Notices.

## VI. FRONTIER MUST POST A BOND

Under Federal Rule of Civil Procedure 65(c), the Court "may issue a preliminary injunction

15

or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Defendants concede that determining the costs and damages that they will sustain by being enjoined from exercising their remedies is difficult to quantify, but believe it will likely include additional legal and other costs. Accordingly, Defendants' respectfully request that Frontier be required to post a $2 million bond.

## CONCLUSION

For the reasons set forth herein, the Court should deny Plaintiff's motion by order to show cause for a temporary restraining order and preliminary injunction.

Dated:  June 8, 2023
        New York, New York

**MILBANK LLP**

/s/  *Jed M. Schwartz*

Jed M. Schwartz
Samantha Lovin
Emily Werkmann
55 Hudson Yards
New York, New York 10001
Tel: (212) 530-5000
JSchwartz@milbank.com
SLovin@milbank.com
Ewerkmann@milbank.com

*Attorneys for Defendants Wells Fargo Trust Company, N.A., solely in its capacity as Owner Trustee, and UMB Bank, N.A., solely in its capacity as Owner Trustee.*