# Exhibit 5

ORIGINAL

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 5/5/21

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - -X

FRONTIERS AIRLINES, INC.,

                Plaintiff,         20 Civ. 9713 (LLS)

     - against -            MEMORANDUM & ORDER

AMCK AVIATION HOLDINGS IRELAND
LIMITED, ACCIPITER INVESTMENT 4
LIMITED, VERMILLION AVIATION (TWO)
LIMITED, WELLSFARGO TRUST COMPANY,
N.A., solely in its capacity as OWNER
TRUSTEE, and UMB BANK, N.A., solely
in its capacity as OWNER TRUSTEE,

                Defendants.
- - - - - - - - - - - - - - - - - - -X

    Defendants accept that "the central issue in this action is the termination of the Framework Agreement by AMCK" (Defts' March 12 2021 Reply, p. 1) in which, AMCK says it declared a default under a cross-default provision in the Framework Agreement, when plaintiff Frontier "unilaterally stopped making payments due under the Lease Agreements in April 20, 2020 for fourteen other aircraft." (id.)

    Frontier's version is not as simple. It claims (Complaint ¶ 14):

> 14. Shortly after executing the March 2020 Framework Agreement, the United States aviation market began to suffer the negative impacts of the COVID-19 pandemic as airline passenger travel dropped dramatically in the United States and other countries where Frontier operates. New commercial aircraft financing deals negotiated post-COVID-19 have been done on much more favorable terms to the aircraft leasing companies. This unexpected market change made the economic terms of deals finalized before the COVID-19 pandemic much less attractive to aircraft leasing

-1-

companies, and on information and belief motivated AMCK's conduct giving rise to Frontier's claims in this case.

From that market change there followed a series of complex negotiations with Airbus (he manufacturer and seller of the aircraft), and temporary extensions on various terms of Frontier's scheduled rent payments (id. ¶¶ 18-20,36.)

> 18. Shortly following the delivery of MSN 10038, Frontier requested all of its aircraft lessors consider granting Frontier a voluntary one-time, short-term (three-month) aircraft rent deferral in light of the sudden and significant impact of COVID-19 on domestic U.S. air travel. Around that same time, the other U.S. major airlines were all taking similar or even more aggressive measures to defer aircraft rental costs in an effort to preserve cash.
>
> 19. Upon receiving Frontier's request for a short-term rent deferral, in addition to conveying its desire to repudiate the March 2020 Framework Agreement, AMCK immediately demanded that the economic terms of this agreement be renegotiated to improve AMCK's profit margin. AMCK further demanded that Frontier work with Airbus to delay the deliveries of the five new aircraft that AMCK was required to purchase pursuant to the March 2020 Framework Agreement. To facilitate these requested complex and multi-dimensional business and legal negotiations, AMCK granted Frontier a temporary suspension of rent payments that allowed Frontier to defer its obligation to pay monthly rent on 14 of the 15 aircraft pending the outcome of the negotiations. Specifically, AMCK agreed that Frontier could defer rent payments for these aircraft until May 15, 2020. Frontier had always made timely monthly rent payments to AMCK and was otherwise in compliance with the terms of each of the existing aircraft lease agreements with AMCK. Frontier was financially capable of making rent payments in full had there not been an agreed upon temporary rent suspension.
>
> 20. At AMCK's request, Frontier promptly engaged Airbus in very complex negotiations to postpone the scheduled deliveries of the new aircraft that were to be financed by AMCK. Frontier was ultimately successful in convincing Airbus to agree to delay the delivery of all of the remaining five aircraft subject to the March 2020 Framework Agreement as AMCK requested. Notwithstanding these successful negotiations with Airbus, shortly after Frontier informed AMCK that Frontier succeeded in obtaining the deferral of such aircraft, on May 8, 2020, AMCK unilaterally issued to Frontier a Notice of Termination of the March 2020 Framework Agreement (the "Termination Notice"). In the Termination Notice, AMCK alleged that Frontier's non-payment of rent on other aircraft not subject to the March 2020 Framework Agreement gave rise to AMCK's right to repudiate. At

that time, the only aircraft delivered under the March 2020 Framework Agreement was MSN 10038. Frontier made the rent payments in full for MSN 10038 and continues to pay the rent for MSN 10038 in full. Frontier vehemently disputed AMCK's right to terminate. To date, Frontier is current on all rent payments for the 15 aircraft that AMCK owns and leases to Frontier.

\* \* \* \*

36. AMCK had no right to (i) repudiate, amend, or modify the March 2020 Framework Agreement without Frontier's written consent, (ii) require Frontier to postpone delivery of any scheduled new aircraft deliveries, or (iii) terminate the March 2020 Framework Agreement, unless there was a Framework Agreement Event of Default. At the time when AMCK demanded that Frontier delay taking deliveries from Airbus and renegotiate the economic terms of the March 2020 Framework Agreement, Frontier was in full compliance of each of the aircraft lease agreements it has with AMCK and had always been timely in making rent payments on all the AMCK aircraft.

It is conceivable that one could form an abstract opinion whether AMCK justifiably regarded a non-payment of rent under the Lease Agreements as events of default on the Framework Agreement, but in this case the circumstances are so based on oral discussions, e-mails, conflicting beliefs about what was understood and expected, and the like that no judicial determination can be made without factual findings based on the evidence. The disputes at this point are not susceptible of rulings as a matter of law; that must rest upon a fuller understanding of the facts.

For present purposes, Frontier has stated claims upon which relief can be granted in its First through Seventh Claims, and the motion to dismiss them partially (First and Second claims)

or completely (Third through Seventh) is denied, without prejudice to renewal at trial or on a full evidentiary record.

Accordingly, the motions for dismissal of the claims against Accipiter, Vermillion, UMB and Wells Fargo are denied as moot.

So ordered.

Dated: New York, New York
May 5, 2021

*Louis L. Stanton*
LOUIS L. STANTON
U.S.D.J.

-4-