# Exhibit 8



PAUL M. LAMBERT
206.223.7724 (office)
425-213-6748 (cell)
LambertP@lanepowell.com

November 23, 2022

**Via Email** (fmechlowicz@milbank.com)

Freyda Mechlowicz
Milbank
55 Hudson Yards
New York, NY 10001-2163

      Re: Intended Sale by Carlyle of Four Aircraft Leased by Frontier Airlines

Dear Freyda,

We are writing on behalf of our client Frontier Airlines, Inc. ("**Frontier**") to request additional information regarding the planned transfers of four LEAP-1A26-powered Airbus model A320-251N aircraft that are currently leased to and operated by Frontier.

On November 16, 2022, Mr. Robert Korn, co-founder and CEO of Carlyle Aviation Partners (together with its affiliates, "**Carlyle**") notified Frontier via email that Carlyle had executed letters of intent to sell four leased aircraft to Nordic Aviation Capital ("**NAC**") and Sky Leasing ("**SKY**"). According to Mr. Korn, the aircraft to be sold (the "**Aircraft**") are the following:

| MSN | FAA Registration Mark | Aircraft Type | Buyer |
|---|---|---|---|
| 8307 | N332FR | A320N | NAC |
| 8357 | N336FR | A320N | NAC |
| 9177 | N359FR | A320N | SKY |
| 10038 | N370FR | A320N | SKY |

As you are aware, the lawsuit over the legitimacy of Carlyle's acquisition of Frontier's leased fleet aircraft from AMCK Aviation Holdings Ireland Limited (together with its affiliates "**AMCK**")

Freyda Mechlowicz
Page 2

(*Frontier Airlines, Inc. v. AMCK Aviation Holdings Ireland Limited, et. al.*, USDC SDNY Case No. 1:22-cv-02943 (PAE), hereinafter the **"Frontier/Carlyle Lawsuit"**) – which covers the Aircraft - is pending and could result in a finding that the purported transfers of the Aircraft from AMCK to Carlyle are void.

In a Non-Waiver Agreement dated October 21, 2022 (the **"Non-Waiver Agreement"**) Frontier and Carlyle agreed that there are "mutual operational benefits to the Parties from cooperating with each other in good faith regarding the day-to-day administration of the Lease Agreements. . . ." In so doing, the parties acknowledged that they "wish to ensure that any rights and defenses in connection with the claims asserted in the Lawsuit that may have arisen for either Party will not be waived or adversely affected by participating and cooperating in Lease Administration Activities." The parties also agreed that "unless otherwise agreed to in a writing executed by the relevant Parties, no Party shall be treated as having waived any contractual or extra contractual rights by engaging or participating in any Lease Administration Activity during the term of this Agreement."

From Mr. Korn's letter to Frontier we assume Carlyle intends to invoke the terms of the Non-Waiver Agreement with respect to these proposed transfers. Doing so could result in Frontier cooperating with regard to these transactions, assuming Carlyle (including its owner trustee / lessor affiliates) complies fully with the applicable requirements as set forth in each of the aircraft lease agreements for the Aircraft (the **"Lease Agreements"**) and other relevant operative documents, including but not limited to the Tri-Partite Agreement which covers three of the four Aircraft.

To determine whether Frontier's participation in these transactions will comply with the terms of the Lease Agreements and other applicable operative documents and not adversely affect Frontier's interests, we have the following questions and requests:

1.  How will the covenant of quiet enjoyment in favor of Frontier in each of the Lease Agreements be protected if the Court later determines the transfers from AMCK to Carlyle are void?

2.  Exactly how will the proposed transfers of the Aircraft to NAC and SKY be structured? Please include a complete deal structure description including the names, organization and tax jurisdictions of all involved parties (including proposed guarantors), a detailed description of how the Aircraft, Lease Agreements and other operative documents will be transferred and assumed, the current corporate ownership diagrams back to their ultimate beneficial owners of all relevant parties, whether or not any of the Aircraft will be managed or serviced by a third party, and if so, the identity of any such third party, and a more detailed transfer timeline for the transaction for each of the Aircraft.

3.  Will the purchase prices of the Aircraft to be paid by NAC and SKY be financed in whole or in part? If so, who will finance the purchase prices and how will those financings be structured? Please include a detailed description of all items that will be included as collateral for any such financings.

Freyda Mechlowicz
Page 3

4. Will the existing financings by UMB Bank N.A. as Security Trustee on the Aircraft be paid off at the closings or assumed by any of the respective buyers?

5. Given that Carlyle continues to deny that it owed Frontier any obligations under the Lease Agreements or other operative documents when the Lease Agreements and other operative documents were previously transferred or assigned to it and then subsequently collaterally assigned by it as security to UMB Bank N.A. as Security Trustee, we request that Carlyle confirm in writing that the proposed transfers of the Aircraft by Carlyle are subject to all the restrictions, conditions and requirements set forth in Clause 20.2 (Benefit of Agreement) and elsewhere in each of the respective Lease Agreements and other operative documents.

