# Exhibit 18



Frontier Airlines, Inc.
4545 Airport Way
Denver, Colorado 80239

May 3, 2023

William D. Hoffman (via email)
Carlyle Aviation Management Limited
Connaught House
1 Burlington Road
Dublin 4, Ireland

Dear Mr. Hoffman:

This letter responds to your April 27, 2023 letter, which claims that Frontier is violating certain lease terms and threatens a claim against Frontier for damages.

In late 2021/early 2022, Carlyle purchased approximately 135 leased aircraft from AMCK. Fifteen of these were Airbus aircraft on lease to Frontier from AMCK-owned trusts (the "Frontier Aircraft"). At the time of this purchase, there was ongoing litigation between Frontier and AMCK, the lessors, owner participants, and guarantors (collectively, "AMCK") involving the Frontier Aircraft stemming from AMCK's breach of a framework agreement to lease additional aircraft to Frontier and AMCK's effort to engineer a default of the Frontier Aircraft leases to justify its breach. In that lawsuit, which is still pending in the United States District for the Southern District of New York under Cause No. 1:20-cv-09713-LLS ("Lawsuit #1"), Frontier seeks over $50M in damages suffered when Frontier was forced to obtain substitute financing for the Frontier Aircraft on much less favorable terms than AMCK had promised.

Carlyle was aware of Lawsuit #1 when it purchased the Frontier Aircraft. In fact, the sworn testimony of AMCK's then CEO revealed that Carlyle agreed to share the liability for Lawsuit #1 with AMCK, although the terms of that agreement have yet to be disclosed. Carlyle and AMCK attempted initially to hide the sale terms of the Frontier Aircraft. When Frontier subsequently learned about the sale from newspaper reports and requested information, both AMCK and Carlyle stonewalled. Frontier soon learned why.

The excuse that was initially given for AMCK's and Carlyle's stonewalling was that the AMCK-Carlyle transaction was not a "transfer" that invoked Frontier's review and approval rights under the leases because AMCK transferred to Carlyle ownership of a corporate entity up the corporate ownership chain of the Frontier Aircraft. This position was in direct contravention of both the letter and spirit of the leases, which define a transfer to include transfer of "a controlling interest in the Owner Participant." Furthermore, once Carlyle took ownership, it quickly refinanced the Frontier Aircraft in violation of the lease terms. As a result, Frontier filed a second lawsuit against AMCK, Southern District of New York Cause No.1:22-cv-02943 (PAE) ("Lawsuit #2") to obtain a court order either prohibiting the transaction for failure to comply with the Frontier Aircraft lease requirements, or determining that there had been a transfer without giving Frontier any of the protections the Frontier Aircraft leases require.

Subsequently, Frontier obtained information through independent research indicating that Carlyle had purchased the Frontier Aircraft from AMCK in an unusual manner that appeared designed to strip the assets from the defendants in Lawsuit #1 so that Carlyle and AMCK could claim that a judgment for Frontier in Lawsuit # 1 would be uncollectible. Specifically, a company called AMCK Holdings was excluded from AMCK's sale to Carlyle, with all of its assets (but not its liabilities) stripped out and funneled through multiple entities before coming into Carlyle's possession. This required Frontier to add Carlyle to Lawsuit #2 and to assert a claim for fraudulent conveyance based on the raiding of AMCK Holdings' assets for the purpose of shielding those assets from collection should Lawsuit #1 be successful.

1



Frontier Airlines, Inc.
4545 Airport Way
Denver, Colorado 80239

Both inside and outside Lawsuit #2, Frontier sought an amicable resolution of these issues by asking Carlyle to comply with the Frontier Aircraft lease provisions governing transfers, since the AMCK/Carlyle transaction was obviously a transfer. Carlyle has, however, steadfastly refused to comply with any of the contractual obligations that the Frontier Aircraft leases impose upon transfers, and still implausibly takes the formal position that no transfer had taken place. For example, Carlyle has continued to insist that Frontier undertake sanctions law compliance obligations in favor of a Hong Kong entity, CK Asset Holdings Limited, because that is required by Section 9.8 of the Frontier Aircraft leases even though that entity no longer has any involvement in the Frontier Aircraft or with the Carlyle entities. Carlyle's insistence has substantially increased Frontier's exposure. Additionally, Carlyle has repeatedly demanded that Frontier provide tail insurance coverage for the AMCK entities when the lease clearly provides that such coverage is only available following a transfer as contemplated under the lease. Carlyle apparently believes that the nonwaiver agreement the parties signed in order to handle lease servicing in a businesslike manner allows Carlyle to simultaneously maintain these two diametrically opposed positions.

More recently, Carlyle has accomplished or sought to accomplish further transfers (as that term is used in the Leases), both internally and to third parties, and has asked for Frontier's cooperation in effecting further internal and external transfers. Despite the irony of Carlyle's request that Frontier cooperate in transferring assets out of Carlyle that Carlyle formally denies were ever transferred to it, Frontier has agreed to provide, and has provided, reasonable cooperation. Frontier, however, cannot and will not allow its position to further deteriorate in violation of the lease terms, nor will Frontier agree to a transaction that contemplates a second fraudulent conveyance to move assets further from Frontier's reach should a judgment be entered in favor of Frontier in Lawsuit #1.

