UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| FRONTIER AIRLINES, INC.,<br><br>        Plaintiff,<br><br>v.<br><br>AMCK AVIATION HOLDINGS IRELAND LIMITED, ACCIPITER INVESTMENT 4 LIMITED, VERMILLION AVIATION (TWO) LIMITED, ACCIPITER HOLDINGS DAC, CARLYLE AVIATION MANAGEMENT LIMITED, MAVERICK AVIATION HOLDINGS LIMITED, MANCHESTER AVIATION FINANCE S.A.R.L., VERMILLION AVIATION HOLDINGS LIMITED, WELLS FARGO TRUST COMPANY, N.A., solely in its capacity as OWNER TRUSTEE, and UMB BANK, N.A., solely in its capacity as OWNER TRUSTEE,<br><br>        Defendants. | Case No.: 1:22-cv-02943 (PAE) |

**DECLARATION OF FREYDA MECHLOWICZ IN SUPPORT OF DEFENDANTS' OPPOSITION TO PLAINTIFF'S APPLICATION TO CONVERT TEMPORARY RESTRAINING ORDER TO PRELIMINARY INJUNCTION**

I, Freyda Mechlowicz, hereby declare as follows:

1. I am an attorney, duly licensed to practice law in the State of New York, and outside counsel for Defendants Carlyle Aviation Management Limited ("CAML"), UMB Bank, N.A. ("UMB") and Wells Fargo Trust Company, N.A. ("Wells Fargo"). I am a partner at Milbank LLP ("Milbank") and have represented airlines, aircraft lessors, lenders and other parties in aircraft leasing, aircraft sales, aircraft financing and other aviation industry transactions for eighteen years.

2. I make this declaration in support of Defendants' opposition to Plaintiff Frontier Airlines, Inc.'s ("Plaintiff" or "Frontier") Application to Convert Temporary Restraining Order to

Preliminary Injunction based on my personal knowledge and review of documents, including the exhibits hereto.

3. In December 2021, CK Asset Holdings Limited ("CK") signed a purchase agreement with Maverick Aviation Holdings Ltd. ("Maverick"), an entity managed by Carlyle Aviation Partners ("Carlyle") and its affiliates, to purchase the upstream entities that owned the AMCK Aviation Holdings Ireland Limited ("AMCK Holdings" or "AMCK") portfolio of aircraft assets. The acquisition closed in April 2022 (the "Transaction"). The AMCK portfolio was comprised of over 100 aircraft leased to more than 30 different airlines, 15 of which were leased to Frontier. Maverick did not buy the leasing platform of AMCK, but rather simply purchased AMCK's assets. CAML manages the aircraft owned by the funds in Carlyle's portfolio.

4. With respect to the aircraft leased to Frontier as Lessee, UMB and Wells Fargo are the legal owners and Lessors of the aircraft, acting not in their individual capacities but solely as the Owner Trustees under the terms of a related trust agreement. Under each lease, the Lessor acts for the beneficial owner of the aircraft. Accipiter Investments Aircraft 4 Limited ("Accipiter") or Vermillion Aviation (Two) Limited ("Vermillion") were, prior to the Transaction, affiliates of AMCK and are beneficial owners of the aircraft in their capacity as Owner Participants.

5. The Transaction of the upstream entities occurred as follows: In December 2021, CK announced that it would sell AMCK's aircraft portfolio to Maverick. AMCK also transferred ownership of Manchester Aviation Finance S.à r.l. ("Manchester") to Vermillion Aviation Holdings Limited ("Vermillion Holdings"). In April 2022, Vermillion Holdings transferred Manchester and another company associated with Accipiter to Maverick. Upon the closing of the Transaction, AMCK no longer indirectly owned Accipiter and Vermillion because Maverick became the new indirect owner of Accipiter and Vermillion. However, the ownership of the

aircraft leased to Frontier did not change. The Owner Trustees in each case remained Wells Fargo or UMB, and the Owner Participants remained Accipiter or Vermillion.

6. The AMCK portfolio purchased by Maverick contained, among other assets, fifteen aircraft that were leased to Frontier. The lease for one of the aircraft expired in July 2022, and that aircraft was subsequently returned to its owner. Therefore, there are only 14 aircraft currently on lease to Frontier (the "Leases") in the Maverick portfolio. Thirteen of the Leases contain substantially similar terms ("Lease Form 1"), and one Lease contains slightly different, but similar terms, to Lease Form 1 ("Lease Form 2"). Attached hereto as **Exhibit 1** is a true and correct excerpted copy of Lease Form 1. Attached hereto as **Exhibit 2** is a true and correct copy of Exhibit 3 to the Declaration of Jeff E. Butler in Support of Defendants' Motion to Dismiss the Second Amended Complaint (ECF Nos. 39, 39-3), which is a redacted copy of Lease Form 2.

