IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| FRONTIER AIRLINES, INC.,<br><br>                      Plaintiff,<br><br>      v.<br><br>AMCK AVIATION HOLDINGS IRELAND LIMITED, ACCIPITER INVESTMENT 4 LIMITED, VERMILLION AVIATION (TWO) LIMITED, ACCIPITER HOLDINGS DAC, CARLYLE AVIATION MANAGEMENT LIMITED, MAVERICK AVIATION HOLDINGS LIMITED, MANCHESTER AVIATION FINANCE S.A.R.L., VERMILLION AVIATION HOLDINGS LIMITED, WELLS FARGO TRUST COMPANY, N.A., solely in its capacity as OWNER TRUSTEE, and UMB BANK, N.A., solely in its capacity as OWNER TRUSTEE,<br><br>                      Defendants. | Case No. 1:22-cv-02943 (PAE)<br><br>[Rel. 1:23-cv-04774 (PAE)] |

**REPLY MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S APPLICATION TO CONVERT TEMPORARY RESTRAINING ORDER TO PRELIMINARY INJUNCTION**

# **TABLE OF CONTENTS**

*Page*

TABLE OF AUTHORITIES ................................................................................................... ii

PRELIMINARY STATEMENT ............................................................................................. 1

ADDITIONAL FACTUAL BACKGROUND ........................................................................ 2

ARGUMENT ........................................................................................................................... 5

I.      Defendants Fail To Address Frontier's Core Arguments On The Merits ........................... 5

II.     Frontier Faces Imminent Irreparable Harm, Whereas Any Harm Defendants Face Is Readily Addressed By Damages ....................................................................................... 7

III.    The Non-Waiver Agreement Does Not Support Defendants' Arguments ........................ 9

IV.    Frontier Does Not Seek An Overbroad Injunction And Does Not Object To Maintaining The Bond ....................................................................................................................... 10

CONCLUSION ..................................................................................................................... 10

# TABLE OF AUTHORITIES

**Cases** *Page(s)*

*CT Inv. Mgmt. Co. v. Cozumel Caribe, S.A. de C.V. (In re Cozumel Caribe, S.A. de C.V.)*,
   482 B.R. 96 (Bankr. S.D.N.Y. 2012) ................................................................................. 4

*Eli Lilly & Co. v. Arla Foods, Inc.*,
   893 F.3d 375 (7th Cir. 2018) .............................................................................................. 8

*Ixe Banco, S.A. v. MBNA Am. Bank, N.A.*,
   No. 07 Cv. 0432, 2009 WL 3124219 (S.D.N.Y. Sept. 29, 2009) ....................................... 6

*Morris v. Lee*,
   No. 08 CV 6673, 2011 WL 2947009 (S.D.N.Y. July 18, 2011) ........................................ 6

*N. Am. Soccer League, LLC v. U.S. Soccer Fed'n, Inc.*,
   883 F.3d 32 (2d Cir. 2018) ................................................................................................. 8

*Nat'l Coal. On Black Civic Participation v. Wohl*,
   498 F. Supp. 3d 457 (S.D.N.Y. 2020) ................................................................................ 8

*Reuters Ltd. v. United Press Int'l, Inc.*,
   903 F.2d 904 (2d Cir. 1990) ............................................................................................... 7

*USA-Halal Chamber of Com., Inc. v. Best Choice Meats, Inc.*,
   402 F. Supp. 3d 427 (N.D. Ill. 2019) ................................................................................. 8

**Statutes**

11 U.S.C. § 548 ............................................................................................................................ 6

U.C.C § 2A-402 ........................................................................................................................... 6

Plaintiff Frontier Airlines, Inc. ("Frontier") respectfully files this reply memorandum of law in further support of its application to convert the Court's temporary restraining order dated June 8, 2023 to a preliminary injunction. Filed contemporaneously are the July 12, 2023 Declaration of Paul Lambert (the "Second Lambert Decl.") and the July 12, 2023 Declaration of David M. Schoeggl.

