**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| FRONTIER AIRLINES, INC., | |
| Plaintiff, | |
| v. | Case No. 1:22-cv-02943 (PAE) |
| AMCK AVIATION HOLDINGS IRELAND LIMITED, ACCIPITER INVESTMENT 4 LIMITED, VERMILLION AVIATION (TWO) LIMITED, ACCIPITER HOLDINGS DAC, CARLYLE AVIATION MANAGEMENT LIMITED, MAVERICK AVIATION HOLDINGS LTD., MANCHESTER AVIATION FINANCE S.a.r.l., VERMILLION AVIATION HOLDINGS LIMITED, WELLS FARGO TRUST COMPANY, N.A., solely in its capacity as OWNER TRUSTEE, and UMB BANK, N.A., solely in its capacity as OWNER TRUSTEE, | |
| Defendants. | |

**<u>DECLARATION OF PAUL LAMBERT</u>**

I, Paul Lambert, declare as follows:

1.      I am a shareholder at the law firm of Lane Powell P.C., outside counsel for Plaintiff Frontier Airlines, Inc. ("Frontier") for its aircraft fleet management matters.  I have represented various airlines in their aircraft fleet transactions since 2001, and have handled the legal work for Frontier's aircraft fleet transactions since 2014.  I have personal knowledge of the matters set forth herein.

2.      My previous declaration, filed June 12, 2023 under Docket No. 72, described and attached Carlyle's initial guarantee proposal made on March 24, 2023, Frontier's counterproposal dated April 7, 2023, and Carlyle's April 24, 2023 revision making only non-material changes to

the March 24, 2023.  ECF No. 72, ¶¶ 36-38 & Exhibits 14-16.  The most significant dispute was that Carlyle's proposed guarantee was unsecured and relied on the Carlyle-controlled guarantor's willingness to honor its guarantee obligations and not declare bankruptcy or have its assets removed as was done with AMCK Holdings.  Carlyle rejected all of the multiple proposals we made to cure this deficiency in its proposed guarantee, including posting a bond, obtaining a letter of credit, or limiting Frontier's security interest to three aircraft so that the others could be freely transferred without the need to further protect Frontier's rights.

3.      On the afternoon of July 3, 2023 – the day before the Fourth of July holiday and when I was out of communication hiking in Yosemite National Park, we received the Revised Guaranty Proposal attached as Exhibit 12 to the Declaration of Freyda Mechlowicz.

4.      Frontier analyzed the July 3, 2023 Revised Guaranty Proposal as quickly as it could given the short week and prepared a counterproposal that attempted to accept as much of the Revised Guaranty Proposal as possible without impairing Frontier's rights under the leases.

5.      The Revised Guaranty Proposal added a periodic net worth verification requirement for the Carlyle-controlled special purpose entity guarantor, but did not include any enforcement mechanism if the guarantor were to fail to maintain the designated net worth.  Significantly, it did not propose anything that would address the above concerns that the guarantor will simply not honor its commitments due to a bankruptcy or lack of assets when Frontier tries to collect a judgment.  Thus, we added a paragraph providing for a backup guarantee by a trustworthy parent entity.  We identified the most logical backup guarantor but expressed willingness to substitute another trustworthy backup guarantor such as the main Carlyle investment company.  We also reiterated, in a comment, Frontier's prior offer to accept a letter of credit or a bond as a substitute for the contractual rights Frontier is being asked to give up.

6.      In addition, the Revised Guarantee Proposal added several new extra-contractual requirements that are not industry standard in my experience.  For example, it required Frontier to move the subject aircraft to jurisdictions directed by Carlyle for the purpose of avoiding taxes, regardless of whether the aircraft were going to be in those jurisdictions during regular use.  This would require Frontier to take aircraft out of already scheduled service and likely cancel flights, then incur the fuel and crew costs to fly the aircraft to the jurisdiction directed by Carlyle.  Such request is a direct violation of Frontier's quiet enjoyment right.  Airlines use their aircraft on pre-assigned schedules and cannot simply move or swap aircraft as the lessor wishes without causing major service disruptions.  To date, despite my request to Freyda Mechlowicz, Carlyle has rejected our requests to identify the jurisdictions it believes will allow it to avoid taxes so that Frontier can verify the extent and cost of this requested extracontractual imposition. In my experience, it is not industry standard for an aircraft lessor to demand that an airline agree to such a significant restriction on its use of a leased aircraft.  In an effort to provide the most cooperation possible, I notified Ms. Mechlowicz of the eight states with the highest levels of Frontier flight activity and we modified the guarantee language to incorporate industry standard terms requiring Frontier to disclose the aircrafts' locations to facilitate the transfers.

