# Exhibit A

| | |
|---|---|
| **Subject:** | Carlyle / Frontier - updated guaranty proposal |
| **Date:** | Tuesday, July 11, 2023 at 2:59:50 PM Pacific Daylight Time |
| **From:** | Lambert, Paul M. |
| **To:** | Mechlowicz, Freyda |
| **CC:** | Schwartz, Jed, Schoeggl, David |
| **Priority:** | High |
| **Attachments:** | Updated Proposal Regarding Documentation and Guaranty Frontier v.6 230711 clean.docx, Updated Proposal Regarding Documentation and Guaranty Frontier v.6 230711.docx |

Hi Freyda,

Attached is a counterproposal to your July 3 improved guarantee proposal, in clean and redline formats. Our counterproposal makes minor language changes for clarity and to conform the guarantee to the lease terms where necessary. It also adds in paragraph (3) a backup guarantor, made necessary due to Carlyle's prior cooperation with raiding AMCK Holdings of assets to avoid paying a judgment and the very real risk that Carlyle could put the Guarantor into bankruptcy or raid that company of assets between the quarterly reports. We made the backup guarantor the entity you identified to us on February 15, 2023 as the effective 98.04% beneficial owner of the leased aircraft, but – as indicated in the comment – are willing to be flexible regarding this entity.

Please let us know as soon as possible if this is acceptable so that we can notify the court that the July 18 hearing is unnecessary. Or, if you wish to discuss individual terms, we are available this week for a call.

Best regards,

Paul

**PAUL M. LAMBERT**
**Shareholder**  Bio | vCard
lambertp@lanepowell.com
**D** 206.223.7724  **C** 425.213.6748
**LANEPOWELL.COM**

7/3/23

<u>Carlyle/Frontier – Proposal Regarding Documentation and Guaranty</u>

The following is a description for discussion purposes of Carlyle's proposal to resolve open points in the documentation requested by Carlyle on behalf of the lessors of the Frontier aircraft in connection with security assignments, transfers among affiliates within the Maverick group and transfers to third party buyers.

(1) Subject to the conditions set out in this summary, a Maverick entity will provide a guaranty (the "**Guaranty**") in favor of Frontier as to amounts that are owed (if any) by any entity which is a defendant as of the date hereof in the action captioned *Frontier Airlines, Inc. v. AMCK Aviation Holdings Ireland Limited, et al.*, No. 20 Civ. 9713 (LLS), pending in the United States District Court for the Southern District of New York (the "**Action**"), to the extent determined to be owed to Frontier in such Action pursuant to a final, non-appealable judgment (including, to the extent a defendant is a debtor in a bankruptcy, any such amounts described in the foregoing that are allowed claims in such bankruptcy case) (the "**Guaranteed Amounts**").
  a. A Guaranteed Amount would be payable under the Guaranty in accordance with the following procedure: (a) a demand has been made under a final non-appealable money judgment and has not been paid by within 30 days of the date of such demand; and (b) following the end of such period (if such amount was not paid), Frontier may make a written demand under the Guaranty, and the Guarantor will pay the relevant Guaranteed Amount within 10 business days of such demand. No demand may be made under the Guaranty after the Termination Date.
  b. The Guaranty will be provided in addition to and separate from, and not in lieu of, any guaranty of the lessor's obligations under a Lease that is provided in accordance with the Lease.

(2) The guarantor will be Maverick Aviation (Ireland) DAC (the "**Guarantor**"), an investment vehicle managed by Carlyle Aviation Partners and 98.04% owned by CPPIB Credit Structured North America IV, Inc.

(1) The Guarantor will represent and warrant that it has, and covenant that it will maintain until the Termination Date, a net worth of at least $65 million, determined in accordance with GAAP consistently applied. Within 10 business days of the end of each quarter, the Guarantor will provide Frontier with a certificate from the treasurer or other senior officer certifying that the Guarantor's net worth is at least $65 million and attaching a copy of the Guarantor's latest quarterly financial statement.

