

Eric B. Fisher
Binder & Schwartz LLP
675 Third Avenue  26th Floor
New York, NY 10017

(T) 212.933.4551
(F) 212.510.7299
efisher@binderschwartz.

August 7, 2023

<u>By ECF</u>

Hon. Paul A. Engelmayer
United States District Court
Southern District of New York
40 Foley Square, Room 2201
New York, NY 10007

> Re:  *Frontier Airlines, Inc. v. AMCK Aviation Holdings Ireland Ltd., et al.*, No. 1:22-cv-02943 [rel. 1:23-cv-04774] (PAE) – Frontier's Response to Defendants' Proposed Guarantee Sent August 1, 2023

Dear Judge Engelmayer:

We represent Frontier Airlines, Inc. ("Frontier") in the above-captioned proceeding.

The Court stated its intention at the July 18, 2023 hearing to work with the parties to "evaporate the emergency relief."  ECF No. 104 (July 18, 2023 Transcript ("Tr.")) 43:13-44:6.  The Court stated that "a durable, ironclad guarantee [of the obligation to pay any judgment entered in the case before Judge Stanton] that, once committed to, is outside of defendants' control and assured a recovery" would obviate the need for both of the actions pending before the Court.  *Id.* at 21:15-17.  Frontier agrees.  Defendants similarly seem to agree:  they submitted proposed terms of a guarantee to Frontier on August 1, 2023 ("Defendants' Proposed Guarantee"), that they then claimed in their Rule 59(e) motion dated August 2, 2023 fulfills the Court's conditions set out at the July 18 hearing.  *See* ECF No. 109 (Defs.' Mem. of Law in Support of Motion to Alter or Amend Judgment) at 12-13.  But contrary to the Court's direction, Defendants' Proposed Guarantee is not "outside of Defendants' control," nor does it "assure[] a recovery should" Frontier prevail in the case pending before Judge Stanton.  To assist the Court, Frontier has presented an alternative guarantee—attached as Exhibit 1—that (1) meets the Court's conditions; and (2) is in a form that Frontier and the owner-participant defendants have already agreed to use in similar contexts under the Leases.

For the reasons set forth below, the Court should decline to dissolve the preliminary injunction unless Defendants withdraw their notices of default and provide a guarantee in substantially the form of Exhibit 1.  In the alternative, should the Court decide to work with Defendants' Proposed Guarantee, the Court should at minimum require several substantive changes necessary to come closer to the Court's guidance at the July 18, 2023 hearing regarding the appropriate terms of a guarantee.



### Frontier's Proposed Guarantee

During the July 18, 2023 hearing, the Court asked whether, prior to the parties' dispute, there were "agreements that Frontier and AMCK had entered into with respect to transfers and assignments that could be used as some sort of go by or model." Tr. 53:4-7.  The Court went on to state that it could be useful to use a prior agreed document or industry standard as a model. Tr. 53:24-54:2.

Lease Form 1 contains such a model, as it requires the "owner participant," the direct party in interest, to provide a written guarantee to Frontier to secure the obligations of the nominal lessor, a trustee bank, under the Leases.  *See* ECF No. 72-1 ("Lease Form 1") ¶ 3.3(f). And, upon a sale or transfer of the aircraft, the Leases explicitly require the transferees to "unconditionally guaranty the obligations of Lessor under this Agreement pursuant to a Guarantee in form substantially similar to the Guarantee executed by Owner Participant in favor of Lessee" unless the prior owner keeps its guarantee in place.  *Id.* ¶ 20.2(a)(iii).  Frontier and AMCK even carefully defined the term "guarantee" to include an "obligation" for "any indebtedness of any other person."  *Id.* ¶ 1.2(a)(xiii).

In other words, AMCK signed such a guarantee using an agreed form that can be easily adapted to fit the situation here, and Defendants were contractually obligated to use a substantially similar form when they purchased the subject aircraft from AMCK.  That form is similarly appropriate for this guarantee.

Exhibit 1 is adapted from the form of guarantee set forth in Lease Form 1, and Exhibit 2 is a redline comparison between Exhibit 1 and Defendants' proposal.  Most notably, Frontier's Proposed Guarantee identifies the guarantor as a non-Carlyle-controlled entity.  That entity is the indirect owner of nearly 100% of the aircraft at issue in these proceedings.  *See* ECF No. 87-2. Defendants' proposed guarantor, in contrast, is a special-purpose entity entirely controlled by Carlyle that, as is apparent from the balance sheet provided by Carlyle, exists only as a conduit between its ultimate owner and its subsidiaries.  Replacing Maverick with the guarantor identified in Exhibit 1 is essential to make the guarantee a "durable, ironclad guarantee" that is "outside Defendants' control."  The Court should therefore condition any dissolution of the preliminary injunction on Defendants' serving and filing an executed version of Exhibit 1.