6. As a preliminary matter, please provide the following information/records for Frontier to start reviewing to determine whether each of the proposed transfers can satisfy the requirements and conditions of Clause 20.2 and elsewhere in each of the respective Lease Agreements and other operative documents:

    a)      Audited financial statements for the previous fiscal year and most recent quarter of each new guarantor and owner participant demonstrating the entity's tangible net worth as determined in accordance with United States GAAP.

    b)      Confirmation that each of the proposed transferees has entered into or is prepared to enter into an assignment and assumption of the LMA and LSA between CFM International, Inc. ("CFM") and AMCK and has started liaising with CFM to enable it to enter into an Amended and Restated Tri-Partite Agreement and other documents with respect to the applicable Aircraft (i.e. the Aircraft bearing MSN 8307, MSN 8357 and MSN 9177) to ensure the transferees assume all liabilities of Frontier under the RPFH Agreement between CFM and Frontier from and after year 8 of the term of the Lease Agreements concurrent with the closing of the transfers.

    c)      Complete "know your customer" documentation and information on each transferee and its officers, directors and ultimate beneficial owner to permit confirmation of compliance with all applicable OFAC, anti-money laundering and other U.S. Treasury Department requirements.

    d)      Proposed closing checklist for each transfer including all contact parties and descriptions of all documents and other conditions precedent needed for the closing.

With respect to the transfer structure, we note that the Aircraft bearing MSN 8307 and MSN 8357 are still owned by Wells Fargo Trust Company as Owner Trustee. As you know, Wells Fargo Trust Company has announced its intention to exit the commercial aircraft owner trustee business and currently maintains only a small transition team that lacks experience and competency in handling aircraft owner trust administration matters. Therefore, we ask that Carlyle and its buyers complete the owner trustee transfers we previously started for Carlyle simultaneously with each of the transfers. Additionally, prior to Carlyle's acquisition of the Aircraft, AMCK initiated the owner trustee transfer process to transfer legal title to the Aircraft bearing MSN 8307 and MSN

Freyda Mechlowicz
Page 4

8357 away from Wells Fargo Trust Company, as owner trustee to UMB Bank N.A., as owner trustee and engaged Frontier to negotiate and review the owner trustee transfer documents. Frontier incurred substantial costs and expenses as a result of this request.  The owner trustee transfers, however, were stalled by Carlyle and Frontier's incurred costs have not yet been reimbursed.  Frontier will require reimbursement for its costs in connection with those stalled transfers prior to working further on the transactions.

Further, as Frontier explained repeatedly both prior to and following the filing of the Frontier/Carlyle Lawsuit, following Carlyle's purported acquisition of the Aircraft it violated Clause 20.2 of each of the Lease Agreements when it made security assignments in favor of UMB Bank N.A. as Security Trustee of all 14 AMCK aircraft leased to Frontier, including the Aircraft (one aircraft has since been returned).  Among other defaults, Carlyle's security notices did not comply with industry standards and compromised and diminished Frontier's rights as lessee and to date Carlyle has not reimbursed Frontier for the expenses it incurred in connection with Carlyle's security assignments. Any security assignments in connection with these transfers will need to fully comply with the provisions of the Lease Agreements and the other applicable operative documents. Frontier will require that it be reimbursed for its costs in connection with those security assignments prior to working further on the transactions.

Please confirm in writing that Carlyle will rectify the defaults in connection with the earlier stalled security assignments and reimburse Frontier for all its incurred costs incurred in connection with the prior security assignments and requested owner trustee transfers before Frontier works further on any of the new requested transfers.

Furthermore, to ensure that Frontier's out-of-pocket expenses, including legal fees and costs, are reimbursed for the new requested transfers, Frontier will require an advance deposit from Carlyle of Frontier's anticipated costs in connection with the proposed transfers.

Finally, as you know Frontier alleges in the Frontier vs. AMCK Aviation Holdings Ireland Limited lawsuit, in which Carlyle Aviation Holdings Ireland Limited and other Carlyle affiliates are named defendants, that Carlyle was the knowing recipient of a fraudulent conveyance of assets from AMCK, including the four referenced Aircraft.  The Transfer was made for the purpose of AMCK avoiding payment of a potential judgment in separate litigation brought by Frontier. To avoid further legal action, additional fraudulent conveyance claims, and a potential need for injunctive relief, please confirm in writing that Carlyle will place into a mutually acceptable blocked escrow account the purchase price paid for the transfer of all four Aircraft until after the final non-appealable resolution of the fraudulent conveyance claims in the pending lawsuit.  Posting a bond for such amount from an acceptable surety would also suffice.

By sending this letter Frontier expressly reserves all of its rights as lessee under the Lease Agreements and other operative documents and all of its rights under the law as the plaintiff in the Frontier/Carlyle Lawsuit and waives none.  In particular, Frontier expressly reserves the right to request additional information and documentation in connection with each of the proposed transfers as it learns more about the requested transfers.

Freyda Mechlowicz
Page 5

We look forward to receiving the above information and documentation. Let me know if you have any questions.

Thank you,

Paul M. Lambert