Your April 27th letter suggests that Frontier's position regarding the two sets of outward transfers Carlyle is proposing is inconsistent with the terms of the Frontier Aircraft leases. Specifically, your letter invokes Sections 20.2(b) of the most common lease form (as well as section 22.2 as regards MSN 7524) that place certain obligations on Frontier as lessee. However, your letter fails to mention that the obligations in Section 20.2(b) are expressly limited to "**any such transfer**, novation, assignment, mortgage, grant or other disposition **referred to in paragraph (a) above**." Paragraph 20.2(a), in turn, places six important provisos on the lessor's right to effect such a transfer. Four of these are listed as follows:

i. The proposed transfer must not increase Lessee's financial obligation or liability beyond what would exist if there were no transfer. Section 20.2(a)(i);
ii. The proposed transfer must not result in any restrictions on Lessee's rights under the leases or Lessee's use or operation of the Aircraft. Section 20.2(a)(ii);
iii. In the case of a sale of the Aircraft or a transfer of the ownership or a controlling interest in the Owner Participant, the transferee must "unconditionally guaranty" Lessor's obligations under the leases "unless the existing Lessor Guarantee will remain in full force and effect following such transfer . . ." Section 20.2(a)(iii);
iv. Lessor must reimburse Lessee for reasonable attorneys' fees and other costs incurred "in connection with its cooperation with Lessor . . ." Section 20.2(a)(v).

Furthermore, the leases provide that any refinancing documents shall be in a form reasonably acceptable to Lessee. Here, Carlyle's conduct has violated each of the above provisions. The proposed transfers increase Frontier's financial obligations and restrict Frontier's rights because they purport to eliminate Carlyle's liability for the damages Frontier suffered. Carlyle has refused to provide an adequate guarantee that addresses these unique circumstances. Although Carlyle gave a security assignment, it failed to procure Frontier's prior approval of the assignment documents. Finally, despite repeated requests, Carlyle has failed to pay any of the attorneys' fees associated with either the prior transfers or the proposed transfers. Under the plain terms of the leases, these



Frontier Airlines, Inc.
4545 Airport Way
Denver, Colorado 80239

violations vitiate any obligation on the part of Frontier under Section 20.2(b) to cooperate in the noncompliant proposed transfers. This is even more clear in the MSN 7524 lease, which provides in Clause 22.3(v) that any transfer "may not increase Lessee's obligations, liabilities (financial or otherwise), or risks or diminish Lessee's rights and benefits, in each case under any Operative Document or in respect of the Frontier Aircraft (to be determined in each case as at the time of such Transfer by applying all applicable laws as are enacted and/or in effect on the effective date of such Transfer)." Inability to collect a judgment arising out of this lease is a clear diminishment and a restriction of Frontier's rights and benefits.

Despite the lack of any obligation under the leases to cooperate due to Carlyle's violations as described above, Frontier has, in fact, reasonably cooperated in facilitating the proposed transfers. As you may know, our lawyers have accepted substantial portions of the transfer documents prepared by Carlyle's lawyers and have only proposed amended language where necessary to avoid a reduction in Frontier's rights. Most recently, Carlyle's lawyers proposed offering a financial guarantee by a different solvent Carlyle entity as a means to allow Frontier to agree to certain aspects of the proposed transactions without losing rights. We immediately responded that this proposal was promising, and proposed additional terms needed to make the guarantee a true and reliable guarantee that maintains Frontier's position should it become a judgment creditor. Your letter, however, suggests that Frontier's actions described above are inconsistent with "industry wide practice" and that the transfers Carlyle has proposed are "ordinary-course transfers." As set forth above, neither is correct. The proposed transactions are hardly "ordinary" when viewed in the context of Carlyle's prior contract breaches and its formal denial that the AMCK-Carlyle transfer was in fact a transfer. As a large active aircraft lessee, Frontier has cooperated in hundreds of lessor transfers and is very well aware of the disturbingly unique nature of this one.

Finally, your letter threatens that Frontier "will be held responsible" for "millions of dollars" in damages "[i]f the Transactions are not able to close . . ." Frontier denies any assertion that it could or should be held liable for damages. First, as described above, Frontier has agreed to the transfers proposed by Carlyle, subject only to conditions that are reasonable under the circumstances and that were made necessary purely by Carlyle's own contract breaches and participation in fraudulent transfers. If the transfers referenced in your letter fall through because Carlyle refuses to accept Frontier's reasonable proposal, then Carlyle has only itself to blame. Second, even if Frontier's conditions were determined to be a breach, the Frontier Aircraft leases expressly provide that Frontier is not responsible to indemnify Carlyle for any losses "judicially determined to have been caused by the gross negligence, willful misconduct or recklessness" of AMCK/Carlyle. Such a judicial determination is already being sought and is likely to be obtained – meaning that Frontier will have no liability exposure to Carlyle arising out of these transfers. The lease for MSN 7524 similarly exempts Frontier from any liability for losses attributable to acts or events relating to or arising out of an unpermitted transfer.

Frontier remains committed to working with Carlyle on resolving our existing disputes and finding a commercial solution that is fair and mutually agreeable. Threatening us with law actions over Carlyle's own breach is counterproductive and will only cause further delays and disruption.

Sincerely,

Howard M. Diamond
General Counsel and Corporate Secretary