7. Lease Form 1 and Lease Form 2 provide both the Lessors (UMB or Wells Fargo) and the Owner Participants (Accipiter or Vermillion) with the ability to transfer their ownership or beneficial ownership in the aircraft, as well as to assign security interests in their rights and interests in the aircraft and leases.

8. Section 20.2(a) of Lease Form 1 states that "[e]ach of Lessor [i.e., UMB or Wells Fargo] and Owner Participant [i.e., Accipiter or Vermillion] (and any subsequent permitted assignee or transferee) shall have the right at any time . . . to transfer ownership or beneficial ownership, as applicable, of the Aircraft, or to assign (including to assign as security), mortgage, novate, transfer, grant participations in, or otherwise dispose of its rights and obligations under [the Lease documents], to any other person by outright transfer or assignment or collateral assignment . . . ." (Ex. 1 § 20.2(a).)

9. Section 22.3 of Lease Form 2 allows Lessor to "sell, assign, novate or otherwise

transfer its right, title and interest in the Aircraft or this Lease without Lessee's consent" provided certain conditions are met.  (Ex. 2 § 22.3.)  Section 10.10 of Lease Form 2 states that "Lessee acknowledges that Lessor may at any time during the Lease Period grant Security Interests over the Aircraft . . . as collateral security for Lessor's obligations to the Financing Parties . . . in connection with the perfection and maintenance of such Lessor Liens . . . ." (*Id*. § 10.10.)

10. The aforementioned transfer provisions are substantially similar to other lease agreements in the Maverick portfolio.  To my knowledge, Frontier is the only Lessee who raised objections to the Transaction, whether on the basis of the transfer provisions in their lease or otherwise.

11. Lease Form 1 and Lease Form 2 also contain cooperation provisions.  Section 20.2(b) of Lease Form 1 states that "Lessee [i.e., Frontier] shall comply with all reasonable requests of Lessor or Owner Participant, and at the expense of Lessor, to cooperate in effecting any such transfer, novation, assignment, mortgage, grant or other disposition referred to in paragraph (a) above and will execute any and all consents, agreements, amendments or other instruments . . . in form and substance reasonably satisfactory to Lessee . . . ."  (Ex. 1 § 20.2(b).)

12. Section 10.10 of Lease Form 2 states that "Lessee undertakes to provide all reasonable assistance and cooperation to Lessor and the Financing Parties . . . in connection with the perfection and maintenance of such Lessor Liens . . . ."  (Ex. 2 § 10.10.)

13. Additionally, under Section 22.2 of Lease Form 2, Frontier must "promptly execute (or cause to be executed) all documents reasonably requested by Lessor [i.e., Wells Fargo] to effect, perfect, record or implement" certain assignments, and to "comply with any other reasonable requests of Lessor, its successors and assigns in respect of any such . . . assignment" provided that certain conditions are met.  (*Id*.)

14. On April 8, 2022, Frontier initiated a litigation against CAML and other Defendants, alleging breach of contract and fraudulent transfer, and seeking declaratory relief ("Litigation 2").

15. Beginning in mid-2022, at the request of Frontier, a Non-Waiver and Preservation of Rights Agreement ("Cooperation Agreement") was negotiated and agreed upon by the parties to facilitate ordinary course activities relating to the 14 Aircraft leased by Frontier. The Cooperation Agreement was executed on October 21, 2022. Attached hereto as **Exhibit 3** is a true and correct copy of the Cooperation Agreement.

16. From mid-2022 to in or about April 2023, certain Defendants in this action attempted to engage with Frontier in good faith to negotiate ordinary-course security and lease assignments in connection with potential sales and refinancings of the leased Aircraft.

17. On or about November 16, 2022, Robert Korn, President and Co-Founder of Carlyle, notified Robert Fanning, Vice President of Fleet Transactions & Strategic Sourcing at Frontier, via email that CAML had executed letters of intent to sell four aircraft, MSN 8307, 8357, 9177, and 10038. Paul Lambert of Lane Powell, counsel for Frontier, sent a reply letter on or about November 23, 2022 (the "November 23 Letter"), indicating that the transfers could be void pending the outcome of Litigation 2, but agreed to comply so long as the Cooperation Agreement was invoked. I acknowledged receipt of the November 23 Letter by email that same day. Attached hereto as **Exhibit 4** is a true and correct copy of the November 23, 2022 letter from P. Lambert to F. Mechlowicz.