## PRELIMINARY STATEMENT

Defendants'[1] opposition to Frontier's motion for preliminary injunction (ECF No. 79) ("Opposition") underscores the need to convert the existing TRO to a preliminary injunction that would continue to protect Frontier from having its Aircraft repossessed or grounded. Ignoring the Court's prior order (ECF No. 59), Defendants repeatedly assert that for Frontier to avoid having its airplanes repossessed or grounded, Frontier must sign away its ability to collect a judgment arising out of the Framework Agreement. Defendant's arguments are without legal or factual support.

On the merits, Defendants erect a strawman that the Leases do not provide Frontier a general-purpose security interest – something that Frontier has never claimed. They also argue that the Framework Agreement, a "sale-leaseback agreement," and the lawsuit before Judge Stanton are "entirely separate" from and "unrelated" to the Leases and the instant dispute, Opposition at 1-3, 12, 19-20, even though the Leases recognize that the Framework Agreement is part of an integrated contract suite by incorporating the concept of "other Lessee's Documents." Additionally, the Opposition suggests that an agreement named "Non-Waiver and Preservation of Rights Agreement," which states that "no Party shall be treated as having waived any contractual or extra contractual rights by engaging or participating in any Lease Administration Activity

---

[1] Capitalized terms not defined herein have the same meaning as specified in Frontier's Memorandum Of Law In Support Of Plaintiff's Application To Convert Temporary Restraining Order To Preliminary Injunction (ECF No. 71).

during the term of this Agreement," should be construed to waive Frontier's ordinary rights under the Leases. Defendants also suggest the Court should deny injunctive relief because their July 3 revised guaranty proposal (the "Revised Guaranty") addresses Frontier's concerns. While Frontier is willing to accept a meaningful unsecured guarantee in place of the rights they are being asked to forgo in the proposed transfer documents, the Revised Guaranty improperly seeks to impose new restrictions on Frontier's use of the Aircraft—which the Leases explicitly protect Frontier from having to accept in the context of a third-party transfer. Finally, the Opposition does not address Frontier's argument that it has the right under the UCC to suspend any cooperation until the damage done by Defendants' prior breaches is remedied.

Defendants also argue, absent legal support, that a party cannot obtain an injunction where the party faces harm that is so great that it has no choice but to back down. But those are the type of circumstances that most require the Court's intervention, not the barring of such intervention. Further, Defendants have demonstrated no significant harm if the injunction is granted, given the many ways in which the proposed transactions could proceed without harming Frontier's rights and without undue delay or expense to Defendants.

An injunction is appropriate here, and the Court should grant Frontier's application to convert the existing TRO into a temporary injunction through the end of trial of this matter.

## ADDITIONAL FACTUAL BACKGROUND

There have been two significant factual developments since Frontier filed its principal brief (ECF No. 71) ("Brief").

First, on July 6, 2023, Judge Stanton denied Defendants' motion for summary judgment as to Frontier's core claim for breach of the Framework Agreement against AMCK. *See* Decl. of David M. Schoeggl ¶ 2 & Ex. 1 ("Schoeggl Decl."). The court found that there were "clear questions of fact whether the parties [agreed] to suspend payments" under the Leases due to the

unforeseen circumstances of the COVID-19 pandemic and, if the parties had, then AMCK's subsequent non-performance was an unjustified breach of the Framework Agreement. *Id.* Ex. 1 at 21-25. Judge Stanton, however, dismissed the two trustee bank defendants because they were not signatories to the Framework Agreement. He also dismissed several other causes of action, largely because they were duplicative of that breach of contract claim. *Id.* Ex. 2.[2] Nevertheless, this order significantly increases Frontier's chances of obtaining a substantial judgment at trial. It also highlights the importance of Frontier being able to collect on a judgment as regards the Carlyle and AMCK defendants, because creditworthy trustee banks are no longer defendants. *See* Opp. at 3, 16, 22.