7.      The Revised Guaranty Proposal also demanded that Frontier agree to an unspecified "cap" on its legal fees incurred as a result of a transfer requests.  This is not industry standard.  In the leases at issue here – together with the leases Frontier and other of my clients enter into -- the provisions governing airline cooperation with transfers are generally set up so that the airline will cooperate with the transfers so long as they do not reduce the airlines' rights, restrict the airlines' operations, or cost the airlines money.  Thus, the leases at issue here all require that Frontier be reimbursed in full for its "reasonable and invoiced out-of-pocket" legal fees without any

requirement of a cap. We sent Carlyle an invoice on March 9, 2023 for fees incurred up to that date, and Carlyle has failed to pay any portion of it despite repeated requests. For these reasons, we modified the language to replace the "cap" with commitments that reflect the terms of the Leases and the industry standard. We also agreed to Carlyle's proposed mandatory arbitration clause, which is broadly written and would encompass any disputes about the reasonableness of such fees.

8.      Finally, the Revised Guaranty Proposal required that Frontier agree to remove certain language from prior draft agreements designed to protect Frontier's ability to collect a judgment in the Framework Agreement lawsuit. Removing this language is acceptable to Frontier so long as an adequate guarantee is provided as a substitute for this protection. However, the Revised Guarantee Proposal also seemed to require that Frontier agree to other yet-unspecified terms. We therefore added language clarifying that any such additional terms would need to be consistent with the Leases.

9.      I sent Frontier's Revised Guaranty Counterproposal to Carlyle on July 11, 2023 with comments explaining the reasons for our changes, and a cover email explaining that a backup guarantor is justified "due to Carlyle's prior cooperation with raiding AMCK Holdings of assets to avoid paying a judgment and the very real risk that Carlyle could put the Guarantor into bankruptcy or raid that company of assets between the quarterly reports."

10.     My July 11, 2023 email also explained that we had designated as an acceptable backup guarantor the entity Ms. Mechlowicz had identified to us (in emails dated January 6, 2023 and February 15, 2023 as the near-100% beneficial owner of the aircraft at issue, but that Frontier was willing to be flexible regarding substituting another appropriate backup guarantor or a letter of credit or bond as I had previously proposed. A copy of Frontier's July 11, 2023 counterproposal

and my cover email are attached as Exhibit A

11.     Copies of the organization chart Ms. Mechlowicz sent to me on January 6, and her February 15, 2023 email identifying the upstream owner of the entity with a near-100% share are attached as Exhibits B and C.  At Defendants' request, these exhibits are being filed under seal.

12.     Paragraphs 25 and 26 of Ms. Mechlowicz's July 7, 2023 Declaration (ECF No. 80) suggests that Frontier delayed for nearly two months and ignored eight requests to provide a draft lease assignment.  This is an incomplete and misleading description of these events. Beginning on November 23, 2022, my office made repeated requests to Ms. Mechlowicz for industry-standard supporting information about the proposed lease assignments, including net worth of the proposed parties, the deal structure, an organization chart, guarantor information, required KYC (Know Your Customer) information, etc.  As explained in my November 23, 2022 letter (which was attached as Exhibit 8 to my June 12, 2023 declaration) and subsequently, we needed this information to determine whether and how the proposed transfers might impair Frontier's rights and what if anything Frontier needed to add to the transfer documents to protect itself.  I repeatedly explained that Frontier could not prepare draft lease assignments acceptable to it without first receiving this information.  Ms. Mechlowicz first told me that this information was none of Frontier's business because the transfers were not actually transfers under the leases, but later pivoted to conceding that the transfers were in fact transfers, but denying that Frontier needed the information.  Even after they agreed to provide some information about the proposed transactions, the information they initially provided was incomplete and required multiple follow-ups.  Copies of emails relating to these issues that we sent to Carlyle between December 2022 and May 2023 are attached as Exhibit D.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: July 12, 2023

DocuSigned by:

*Paul Lambert*

Paul Lambert