(2) The Guaranty will terminate on the earliest date (the "**Termination Date**") that one of the following occurs: (a) the satisfaction in full of any money judgment in favor of Frontier in the Action, (b) the determination in final, nonappealable judgments that no amounts are payable to Frontier by any defendant in the Action, (c) the Action is settled

and (d) Frontier breaches a Beneficiary Obligation or breaches any of its payment obligations under any of the Leases.

(3) If the Guarantor fails to make a payment required by paragraph (1) a. (b) above, whether due to bankruptcy, failure to maintain adequate net worth as provided in paragraph (3) above, or for any other reason, CPPIB Credit Investments Inc. (the beneficial owner of CPPIB Credit Structured North America IV, Inc., which owns 98.04% of Guarantor)shall serve as backup guarantor and shall, within 30 days of any such failure, make any payment required by this Guarantee that Guarantor has failed to make.

(4) Frontier will agree in the Guaranty to certain conditions precedent to the Guaranty and to comply with certain obligations (the "**Beneficiary Obligations**"), which will include:
   a. On the date of the Guaranty, as a condition to execution and delivery of the Guaranty, Frontier will be required to execute and deliver to each relevant lessor an acknowledgment of a notice of security assignment relating to each of the 14 aircraft. The notice of security assignment will comply with the terms of the applicable Leases, and will not contain any language referring to the Action or any other litigation and, specifically, the paragraph in the notice currently requested that refers to the Action and subordination will not be included in the executed notices, and no FAA filing of such notices will be made. The applicable forms will be attached to the Guaranty.
   b. Frontier's signatures referred to above will be held in escrow, but Frontier will provide (as a condition to the execution and delivery of the Guaranty) authorization to Carlyle to release such signatures upon release by the parties thereto of the fully executed and dated notice relating to such acknowledgement and, in the case of the three aircraft (the "**TL (D) Aircraft**") being moved into Maverick Aviation TL (D) Limited, the delivery to Frontier of the replacement lessor guaranty by Maverick Aviation Borrower 1 Ltd.
   c. Frontier will agree to execute and deliver a Master Assignment for each of the TL (D) Aircraft in substantially the form that will be attached to the Guaranty, subject to reasonable changes required by the owner trustee parties or FAA counsel. The form will comply with the terms of the applicable Leases, and will not include descriptions of the Action in the FAA filed portion of the document (except to the extent FAA counsel advises that the relevant language cannot be redacted). The form will not include the words "and will continue to have" referring to the net worth of the lessor guarantor in the Master Assignment or in the lessor guaranty form attached to it, and the form of lessor guaranty will not include the requested sentence that starts "For clarity, the "Guaranteed Obligations" include…". Frontier will cooperate to expeditiously transfer the trusts to TL (D).
   d. Frontier will agree to execute and deliver an owner participant assignment agreement, or an owner trustee and owner participant assignment agreement (as applicable) to effect the sale of the four aircraft identified to them to be sold to third parties (the "**Sale Aircraft**") in a form that will be a market standard form, will comply with the terms of the applicable Leases, and will provide that no claim or liability in respect of the Action will be assigned to or assumed by a third party buyer entity (e.g., the new owner participant or new guarantor), and all such

claim or liability will be retained by the prior owner participant and related lessor guarantor. The forms for each of such aircraft will be attached to the Guaranty, subject to reasonable changes required by the owner trustee parties or FAA counsel.

e. With respect to the aircraft that are not TL (D) Aircraft nor Sale Aircraft (the "**Other Aircraft**", provided that the Other Aircraft will include each TL (D) Aircraft or Sale Aircraft for which the anticipated transaction referred to above does not occur for any reason), Frontier will agree to execute and deliver documentation (i.e., security notice and acknowledgment, Master Assignment reflecting a change in owner trustee and/or owner participant to an affiliate with a replacement guaranty, or assignment of trustee and/or owner participant to a third party buyer) substantially in the same form as the applicable forms referred to above in connection with financings or sales of such Other Aircraft, or other documentation containing customary market standard terms as they relate to Frontier and that comply with the terms of the applicable Leases, subject to receipt by Frontier of appropriate and market standard evidence of net worth of any applicable replacement guarantor (if any) as meeting the net worth required of a lessor guarantor under the applicable lease.