### Deficiencies in Defendants' Proposed Guarantee

In the July 18, 2023 hearing, the Court noted that Frontier should:

look at exactly what the guarantee looks like because they are at liberty to litigate and say, wait a minute, there is a hole here. There is a scenario here under which we stand unprotected.

Tr. 44:3-6.  Even if the Court is inclined to work from Defendants' Proposed Guarantee (which departs from the form of guarantee previously used by these same parties), the Court should at



minimum require Defendants to adopt the significant alterations to Defendants' Proposed Guarantee described below.

**Defendants' Proposed Guarantor Is Not Outside Of Their Control.**  Defendants' proposed guarantor, Maverick Aviation (Ireland) DAC[1] ("Maverick"), is a wholly owned subsidiary of Maverick Aviation Partnership LP, "an investment vehicle managed by Carlyle Aviation Partners" that "acquire[d] AMCK Aviation's ("AMCK") portfolio of aircraft."[2]  Thus, the proposed guarantor is completely within Defendants' control, such that Defendants can remove its assets, place it into bankruptcy, or even simply dissolve the company at will.  And, because the guarantor is a special-purpose entity with no goodwill or business activity of its own, taking any of those actions would have minimal effect on Defendants' business operations.

The concern that Defendants might do this is not unrealistic.  Most recently, in 2022, it appears three entities owned by Carlyle Aviation Partners were wound up into bankruptcy for non-payment on loans held by Nord LB, a German bank.[3]  A guarantee by Carlyle-controlled Maverick would also allow a situation similar to the AMCK-Carlyle transfer:  transfer the company's assets away for inadequate consideration, leaving the guarantor unable to fulfill its obligations.  The quarterly net worth certifications proposed by Defendants would not stop them from doing this.  Defendants' Proposed Guarantee is therefore not outside Carlyle's control.

**The Net Worth Certification Provided By Defendants Raises Serious Questions.** Defendants propose to demonstrate Maverick's creditworthiness through the provision of a quarterly net worth certificate.  Defendants attached the first such net worth certificate to the draft of Defendants' Proposed Guarantee that they sent to Frontier on August 2.  *See* Ex. 4.  However, the certification provided by Defendants raises more questions than it answers, casting doubt on the value of Defendants' Proposed Guarantee.

First, nearly all of Maverick's assets are attributable to a "Capital Contribution" from its parent, which was then passed through to various, unidentified subsidiaries in the form of equity investments.  *See* Decl. of Josh Wetzel ¶¶ 3, 5.  Although including a capital contribution on a balance sheet is not inherently problematic, Maverick's net worth certificate contains a puzzling qualification:  "all contributions from the parent are classified as equity."  This appears to be in contravention of U.S. Generally Accepted Accounting Principles.  *Id.* ¶¶ 2-3.  If the capital contributions that the parent company made to Maverick were not made in exchange for equity (as the disclaimer suggests), and instead were in the form of a loan or other debt instrument, then the balance sheet misleadingly omits an offsetting liability, and Maverick's supposed net assets

---

[1] DAC stands for "Designated Activity Company" – *i.e.*, a special-purpose entity.

[2] https://www.carlyle.com/media-room/news-release-archive/carlyle-aviation-partners-affiliate-buy-amck-aviation's-portfolio (last accessed August 7, 2023); *see also* ECF Nos. 87-2 and 87-3 (emails from Defendants' counsel with organization charts showing that Maverick Aviation Partnership LP owns 100% of Maverick Aviation (Ireland) DAC).

[3] *See* Ex. 4, John Mulligan, *German bank gets approval from High Court to wind up Irish jet units*, Independent.ie, Aug. 3, 2022.  The companies appear to have been special-purpose, Irish-registered entities, similar to the proposed guarantor.



immediately vanish. *Id.* ¶¶ 3-4. Mr. Wetzel, Frontier's Chief Accounting Officer, points out that the balance sheet does not comply with U.S. GAAP and contains a payable "intercompany interest" coupon in an amount that suggests that the capital contribution made by Maverick's parent *was* a loan. *Id.* ¶ 3.