18. Four aircraft (MSN 8307, 8357, 9177, and 10038) are currently subject to purchase agreements between certain Defendants and third-party purchasers, pursuant to which the third-party purchasers have agreed to purchase the Aircraft. Additionally, ten aircraft (MSNs 8102, 8239, 8357, 8307, 8402, 8913, 8977, 9068, 9177, 10038) are currently subject to financing

agreements executed between certain Defendants and third-party financiers, pursuant to which the financier has agreed to finance the Aircraft pursuant to a temporary financing, and six aircraft (MSNs 8102, 8239, 8357, 8402, 8977, 9068) are currently subject to refinancing agreements between certain Defendants and third-party financiers pursuant to long-term financing.

19. Defendants have requested that Frontier consent to a customary security and lease assignment for certain of the Aircraft subject to the Leases in order for Defendants to sell or refinance the aircraft. Frontier has not granted the consents requested by Defendants, and therefore CAML has not been able to close any of those transactions. It is not possible to effectuate these transactions on the terms Frontier has proposed because CAML's and the third-party purchasers' proposed financing sources will not permit the subordination of a secured party's claim to Frontier's litigation claim.

20. None of the lease assignments, security assignment notices and acknowledgements, or other documents requested by Defendants deviate materially from normal market terms. Frontier has previously granted substantially similar consents in past aircraft lease dealings, including in 2014 for aircraft serviced by CAML and leased to Frontier at such time.

21. On or about November 23, 2022, after I received the November 23 Letter, I emailed Mr. Lambert regarding security assignment documents for certain aircraft (MSN 7524 and MSN 9177) and notified him of CAML's intent to transfer three aircraft (MSN 8102, 8239 and 8357) owned by Wells Fargo, as Owner Trustee, to new trusts with UMB as Owner Trustee, as requested by Frontier. Specifically, I provided revised draft notices and acknowledgments for the security assignments, and with respect to the internal trust transfers, I provided a draft lease assignment, draft guaranty, and draft guarantee termination. These documents were in the ordinary course of business and are typically accepted by lessees.

22. On or about November 29, 2022, I provided a letter (the "November 29 Letter") in response to Mr. Lambert's inquiries in his November 23 Letter.

23. On or about December 1, 2022, counsel for Frontier responded via letter (the "December 1 Letter") to the November 29 Letter. Attached hereto as **Exhibit 5** is a true and correct copy of an excerpt of the December 1, 2022 letter from P. Lambert to F. Mechlowicz.

24. On or about December 2, 2022, I scheduled a call with counsel for Frontier to discuss the documentation that I had sent to Frontier on November 23, 2022. That call took place on December 5, 2022. Following the December 5 call, I sent counsel for Frontier, via email, a chart showing the various aircraft that I described to Frontier's counsel on the call. The chart provided a detailed description for each aircraft, including the MSN, current owner trustee, current owner participant, current guarantor, aircraft type details, and notes on financing and sales plans at such time. On that call, Frontier's counsel asked if we could use a draft lease assignment form that they said they had previously negotiated with AMCK instead of the draft that I had provided, and I agreed to review that draft.

25. On three separate occasions—December 5, December 6, and December 9, 2022—I contacted Frontier's counsel for an update on their comments to our draft security assignment notices and their new draft lease assignment. On December 10, 2022, Frontier's counsel sent us comments on the draft security assignment notices, but not the draft lease assignment. In these comments to the draft security assignment notices, Frontier added off-market terms to the security assignment notices related to its status as a potential judgment creditor in connection with its first action against AMCK alleging, among other things, that AMCK breached its Framework Agreement with Frontier ("Litigation 1").

26. Frontier did not share the draft lease assignment with CAML for nearly two months.

I contacted Frontier at least eight times to ask for the draft lease assignment between early December 2022 and late January 2023: December 22, December 29, January 3, January 6, January 9, January 12, January 17, and January 19. Frontier did not share its draft of the lease assignment with CAML until January 22, 2023.

27. While awaiting Frontier's draft lease assignment following our December 5 call, CAML was responsive to every request or question posed by Frontier, generally within one or two business days after the request or question was sent. On or about January 3, 2023, Milbank provided revised draft security notices and acknowledgements. On or about January 6, 2023, Milbank provided a structure chart and financial statements for the replacement guarantor that was requested by Frontier. On or about January 12, 2023, Milbank answered several questions from Frontier and provided an updated balance sheet for the replacement guarantor. On or about January 17, 2023, Milbank responded to more questions received from Frontier the very same day.