Second, Defendants very recently sent a proposal for a Revised Guaranty,[3] which improved some of the terms of the guaranty they had offered on March 24, 2023. Decl. of Freyda Mechlowicz (ECF No. 80) Ex. 12 ("Mechlowicz Decl."). The Revised Guaranty covers all defendants, rather than just the Carlyle defendants, provides that the guarantor submit quarterly certifications of net worth of at least $65 million, and states that the Guaranty would terminate only if Frontier quits paying rent. The Revised Guaranty also proposes mandatory arbitration for dispute resolution; which Frontier is willing to accept despite not being consistent with the terms of the Leases. However, the proposed Guarantor is a Carlyle-owned, special-purpose entity named Maverick Aviation (Ireland) DAC, and there remains no enforcement mechanism if the Guarantor fails to maintain an adequate net worth or files for bankruptcy. The Revised Guaranty also imposes

---

[2] Defendants attempt to paint Judge Stanton's ruling as a victory for them because a greater number of causes of action were dismissed than were retained. But the surviving breach of contract claim nevertheless allows Frontier to obtain a trial judgment for all of the damages it sought in its complaint. Said otherwise, the dismissal of other claims does not jeopardize Frontier's right to recovery, which is what matters here.

[3] Defendants provided Frontier with the Revised Guaranty on the evening of July 3, 2023, right before the July 4 holiday. They then repeatedly assert in their brief that Frontier "refused to respond" before their brief was due on July 6, 2023, just two business days later. Contrary to Defendants' assertion, Frontier remains willing to negotiate with Defendants in good faith.

3

several additional obligations on Frontier that are inconsistent with the Leases and industry standards.[4]

Notwithstanding the above provisions, on July 11, 2023, Frontier responded with a guaranty counterproposal that made only minimal revisions to Defendants' proposed Revised Guaranty. Second Lambert Decl. Ex. A. Principally, Frontier's counterproposal added an enforcement mechanism for the net worth requirement in the form of a "backup guaranty" or "springing guaranty"[5] from the entity that beneficially owns virtually all of the aircraft held by the primary Guarantor. *Id.* ¶¶ 5, 9-10. Frontier also offered to accept a backup guarantee from the Carlyle's ultimate parent company or another acceptable guarantor, or to accept a letter of credit or a bond in lieu of a backup guarantee. *Id.* ¶¶ 9-10. Frontier's counterproposal also addressed the extraneous obligations in Defendants' Revised Guaranty.[6]

---

[4] These obligations include:
- A requirement that Frontier move aircraft to whatever states Defendants dictate in order to help Defendants and the new purchasers avoid taxes (Paragraph 5(f)). This requirement directly violates the Leases and the Covenants of Quiet Enjoyment promised by all the Defendants and the prospective purchasers and is not industry-standard. *See* Lambert Decl. (ECF No. 72) Ex. 1 ¶¶ 4.3, 20.2(e).
- A new unspecified "cap" on Frontier's contractually guaranteed legal fees incurred in connection with reviewing proposed transaction terms and documentation between old and new lessors (Paragraph 5(g)). This term violates the Leases, which require that Frontier be paid at closing its "reasonable and invoiced out-of-pocket costs and expenses incurred in connection with its cooperation with Lessor" to effect the transfers. *See* Lambert Decl. Ex. 1 ¶ 20.2(a)(v); Ex. 2 ¶ 22.2(2).
- Numerous demands that Frontier agree not to include certain language in certain documents. Second Lambert Decl.¶ 8.

[5] Springing guaranties protect a party from a potential bankruptcy filing by or other insolvency of an entity and are enforceable under New York law. *See, e.g.*, *CT Inv. Mgmt. Co. v. Cozumel Caribe, S.A. de C.V. (In re Cozumel Caribe, S.A. de C.V.)*, 482 B.R. 96, 107 (Bankr. S.D.N.Y. 2012). The request for a springing guaranty is *de minimis* as long as Defendants ensure that the Guarantor remains adequately capitalized, because the springing condition will never come into effect.

[6] Frontier provided the following responses to the proposals outlined in footnote 4 above:
- Regarding Defendants' demand that Frontier locate the Aircraft in a location of their choosing at a specified time, Frontier proposed industry standard language agreeing to identify where the subject aircraft will be as part of their normal flight activities to facilitate closings in tax friendly jurisdictions. *See* Second Lambert Decl. ¶ 6.
- Regarding the reimbursement Frontier's out-of-pocket costs, Frontier instead proposed the language in the Leases limiting fees to "reasonable and invoiced" and agreed to make fee reasonableness disputes subject to binding arbitration. Second Lambert Decl. ¶ 7.
- The counterproposal accepts all of the specific demands for specified language to the extent they but clarifies that additional demands must be consistent with the terms of the Leases. Second Lambert Decl. ¶ 8.