f. Frontier will also agree to provide certificates of insurance and related broker's letters of undertaking for each such Other Aircraft reflecting the updated insurance requirements set forth in the documentation referred to in clause (c), (d) or (e) in compliance with the terms of the applicable Leases. and on reasonable notice to Frontier, Frontier will provide customary market standard cooperation in identifying the locations of the relevant Other Aircraft for purposes of promptly closing a transaction contemplated by this clause (c), (d) or (e) in a jurisdiction in the continental United States that is acceptable to the applicable lessor.

g. The Guaranty will include a commitment by Guarantor to pay Frontier's past and future reasonable and invoiced out-of-pocket costs and expenses, including reasonable legal fees, relating to the transactions and documentation referred to above in clauses (c), (d), (e) and (f).

h. The parties will appoint an aviation expert not affiliated with Carlyle or Frontier as an arbitrator for binding resolution of any dispute between Frontier and a lessor, owner participant, lessor guarantor or the Guarantor, or any of their affiliates (in each case so long as such entities are affiliates of the Guarantor), relating to the finalization or execution and delivery of any of the documentation referred to above in clause (c), (d), (e) or (f), or any other matter under the leases or relating to the Guaranty.

(5) A condition of this Guaranty is that both of the following actions are dismissed with releases for all parties in the actions captioned (i) *Frontier Airlines, Inc. v. AMCK Aviation Holdings Ireland Limited*, No. 22 Civ. 02943 (PAE), and (ii) *Carlyle Aviation Management Limited, et al. v. Frontier Airlines, Inc.*, No. 23 Civ. 04774 (PAE), both of which are pending in the United States District Court for the Southern District of New York.

- 4 -

(6) A condition of this Guaranty is that the May 26, 2023 Notices of Default are withdrawn and no further Notices of Default are sent based on any matters subject to arbitration in paragraph (6) h. above (except as directed by the arbitrator).

7/3/23

Carlyle/Frontier – Proposal Regarding Documentation and Guaranty

The following is a description for discussion purposes of Carlyle's proposal to resolve open points in the documentation requested by Carlyle on behalf of the lessors of the Frontier aircraft in connection with security assignments, transfers among affiliates within the Maverick group and transfers to third party buyers.

(1) Subject to the conditions set out in this summary, a Maverick entity will provide a guaranty (the "**Guaranty**") in favor of Frontier as to amounts that are owed (if any) by any entity which is a defendant as of the date hereof in the action captioned *Frontier Airlines, Inc. v. AMCK~~L~~ Aviation Holdings Ireland Limited, et al.*, No. 20 Civ. 9713 (LLS), pending in the United States District Court for the Southern District of New York (the "**Action**"), to the extent determined to be owed to Frontier in such Action pursuant to a final, non-appealable judgment (including, to the extent a defendant is a debtor in a bankruptcy, any such amounts described in the foregoing that are allowed claims in such bankruptcy case) (the "**Guaranteed Amounts**").

> **Commented [SD1]:** Added to clarify that the guarantee covers a judgment against any defendant

   a. A Guaranteed Amount would be payable under the Guaranty in accordance with the following procedure: (a) a demand ~~from the applicable defendant~~ has been made under a final non-appealable ~~n enforceable~~ money judgment and has not been paid by ~~or on behalf of such defendant~~ within 30 days of the date of such demand; and (b) following the end of such period (if such amount was not paid), Frontier may make a written demand under the Guaranty, and the Guarantor will pay the relevant Guaranteed Amount within 10 business days of such demand. No demand may be made under the Guaranty after the Termination Date.

> **Commented [SD2]:** Added to clarify and to use consistent definition of judgment

   b. The Guaranty will be provided in addition to and separate from, and not in lieu of, any guaranty of the lessor's obligations under a Lease that is provided in accordance with the Lease.

(2) The guarantor will be Maverick Aviation (Ireland) DAC (the "**Guarantor**"), an investment vehicle managed by Carlyle Aviation Partners and 98.04% owned by CPPIB Credit Structured North America IV, Inc.