Second, the net worth certificate does not provide adequate assurance of Maverick's financial condition or ability to pay, even as of today. The net worth certificate contains no footnotes that explain the included entries, many of which are opaque. Descriptions such as "Investment in Subsidiaries" and "Investment in E-Note" provide no information about the quality of the assets captured. Audited financial statements would contain substantial explanation of these asset entries, including, potentially, additional balance sheets breaking down these categories of claimed assets. *Id.* ¶ 5. Given that these asset entries are highly material to the balance sheet's stated net asset position, the lack of additional explanatory information makes the un-audited balance sheet provided by Maverick of little value or significance. *Id.* ¶ 6.

Simply put, Maverick's first balance sheet and net worth certificate do not comply with U.S. GAAP or inspire confidence that Maverick will maintain collectible assets sufficient to allow it to pay in the future. As described above, Carlyle has previously removed assets from entities owning leased aircraft in order to avoid obligations. The same situation could occur here. Maverick is a special-purpose entity whose only function is as a conduit of funds from the parent entity into the subsidiary owner participants of aircraft. Carlyle has minimal financial incentive to keep the entity solvent, or for the parent company to refrain from pulling out its funds to protect those subsidiaries.

**Defendants' Proposed Guarantee Has No Enforcement Mechanism.** Defendants' Proposed Guarantee contains no enforcement mechanism to address a situation where Maverick fails to maintain the required net worth, or where Maverick ultimately does not honor the guarantee. As it stands, Frontier's only recourse for Maverick's failure to make payment or to comply with the net worth requirement is to sue an entity that may be holding insufficient assets to satisfy a judgment, or to sue the Carlyle parent companies and meet the high burden to pierce the corporate veil. In other words, Frontier would be back in the same position it is in today.

**Defendants' Proposed Guarantee Diverges Substantially From The Agreed Form Of Guarantee In The Leases, To Frontier's Detriment.** Finally, Defendants' Proposed Guarantee deviates substantially from the form of guarantee used by the parties under the Leases. Some of the language in Defendants' form of guarantee appears to restrict Frontier's rights and remove important protections included in the original form of guarantee in Lease Form 1. Below are just three of the many differences between Defendants' Proposed Guarantee and the agreed form of guarantee under the Leases[4]:

---

[4] These differences between the forms of guarantee are non-exhaustive: for example, the form of guarantee under the leases contains a waiver of a right to a jury trial, whereas Defendants' Proposed Guarantee does not.

First, Defendants' Proposed Guarantee terminates if Frontier "breaches any of its payment obligations under any of the Leases." Defendants' Proposed Guarantee § 1(a) (definition of "Termination Date"). Defendants' Proposed Guarantee is unacceptably vague about whether such "breach" accounts for Frontier's cure rights under the Leases. To address this issue, the agreed form of guarantee under the Leases specifies that no payment is due under the guarantee while there is an Event of Default—*i.e.*, a breach that has not been cured within the specified period under the Leases.

Second, the form of guarantee under the Leases recognizes that the guarantor will pay any costs necessary to recover on a default under the guarantee. Defendants' Proposed Guarantee omits this material agreed term.

Third, the form of guarantee under the Leases adopts the Lease definition of GAAP to mean U.S. GAAP, without modification. *See* Lease Form 1 § 1.1 at 8. Defendants' Proposed Guarantee adopts a definition of GAAP that modifies U.S. GAAP such that "all contributions from the parent are classified as equity." As discussed above, this change may be necessary for Defendants' proposed guarantor to have sufficient net assets under Section 3(b) of Defendants' Proposed Guarantee.

In summary, even working within the form of guarantee proposed by Defendants, the Court should condition dissolution of the preliminary injunction on Defendants making the following changes to their proposal:

- The guarantee should come from a creditworthy third party outside of Defendants' control;
- The guarantee should mandate that the quarterly net worth certification include current, U.S. GAAP-compliant, audited financials;
- The guarantee should incorporate a clause clarifying that payments are not due under the guarantee only when there is an outstanding event of default under the Leases; and
- The guarantee should restore the requirement that Defendants reimburse Frontier for its reasonable fees if litigation becomes necessary to enforce the guarantee.

Finally, as the Court indicated during the July 18 hearing, *see* Tr. 45:2-5, Defendants must revoke the existing default notices prior to the preliminary injunction being dissolved. Otherwise, Frontier remains in imminent risk of irreparable harm.

\* \* \* \* \*

5



     For the reasons discussed above, Frontier respectfully requests that the Court require Defendants to provide Frontier a guarantee substantially in the form of Exhibit 1 as a prerequisite to the dissolution of the preliminary injunction.  In the alternative, the Court should require Defendants to address all of the deficiencies in their Proposed Guarantee set forth above.

Very truly yours,

Eric B. Fisher