28. CAML received Frontier's draft of a master lease assignment on or about January 22, 2023. In its draft, Frontier sought to include off-market language related to its status as a potential judgment creditor in the pending Litigations 1 and 2. On or about January 26, 2023, Milbank provided to Frontier its comments to the draft lease assignment, as well as revised drafts of the replacement guarantee and security notices and acknowledgements. Milbank also re-sent to Frontier the draft guaranty termination that same day. On or about February 26, 2023, Frontier provided a draft lease assignment redline, as well as comments to the draft security notice, reflecting additional language proposed by Frontier. Attached hereto as **Exhibit 6** is a true and correct excerpted copy of Frontier's Security Assignment Redline, file named "Carlyle Frontier – Security Assignment Notice_02252023_LP Redline against MB draft.docx", sent as an attachment by Frontier's counsel to CAML and Milbank LLP via email on February 26, 2023.

29. On or about March 24, 2023, CAML offered a guarantee of Maverick Aviation (Ireland) DAC (the "Maverick Guarantor")—a company with a net worth of hundreds of millions of dollars—in respect of collection of "amounts that are owed (if any) by a Maverick Defendant in the two pending actions (the 'Actions'), in each case to the extent determined to be owed to Frontier in either such Action pursuant to a final, non-appealable judgment" (the "Maverick Guaranty").  CAML offered that the Maverick Guarantor would covenant to maintain until the Termination Date, a net worth of at least $60 million.  Attached hereto as **Exhibit 7** is a true and correct copy of the March 24, 2023 Guaranty Proposal.

30. The March 24, 2023 Guaranty Proposal stated that CAML would provide the Maverick Guaranty on the conditions that Frontier abandon its proposed provisions in the documentation related to Litigation 1 and Litigation 2, and that Frontier provide relevant continued, ordinary course cooperation on the identified and any future security assignments, internal transfers and third-party transfers.

31. On or about April 7, 2023, Frontier made a counterproposal to the March 24, 2023 Guaranty Proposal.  The counterproposal sought any of:  (i) a $65 million letter of credit for Frontier's benefit; (ii) a bond in an amount to be determined by the court on a joint application; or (iii) a first lien mortgage against three aircraft selected by Frontier (which mortgages would be perfected with filings on the International Registry and the Federal Aviation Administration's registry).  I had a call with Frontier's counsel regarding Frontier's counterproposal on April 10, 2023, during which I told them that Frontier's proposed terms described above were not likely to be acceptable.

32. On or about April 24, 2023, CAML told Frontier that it would increase the minimum required net worth covenant of the Maverick Guarantor to $65 million.  Attached hereto as **Exhibit**

**8** is a true and correct copy of the April 24, 2023 Guaranty Proposal.

33. On or about April 27, 2023, CAML sent a letter to Frontier detailing Frontier's multiple breaches of the Leases and attaching notices previously sent to Frontier regarding the contemplated transactions regarding the aircraft. Attached hereto as **Exhibit 9** is a true and correct copy of the April 27, 2023 letter from W. Hoffman to H. Diamond. Frontier responded by letter on May 3, 2023. Attached hereto as **Exhibit 10** is a true and correct copy of the May 3, 2023 letter from H. Diamond to W. Hoffman.

34. On or about May 5, 2023, Frontier issued a revised counterproposal to the April 24, 2023 Guaranty Proposal. This revised counterproposal also sought either a $60 million letter of credit for Frontier's benefit, or a first lien mortgage against three aircraft selected by Frontier (which mortgages would be perfected with filings on the International Registry and the Federal Aviation Administration's registry). Attached hereto as **Exhibit 11** is a true and correct copy of the May 5, 2023 Guaranty Counterproposal.

35. On or about May 26, 2023, Wells Fargo and UMB issued notices of default to Frontier under the relevant Leases (the "<u>Default Notices</u>").

36. On or about July 3, 2023, Defendants offered Frontier an amended guaranty proposal, which was revised to address each of Frontier's purported concerns with the prior guaranty proposal. Among other things, Defendants' revised guaranty proposal: (i) extends the Maverick Guaranty to amounts owed (if any) by any defendant in Litigation 1; (ii) ties termination of the Maverick Guaranty to a breach of Frontier's payment obligations, rather than to any default under the Leases; and (iii) includes an agreement by the Maverick Guarantor to provide Frontier with quarterly certifications that its net worth remains at least $65 million from an officer or other authorized representative. Attached hereto as **Exhibit 12** is a true and correct copy of the July 3,

2023 Updated Guaranty Proposal.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief.

Dated: New York, New York
July 7, 2023

_____
Freyda Mechlowicz