**ARGUMENT**

I. **Defendants Fail To Address Frontier's Core Arguments On The Merits**

The Opposition sidesteps Frontier's core merits argument that the transfer documents Defendants have proposed violate Frontier's contractual rights not to sign transfer documents that create a "greater financial obligation or liability under [the Leases] and the other Lessee Documents . . . based on the facts and circumstances existing . . . at the time of the transfer" or that would "result in any restriction . . . on Lessee's rights under this Agreement or the other Lessee's Documents or on Lessee's use or operation of the Aircraft," ¶ 20.2(a)(i) (ii).  Instead, Defendants argue that Frontier does not have a general-purpose security interest in the Aircraft per the terms of the Leases.  Frontier, however, never asserted that it did, and thus the cases Defendants cite (at Opp. 19) are inapposite.  Frontier argues only that it has certain contractual and property rights, and that based on the existing facts and circumstances—*i.e.*, that Defendants and AMCK constructed a sale to strip AMCK Holdings of assets while subject to suit by Frontier, and then structured further transactions to require Frontier to subordinate its ability to attach its only remaining reliable source of payment (the Aircraft themselves) to the new transferees—Frontier's rights under the Leases and the Framework Agreement would be impermissibly restricted.[7]

Defendants also argue that the relief Frontier seeks is unavailable because Frontier could have sought prejudgment attachment of the Aircraft in the lawsuit before Judge Stanton.  But Defendants cite no authority for the proposition that Frontier was required to waive its contractual rights and instead seek prejudgment attachment.  And even if Frontier did seek to attach the Aircraft, such attachment would effectively prevent Carlyle from conducting subsequent transfers

---

[7] Defendants' argument that the Framework Agreement is "unrelated," and thus irrelevant, is specious.  As Frontier argued in its Brief, the Framework Agreement identifies itself as a "Lessee's Document," and the Leases protect Frontier's rights under not only the Leases themselves, but also under "other Lessee's Documents."  Br. at 11 & n.4.  The Court has already recognized that the breach of a Participation Agreement similarly related to the Leases is a breach of the Leases.  June 7, 2023 Opinion & Order (ECF No. 59) at 23.

of those Aircraft, whereas Frontier's approach has been to act reasonably to facilitate the transactions without impairing Frontier's rights.  Defendants do not specifically argue that if Frontier obtains a judgment from AMCK in the upcoming trial (which Defendants do not dispute may be insolvent to pay that judgment), it could not either seek to enforce that judgment against the Aircraft, *see* Br. at 15, or seek a constructive trust against the Aircraft, *see id.*, or pursue a federal fraudulent transfer claim against Defendants that could also implicate the Aircraft, *see* 11 U.S.C. § 548.

Defendants' other merits argument—that the Revised Guaranty is an adequate substitute for the protections Frontier is being asked to give away in the proposed transfers—is similarly misplaced.  First, the Revised Guaranty's net worth requirement is nothing more than window dressing without an enforcement provision, because it would still allow Defendants to do just what they did in the AMCK-Carlyle sale: strip the proposed guarantor of assets (or place it into bankruptcy) after a quarterly assets report and leave Frontier with empty shell judgment debtors <u>and</u> an insolvent guarantor.  The Revised Guaranty also improperly proposes multiple restrictions on "Frontier's use or operation of the Aircraft," which the Leases protect against.  *See supra* at 4 n.4 & Lambert Decl. Ex. 1 ¶ 20.2(a)(ii).  Frontier's counterproposal addresses these concerns while accepting the general framework Defendants have proposed.