> **Commented [SD3]:** This is an accurate description taken from Carlyle's 12/23/21 press release and the Maverick Org Chart

(1) The Guarantor will represent and warrant that it has, and covenant that it will maintain until the Termination Date, a net worth of at least $65 million, determined in accordance with GAAP consistently applied. Within 10 business days of the end of each quarter, the Guarantor will provide Frontier with a certificate from the treasurer ~~the chief financial an officer~~ or other senior officer ~~authorized representative~~ certifying that the Guarantor's net worth is at least $65 million and attaching a copy of the Guarantor's latest quarterly financial statement.~~.~~

> **Commented [DS4]:** This is industry standard language that is used in the leases

> **Commented [SD5]:** This is industry standard language that is used in the leases

(2) The Guaranty will terminate on the earliest date (the "**Termination Date**") that one of the following occurs: (a) the satisfaction in full of any money judgment in favor of Frontier in the Action, (b) the determination in final, nonappealable judgments that no amounts are payable to Frontier by any defendant in the Action, (c) the Action is settled

and (d) Frontier breaches a Beneficiary Obligation or breaches any of its payment obligations under any of the Leases.

~~(2)~~(3)   If the Guarantor fails to make a payment required by paragraph (1) a. (b) above, whether due to bankruptcy, failure to maintain adequate net worth as provided in paragraph (3) above, or for any other reason, CPPIB Credit Investments Inc. (the beneficial owner of CPPIB Credit Structured North America IV, Inc., which owns 98.04% of Guarantor) shall serve as backup guarantor and shall, within 30 days of any such failure, make any payment required by this Guarantee that Guarantor has failed to make.

> **Commented [SD6]:** Frontier is willing to change "backup guarantor" to "springing guarantor" if preferred. Frontier is also willing to substitute either The Carlyle Group Inc. or another reliable company acceptable to Frontier as a backup guarantor. Finally, Frontier is willing to accept either a bond or a letter of credit in lieu of a backup guarantor.

~~(3)~~(4)   Frontier will agree in the Guaranty to certain conditions precedent to the Guaranty and to comply with certain obligations (the "**Beneficiary Obligations**"), which will include:

   a. On the date of the Guaranty, as a condition to execution and delivery of the Guaranty, Frontier will be required to execute and deliver to each relevant lessor an acknowledgment of a notice of security assignment relating to each of the 14 aircraft.  The notice of security assignment will comply with the terms of the applicable Leases, and will not contain any language ~~that is non-standard~~ referring to the Action or any other litigation and, specifically, the paragraph in the notice currently requested that refers to the Action and subordination will not be included in the executed notices, and no FAA filing of such notices will be made.  The applicable forms will be attached to the Guaranty.
   b. Frontier's signatures referred to above will be held in escrow, but Frontier will provide (as a condition to the execution and delivery of the Guaranty) authorization to Carlyle to release such signatures upon release by the parties thereto of the fully executed and dated notice relating to such acknowledgement and, in the case of the three aircraft (the "**TL (D) Aircraft**") being moved into Maverick Aviation TL (D) Limited, the delivery to Frontier of the replacement lessor guaranty by Maverick Aviation Borrower 1 Ltd.
   c. Frontier will agree to execute and deliver a Master Assignment for each of the TL (D) Aircraft in substantially the form that will be attached to the Guaranty, subject to reasonable changes required by the owner trustee parties or FAA counsel.  The form will comply with the terms of the applicable Leases, and will not include descriptions of the Action in the FAA filed portion of the document (except to the extent FAA counsel advises that the relevant language cannot be redacted).  The form will not include the words "and will continue to have" referring to the net worth of the lessor guarantor in the Master Assignment or in the lessor guaranty form attached to it, and the form of lessor guaranty will not include the requested sentence that starts "For clarity, the "Guaranteed Obligations" include…".  Frontier will cooperate to expeditiously transfer the trusts to TL (D).
   d. Frontier will agree to execute and deliver an owner participant assignment agreement, or an owner trustee and owner participant assignment agreement (as applicable) to effect the sale of the four aircraft identified to them to be sold to third parties (the "**Sale Aircraft**") in a form that will be a market standard form, will comply with the terms of the applicable Leases, and will provide that no