Finally, Defendants do not even respond to Frontier's argument under UCC § 2A-402 that Defendants' prior contract breaches with regard to the past transfers suspend any obligation on Frontier's part to approve new transfers.  Br. at 16-17.  The UCC's provisions are consistent with the general principle under New York law that where "a breaching party's actions contribute materially to the nonoccurrence of the other party's duties, the nonoccurrence is excused." *Morris v. Lee*, No. 08 CV 6673, 2011 WL 2947009, at *1 (S.D.N.Y. July 18, 2011) (citing *Ixe Banco, S.A.*

6

*v. MBNA Am. Bank, N.A.*, No. 07 Cv. 0432, 2009 WL 3124219, at *6 (S.D.N.Y. Sept. 29, 2009) & Restatement (Second) Contracts § 245)). Here, the Court has already found based on the pleadings that Frontier had a contractual right to be notified of the AMCK-Carlyle sale and that the failure to do so violated the terms of both Lease forms. *See* June 7, 2023 Opinion & Order (ECF No. 59). Had Frontier received the required notice, Frontier would have required Defendants to address the Framework Agreement judgment payment issue in those earlier transfer documents. Just as a seller of goods who is not paid for a shipment of conforming goods can suspend its own further performance until the damage caused by the buyer's prior breach is cured, so too is Frontier entitled to stop facilitating future transfers until the damage caused by the contract-breaching prior transfers is cured.

## II. Frontier Faces Imminent Irreparable Harm, Whereas Any Harm Defendants Face Is Readily Addressed By Damages

The harm Frontier seeks to prevent is imminent under applicable legal standards. In *Reuters Ltd. v. United Press Int'l, Inc.*, 903 F.2d 904, 908-09 (2d Cir. 1990), for example, the Second Circuit found that the district court abused its discretion in finding that the movant, a U.S. newswire, did not face imminent harm because the ultimate ills the movant sought to enjoin—the loss of services of a foreign contractor—remained contingent on other events. Here, the only contingency between Frontier and the potential harms it faces is Defendants' willingness to deploy them. The prospective harm to Frontier is therefore imminent, particularly because Defendants have repeatedly refused (including in open Court when confronted with this question, *see See* Tr. of June 8, 2023 Hearing (ECF No. 78) at 24) to commit not to ground the Aircraft. S*ee* Lambert Decl. Ex. 19 at 2.

Defendants also argue that because Frontier would have no choice but to give into Carlyle's coercion absent an injunction, there is no imminent irreparable harm. This argument, unsupported

7

by any authority, is akin to arguing that a kidnapping poses no imminent harm to the victim because the victim can avoid being killed by paying the ransom. The situations Defendants describe are those in which a preliminary injunction is needed most – where, in the absence of an injunction, the moving party will suffer harm so severe that it has no choice but to acquiesce to the nonmoving party's demands.

Finally, Defendants' argument that the leases permit the default remedies that Frontier seeks to enjoin puts the cart before the horse. A necessary predicate to Frontier's application is that Frontier is likely to succeed in showing that the claimed default was improper, or that Frontier at least raises serious questions on the merits with a balance of equities and hardships substantially in Frontier's favor. *See* Br. at 10-11 (quoting *Nat'l Coal. On Black Civic Participation v. Wohl*, 498 F. Supp. 3d 457, 469 (S.D.N.Y. 2020) and *N. Am. Soccer League, LLC v. U.S. Soccer Fed'n, Inc.*, 883 F.3d 32, 37 (2d Cir. 2018)). Frontier has made that showing – meaning that Defendants' threatened actions should not be allowed.

It is appropriate to "weigh the irreparable harm that the moving party would endure without the protection of the preliminary injunction against any irreparable harm that the moving party would endure without the protection of the preliminary injunction against any irreparable harm the nonmoving party would suffer if the court were to grant the requested relief." *USA-Halal Chamber of Com., Inc. v. Best Choice Meats, Inc.*, 402 F. Supp. 3d 427, 433 (N.D. Ill. 2019); *see also Eli Lilly & Co. v. Arla Foods, Inc.*, 893 F.3d 375, 381 (7th Cir. 2018). Defendants face little or no imminent irreparable harm from a preliminary injunction. First, Defendants' only stated reason for rejecting the contract amendments Frontier proposed is their claim that their chosen buyers and banks "will not permit the subordination of a secured party's claim to Frontier's litigation claim." Mechlowicz Decl. ¶ 19. Defendants have not demonstrated that other potential banks or buyers