- 2 -

claim or liability in respect of the Action will be assigned to or assumed by a third party buyer entity (e.g., the new owner participant or new guarantor), and all such claim or liability will be retained by the prior owner participant and related lessor guarantor.  The forms for each of such aircraft will be attached to the Guaranty, subject to reasonable changes required by the owner trustee parties or FAA counsel.

e.  With respect to the aircraft that are not TL (D) Aircraft nor Sale Aircraft (the "**Other Aircraft**", provided that the Other Aircraft will include each TL (D) Aircraft or Sale Aircraft for which the anticipated transaction referred to above does not occur for any reason), Frontier will agree to execute and deliver documentation (i.e., security notice and acknowledgment, Master Assignment reflecting a change in owner trustee and/or owner participant to an affiliate with a replacement guaranty, or assignment of trustee and/or owner participant to a third party buyer) substantially in the same form as the applicable forms referred to above in connection with financings or sales of such Other Aircraft, or other documentation containing customary market standard terms as they relate to Frontier and that comply with the terms of the applicable Leases, subject to receipt by Frontier of appropriate and market standard evidence of net worth of any applicable replacement guarantor (if any) as meeting the net worth required of a lessor guarantor under the applicable lease.

f.  Frontier will also agree to provide certificates of insurance and related broker's letters of undertaking for each such Other Aircraft reflecting the updated insurance requirements set forth in the documentation referred to in clause (c), (d) or (e) in compliance with the terms of the applicable Leases. and on reasonable notice to Frontier, Frontier will provide customary market standard cooperation in identifying the locations of locate the relevant Other Aircraft in a jurisdiction in the continental United States that is acceptable to the applicable lessor for purposes of promptly closing a transaction contemplated by this clause (c), (d) or (e) in a jurisdiction in the continental United States that is acceptable to the applicable lessor.

> **Commented [DS7]:** Changed to reflect industry standard terms regarding location of aircraft.  Requiring Frontier to relocate aircraft to inconvenient locations to help Carlyle and its counterparties avoid paying taxes would be a clear breach of the Quiet Enjoyment letters that Carlyle and the other entities have all signed or will all sign.

f.

g.  The Guaranty will include a commitment by Guarantor to pay Frontier's past and future reasonable and invoiced out-of-pocket costs and expenses, including reasonable legal fees, n agreed cap on Frontier's costs and expenses (including legal fees and expenses) relating to the transactions and documentation referred to above in clauses (c), (d), (e) and (f).

> **Commented [SD8]:** Modified to use the language from the leases, ¶ 20.2(a)(v).  Any disputes about reasonableness are subject to arbitration under paragraph h.

g.

a. h. The parties will appoint an aviation expert not affiliated with Carlyle or Frontier as an arbitrator for binding resolution of any dispute between Frontier and a lessor, owner participant, lessor guarantor or the Guarantor, or any of their affiliates (in each case so long as such entities are affiliates of the Guarantor), relating to the finalization or execution and delivery of any of the documentation referred to above in clause (c), (d), (e) or (f), or any other matter under the leases or relating to the Guaranty.

(5) A condition of this Guaranty is that both of the following actions are dismissed with releases for all parties in the actions captioned (i) *Frontier Airlines, Inc. v. AMCK Aviation Holdings Ireland Limited*, No. 22 Civ. 02943 (PAE), and (ii) *Carlyle Aviation Management Limited, et al. v. Frontier Airlines, Inc.*, No. 23 Civ. 04774 (PAE), both of which are pending in the United States District Court for the Southern District of New York.

~~(4)~~(6)   A condition of this Guaranty is that the May 26, 2023 Notices of Default are withdrawn and no further Notices of Default are sent based on any matters subject to arbitration in paragraph (6) h. above (except as directed by the arbitrator).

- 4 -

~~#4859-5395-3645v4~~