would not agree to these terms, or that Defendants could not provide alternative protections to these buyers in the event a judgment against AMCK makes executing against the Aircraft necessary. In addition, Defendants could clear the way for these transactions by either posting a bond or a letter of credit, which they have rejected for no reason other than the unsupported assertion that a letter of credit is a "substantial expense," Opp. at 3. Finally, Defendants have now filed their own lawsuit seeking damages against Frontier, under which they can collect damages if Frontier's conduct is found to be wrongful. Nowhere do Defendants even attempt to demonstrate that it has any particular need to complete the transfers now or that the extreme remedies it has threatened against Frontier are necessary to avoid irreparable harm.

### III. The Non-Waiver Agreement Does Not Support Defendants' Arguments

The "Non-Waiver and Preservation of Rights Agreement" ("Non-Waiver Agreement")—renamed the "Cooperation Agreement" by Defendants in their papers—does not help Defendants. The parties entered into the Non-Waiver Agreement to protect Frontier's rights against a claim of waiver of rights in this lawsuit (which challenges the AMCK-Carlyle sale and thus Defendants' ownership of the Aircraft) by engaging in day-to-day administration of the leases. Defendants' suggestion is that the Non-Waiver Agreement is actually a "Waiver Agreement," in which Frontier waived rights is belied not only by its title but by its express language. Specifically, a paragraph in the agreement not quoted in Defendants' opposition papers states:

> The Parties also wish to ensure that any rights and defenses in connection with the claims asserted in the Lawsuit that may have arisen for either Party will not be waived or adversely affected by participating and cooperating in Lease Administration Activities. Accordingly, unless otherwise agreed to in a writing executed by the relevant Parties, no Party shall be treated as having waived any contractual or extra contractual rights by engaging or participating in any Lease Administration Activity during the term of this Agreement.

Mechlowicz Decl. Ex. 3 ¶ 5. Contrary to Defendants' assertion, the plain text of the Non-Waiver Agreement imposes no obligations on Frontier beyond what is otherwise required under the

Leases. If anything, the Non-Waiver Agreement *protects* Frontier's rights by recognizing that Frontier cannot be forced to waive its claims in this lawsuit through Lease Administration Activities, as Defendants are now claiming it must.

### IV.   Frontier Does Not Seek An Overbroad Injunction And Does Not Object To Maintaining The Bond

Defendants argue that any injunction entered by the Court should not be so broad as to prevent them from grounding or repossessing the Aircraft were Frontier to commit future unrelated default such as not paying rent. Frontier agrees that the Court's injunction should not prohibit Defendants from exercising contractual remedies were Frontier to commit future legitimate defaults (such as not paying rent) unrelated to the issues in this lawsuit and the lawsuit before Judge Stanton. Nor does Frontier object to maintaining the previously ordered bond throughout the life of the injunction as argued in the Opposition.

### CONCLUSION

Frontier respectfully requests that the Court convert the existing temporary restraining order to a preliminary injunction running through this Court's final judgment on Frontier's Second Amended Complaint, as well as affording Frontier such other and further relief as the Court deems reasonable and proper under the circumstances.

Dated: July 12, 2023
　　　　New York, NY

　　　　　　　　　　　　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　　David Schoeggl (*admitted pro hac vice*)
　　　　　　　　　　　　　　　　　　　**LANE POWELL PC**
　　　　　　　　　　　　　　　　　　　601 S.W. Second Avenue
　　　　　　　　　　　　　　　　　　　Suite 2100
　　　　　　　　　　　　　　　　　　　Portland, Oregon 97204
　　　　　　　　　　　　　　　　　　　Telephone: (503) 778-2100
　　　　　　　　　　　　　　　　　　　Email: schoeggld@lanepowell.com

*/s/ Eric B. Fisher*
Eric B. Fisher
Gregory C. Pruden
Tessa B. Harvey
**BINDER & SCHWARTZ LLP**
366 Madison Avenue
Sixth Floor
New York, NY 10017
(212) 510-7008
efisher@binderschwartz.com
gpruden@binderschwartz.com
tharvey@binderschwartz.com

*Attorneys for Frontier Airlines, Inc.*

11